## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| HUSSEIN H. MANN and DEBRA HOUSTON-MANN, | ) ) ) | |
| *Plaintiffs,* | ) ) | Case No. 08-cv-00555 |
| v. | ) ) ) | Judge David H. Coar |
| CALUMET CITY, ILLINOIS, | ) ) ) | |
| *Defendant.* | ) | |

### FIRST AMENDED VERIFIED COMPLAINT FOR
### TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION,
### PERMANENT INJUNCTION, DAMAGES, DECLARATORY AND OTHER RELIEF

Plaintiffs Hussein H. Mann and Debra Houston-Mann (collectively, "Plaintiffs"), by their

attorneys, Marcia B. Gevers & Associates and Grippo & Elden LLC, for their complaint against

defendant, Calumet City, Illinois ("City") state as follows:

### NATURE OF THE ACTION

1.      Plaintiffs bring this action for injunctive, declaratory and other relief, pursuant to

42 U.S.C. § 1983, and 28 U.S.C. §§2201 and 2202 to redress the deprivation, under color of law,

of rights guaranteed to Plaintiffs, by the United States Constitution and under Illinois law.

Plaintiffs seek declarations that certain provisions of Chapter 14 of the Municipal Code of

Calumet City, Illinois, (the "Code"), codified through Ordinance No. 08-06, enacted January 31,

2008, are facially unconstitutional. Moreover, Plaintiffs seek a declaration that City's conduct in

refusing to issue "re-build" letters and/or confirm that property is legal nonconforming in

connection with the sale of legal nonconforming property constitutes an unconstitutional and

unreasonable restraint on the right to freely transfer property. Further, Plaintiffs seek an award

of damages to compensate them for damages suffered as a result of City's failure to comply with

an order entered by Judge Milton Shadur in litigation captioned *Realtor Association of West/South Suburban Chicagoland v. Calumet City, IL*, No. 06 C 2271 (N.D. IL), in which Judge Shadur ordered City to compensate Plaintiffs for the damages they suffered as a result of City interfering with the sale of property owned by Plaintiffs in violation of a Preliminary Injunction entered in that matter.

2.      More particularly, Plaintiffs seek a declaration that Section 14-1 of Article I of Chapter 14 of the Code (the "Point of Sale Inspection Ordinance," attached as Ex. A), is unconstitutional because it (a) unreasonably and unconstitutionally restrains property owners' right to sell their property without due process of law, and (b) fails to provide procedural due process. In addition, Plaintiffs seek a declaration that City's policy of refusing to issue re-build letters and/or to confirm that property is legal nonconforming in connection with the sale of legal nonconforming property effectively forces owners of legal nonconforming property to conform their property to the current zoning classification if they want to sell it. Such conduct unreasonably interferes with the right to freely sell property and violates state law prohibiting the immediate elimination of legal nonconforming property.

3.      Plaintiffs request immediate declaratory and injunctive relief by which the Court, among other things, would preliminarily and permanently enjoin enforcement of the Point of Sale Inspection Ordinance and declare the Point of Sale Inspection Ordinance unconstitutional.

4.      Plaintiffs challenge the constitutionality of the Point of Sale Inspection Ordinance on its face because it takes City owners' property rights, without due process. Plaintiffs have standing to bring this suit as property owners in City. A judgment from this Court will redress the harm being suffered and directly advance and protect the interests of Plaintiffs.

## JURISDICTION AND VENUE

5.    Plaintiffs' claims arise under the United States Constitution.  This Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

6.    City is subject to personal jurisdiction in this district and venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in this district.

## PARTIES

7.    Plaintiffs own property located at 514 Forsythe in City.  Plaintiff's property contains two dwelling units.  City's property file for Plaintiffs' property contains notations that the property is "legal nonconforming."  Plaintiffs purchased their property from a City official. When Plaintiffs purchased the property, City did not inform them that the property was not legal nonconforming and also did not tell them that they would have to deconvert their property before they sold it.  The property is listed for sale and is subject to the Point of Sale Inspection Ordinance.  By virtue of its Point of Sale Ordinance, City has taken and interfered and continues to take and interfere with Plaintiffs' right to alienate their property, without due process of law.

8.    Defendant Calumet City, Illinois is a unit of local government incorporated under the laws of Illinois.  City is located in Cook County, Illinois.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I.    Summary Of Point Of Sale Inspection Ordinance.

9.    The Point of Sale Inspection Ordinance (Ex. A) and other provisions of the Code provide that property can only be sold if City issues transfer stamps.  Code §§ 82-325, 82-328. In all but one instance,[1] the only way for sellers to obtain transfer stamps is to first obtain a final or conditional "Certificate of Compliance" from City and to pay any outstanding water bill (even

---

[1]    The only situation in which a Certificate of Compliance is not required to obtain transfer stamps is when an owner refuses his consent to an inspection and City fails to obtain a warrant to conduct the search.  Code §14-1(f).

3

if disputed). Code §§ 14-1(h); 14-1(i); § 82-327(b). City will issue a Certificate of Compliance

only if it decides that property "passed" a point of sale inspection. To "pass" an inspection and

obtain a Certificate of Compliance, a property owner must make all repairs (using a licensed and

bonded contractor unless the property owner makes the repairs himself) ordered by City after the

inspection. *Id.*; *see also id.* at § 14-1(k).

      10.    The Point of Sale Inspection Ordinance results in the immediate deprivation of a

home owner's right to sell her property until City decides to permit it. Upon issuance of an

inspector's repair order, the home owner is prohibited from selling her property until repairs are

made. The Point of Sale Inspection Ordinance provides the home owner no due process prior to

this deprivation of her right to sell her property.

      11.    In addition, the Point of Sale Inspection Ordinance requires citizens to pay the

water bill before City will issue transfer stamps. *Id.* at § 14-1(i). Although the Point of Sale

Inspection Ordinance states that an owner can dispute the water bill in a "predeprivation

hearing," the ordinance does not explain the due process protections, if any, of such hearing and

requires the owner to pay the bill "under protest" while he challenges it. Thus, if a property

owner wants to sell his property, he must capitulate and pay (albeit "under protest") what City

claims it is owed. *Id.* Otherwise, he will be unable to obtain the necessary transfer stamp. *Id.*

      12.    The Point of Sale Inspection Ordinance does not restrict, in any way, the scope of

searches. Rather, City inspectors are permitted to search for *any* violation of City's "Property

Maintenance Code" (regardless of whether the violation relates to health or safety issues).

Moreover, the Point of Sale Inspection Ordinance does not contain any limitations on the

duration or location of inspections (*e.g.*, there is no limitation on inspectors searching bedrooms,

closets, desks or other areas where private or personal property may be stored). Rather than

4

placing limitations on the scope of searches (*e.g.,* limiting searches to matters that concern health and safety), the Point of Sale Inspection Ordinance states that "[a]ll structures shall be incompliance with Article X, Sections 14-691 and 14-692 of this Chapter 14, 'Property Maintenance Code.'" Ex. A at §14-1(c)(1). Sections 14-691 and 14-692, in turn, expressly adopt the "2006 International Property Maintenance Code" (the "International Code") with minor modifications. Ex. B. The International Code is not limited to conditions that affect health and safety. *Id.* Nor does the International Code restrict the type of things City can order to be "repaired" before it will issue transfer stamps. Rather, the International Code contains provisions requiring maintaining property in "good repair." *See id.,* at §§ 304, 305. Under the International Code, City inspectors have unfettered discretion to search for as long as, and for whatever, and wherever they want. Property owners have no notice of the conditions that fail to constitute "good repair" before a search. City inspectors have unfettered discretion to order "repairs" that must then be made by a licensed and bonded contractor or the homeowner himself.

   13.    Under a similar prior ordinance (which was amended during the pendancy of related litigation filed by the Realtor® Association of West/South Suburban Chicagoland) City repeatedly stopped sales of property (by refusing to issue Certificates of Compliance) until property owners made "cosmetic repairs" unrelated to health, safety, and public welfare such as:

   a.    Painting windows, tightening a loose soap dish, replacing a "decorative cover" on a vanity;

   b.    Replacing floor tiles, tightening a loose soap dish, painting a bedroom wall, putting a "globe" on a light, painting a bathroom ceiling;

   c.    Repairing closet doors, painting door trims, repairing kitchen cabinets; and

   d.    "Patch – Paint – Clean – Decorate."

14.     City can -- as it has in the past -- rely on the "good repair" provisions of the International Code to order any kind of cosmetic repair it wants as a condition to the right to sell private property. A seller of property cannot stop an overly intrusive search or refuse to make cosmetic repairs because the seller needs a "Certificate of Compliance" to obtain a "transfer stamp" to transfer the property. The seller/owner is completely at the mercy of the inspector's unfettered discretion in conducting the search and ordering repairs. Under the Point of Sale Inspection Ordinance, property owners must capitulate to an inspector's demands, even if the repair work is unnecessary from a public health or safety standpoint, if they want to sell their property.

15.     The Point of Sale Inspection Ordinance permits City to order the "deconversion" of "illegally converted" property. Ex. A at §§ 14-1(c)(2), 14-1(g). The Point of Sale Inspection Ordinance contains no due process protection against City improperly ordering the deconversion of *legal nonconforming* property as a precondition of the right to sell the property. There is no pre-deprivation hearing at which property owners are permitted to be represented by counsel and to submit evidence that the property is legal. *Id.* Thus, City may prevent the sales of *legal nonconforming* property simply by declaring it illegal. *Id.*

16.     The Point of Sale Inspection Ordinance also unreasonably restrains the free alienability of property by allowing City unreasonably long time periods for City to conduct its searches, order repairs, and make re-inspections. *See id.* A at § 14-1(d) (allowing City 28 days to conduct inspection after receipt of notice of transfer), § 14-1(g)(1) (granting City three additional days after inspection to issue inspection report), § 14-1(h) (granting City three additional days to complete re-inspections after repairs are made). The Ordinance imposes *no* limit on the number of reinspections City may require because "new repairs" may be ordered during reinspection, and

6

*no* time limit on when City must issue a Certificate of Compliance after reinspection. *Id.* at § 14-1(h) (no limitation on when City must issue Certificate of Compliance after all repairs are made). An owner is prohibited from having repairs done by a family member or unlicensed person. Thus, where repairs are ordered under the Point of Sale Inspection Ordinance, City can, at a minimum, prevent sales of private property for at least fifty days (assuming conservatively, that (i) it takes ten days for a home owner to find a licensed and bonded contractor who can make all repairs, and for such contractor to make repairs, and (ii) City issues a Certificate of Compliance within ten days after reinspection). During such time, sales can and will be lost.

II.  **Zoning Code And City's Policy Of Refusing To Issue Re-Build Letters And/Or Confirmation That Property Is Legal Nonconforming.**

17.  The Zoning Code provides that legal nonconforming property cannot be rebuilt as-such if it is damaged by more than 50%. Ex. C, Zoning Code at §5.5. This provision of the Zoning Code thus also means that, if legal nonconforming property is damaged by less than 50%, it can be rebuilt or repaired as legal nonconforming property, even if current zoning restrictions would otherwise limit what could be built on the land.

18.  When an owner of legal nonconforming property finds a buyer for his property, the buyer's lender almost uniformly asks City to issue a letter that states that, if the legal nonconforming property is damaged, it can be re-built as legal nonconforming property consistent with the Zoning Code. City uniformly refuses to issue such "re-build" letters. Indeed, City uses a pre-printed form as part of its procedures that explicitly states that City will not issue re-build letters, despite the Zoning Code's provisions permitting rebuilding of legal nonconforming property.

19.  In addition, buyers and/or their lenders often ask City to confirm that property is legal nonconforming (*e.g.*, by confirming that all existing units in a four-unit building can be

7

leased even though the property is located in an area zoned for fewer than four units) before

agreeing to either buy property or loan money to prospective purchasers for the purchase of

property in City.  City refuses to provide such information requested by buyers and/or their

lenders.

20.     As a result of City's conduct, notwithstanding that the Point of Sale Inspection

Ordinance states that only "illegally" converted property must be deconverted, City, in reality,

forever prohibits the sale of legal nonconforming property because lenders will not loan money

to buyers in the absence of a re-build letter and/or confirmation that property is, in fact, legal

nonconforming.  This means that, if an owner of legal nonconforming property wants to sell his

property, he is forced to modify or deconvert it, without due process or compensation by City.

III.    **Other Relevant Codes.**

21.     City has also enacted a Code Enforcement Ordinance (Ex. D), to prosecute

property owners who fail to maintain their property in compliance with City's building and

maintenance codes.  *Id.*  City can also remedy health and safety related code violations through

its Rental Dwelling Inspection Ordinance (Ex. E.), which permits City to annually inspect multi-

unit dwellings.  Unlike the Point of Sale Inspection Ordinance, neither the Code Enforcement

Ordinance nor the Rental Dwelling Inspection Ordinance is tied to the transfer of property.

Rather, City may invoke the provisions (including as respects illegal conversions) whenever it

believes that there is a code violation that poses a risk to public health and safety.

22.     Unlike the Point of Sale Inspection Ordinance, the Code Enforcement Ordinance

contains *pre-deprivation* due process protections.  For example, under the Code Enforcement

Ordinance, before a property owner can be fined, a property owner is entitled to an

administrative hearing where he is permitted to be represented by counsel, to present testimony

and other evidence to challenge City's complaint, and to subpoena and cross-examine City

8

officials regarding the alleged code violation. Ex. D at §§ 2-943, 2-946. Further, a property

owner may petition for rehearing of an adverse decision before the enforcement administrator,

*Id.* at § 2-949, and appeal any final decision to a Cook County Court. *Id.* at § 2-950. Finally, if a

property owner is found guilty of a code violation, he is fined, *id.* at § 2-952, not deprived of his

Constitutional right to sell and transfer his property. None of these pre-deprivation due process

protections are present in the Point of Sale Inspection Ordinance.

     23.     Under the Code, when a property passes the Rental Dwelling Inspection the

property owner receives a Certificate of Occupancy that is valid for one year. Ex. E at §14-

711(e). Passing the Rental Dwelling Inspection does not negate the requirements of the Point of

Sale Inspection Ordinance. As such, regardless of the outcome of the Rental Dwelling

Inspection, a property owner must submit to both an annual rental inspection and an inspection at

the point of sale.

**IV.**     **Impact Of The Point Of Sale Inspection Ordinance On City Property Owners.**

     24.     Transfer of every property in City that is subject to the Point of Sale Inspection

Ordinance is enjoined until City permits transfer, without any pre-injunction due process. The

unconstitutional taking of the right to alienate property depresses the value of all residential

property in City.

     25.     As of April 28, 2008, according to the multiple listing service, there were 35

residential real estate listings in City with contracts pending. There are 456 active listings of

property in City.

     26.     Each of the 35 properties under contract will continue to be subject to an

unconstitutional taking of the right to transfer prior to closing if City is permitted to enforce the

Point of Sale Inspection Ordinance. Similarly, the 456 properties currently listed for sale will

continue to be at risk of unconstitutional taking of the right to transfer by City pursuant to the

Point of Sale Inspection Ordinance.

**CAUSES OF ACTION**

**COUNT I: THE POINT OF SALE INSPECTION ORDINANCE
UNREASONABLY RESTRAINS THE RIGHT OF PROPERTY
OWNERS TO TRANSFER THEIR PROPERTY**

27.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-26, as

though fully set forth herein.

28.     Title 42, Section 1983 of the United States Constitution provides as follows:

> Every person who, under the color of an statute, ordinance, regulation,
> custom, or usage of any State or Territory, or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress.

29.     City, as a municipal corporation under the laws of Illinois, is a "person" that is

subject to suit under 42 U.S.C. § 1983.

30.     The Point of Sale Inspection Ordinance unreasonably and unconstitutionally

restrains the alienability of property.  The Point of Sale Inspection Ordinance provides that

property cannot be sold unless City issues a transfer stamp.  Ex. A § 14-1(h) and Code §§ 82-

325, 82-327(b), 82-328.  With one limited exception (*see* n. 1), the only way to obtain a transfer

stamp is to first obtain a "Certificate of Compliance" which, in turn, can only be obtained if an

inspector decides that property "passed" a point of sale inspection.  *Id.*  There are no limitations

on the scope of searches required by the Point of Sale Inspection Ordinance or the type of repair

City can require as a condition of the right to sell property.  A property owner can "pass" a point

of sale inspection only if it completes all repairs required by the inspector -- even if those repairs

are cosmetic in nature -- by using a licensed contractor.  *Id.* at § 14-1(k).  Thus, even if property

10

complies with all City codes, a property owner may not transfer his property if City refuses to issue a "Certificate of Compliance." When City fails or refuses to issue a "Certificate of Compliance" a property owner has no meaningful right to a hearing to contest the inspector's decision. *Id.* Even where City eventually issues a Certificate of Compliance, it prohibits sales of property for an unreasonably long period of time while inspections, repairs and re-inspections take place.

31.    In addition, the Point of Sale Inspection Ordinance requires a seller to pay the water bill before City will issue transfer stamps. *Id.* at § 14-1(i). Although an owner can dispute the water bill in a "predeprivation hearing," the ordinance does not provide any detail regarding the due process protection of such hearing and requires the owner to pay the disputed bill "under protest" while he challenges the bill if he wants to obtain a transfer stamp. *Id.*

32.    Although cities are permitted to adopt ordinances to protect public health and safety, they may not use such ordinances to restrict the free transfer of property. *See* Op. Ill. Att'y Gen. No. 94-024 (Oct. 25, 1994), 1994 WL 601863 ("Municipalities are authorized, under Article 11 of the Municipal Code (65 ILCS 5/11-1-1 *et seq.*) (West 1992)) to adopt a number of ordinances and codes designed to protect public health and safety, and are authorized to enforce such codes by requiring permits, fees, and fines ... Further, municipalities may impose various fees for other services relating to real property. *In no instance, however, are municipalities authorized to limit the alienability of property in order to enforce such code.*") (emphasis added).

33.    Plaintiffs have suffered and will continue to suffer immediate and irreparable harm from enforcement of the Point of Sale Inspection Ordinance. The Point of Sale Inspection Ordinance is unconstitutional because it violates the protections in the United States Constitution against unreasonable governmental restriction on the right to sell private property. This

11

irreparable harm to Plaintiffs will substantially outweigh any harm to City if immediate relief is granted. Even if the Point of Sale Inspection Ordinance is enjoined, City can protect public health and safety with the Code Enforcement Ordinance and Rental Dwelling Inspection Ordinance.

34.    There is no adequate remedy at law. Money damages are not adequate to remedy the immediate loss of the Constitutional right to alienate property.

**WHEREFORE**, Plaintiffs pray for the following relief:

a.    A declaration that the Point of Sale Inspection Ordinance is unconstitutional;

b.    A temporary restraining order, preliminary and permanent injunction prohibiting City from enforcing the Point of Sale Inspection Ordinance and enjoining City from prohibiting the sale of property or refusing to issue transfer stamps in the absence of a point of sale inspection and/or issuance of a "Certificate of Compliance;"

c.    An award of reasonable attorneys fees and expenses as part of the costs of this action, pursuant to 42 U.S.C. § 1988; and

d.    Such other relief as the Court deems just and proper.

### COUNT II:  LACK OF PROCEDURAL DUE PROCESS

35.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-26, as though fully set forth herein.

36.    The Point of Sale Inspection Ordinance fails to provide procedural due process. Among other things, the due process clause requires that, at a minimum, a hearing must be provided *before* a property right -- here, the right to transfer property -- can be taken. The Point of Sale Inspection Ordinance immediately deprives a property owner of her right to sell her property without first providing due process. The Point of Sale Inspection Ordinance prohibits

12

the transfer of every residential property unless City consents, but no pre-deprivation due process

protection attaches. In effect, City has enjoined the transfer of residential property -- without a

complaint, evidence, a hearing or any procedural or substantive rules -- until it decides to

consent.

      37.    In addition, the Point of Sale Inspection Ordinance requires that property be in

"good repair" before it can pass a Point of Sale Inspection but fails to notify a property owner of

what conditions fail to constitute "good repair" and is, therefore, void for vagueness. City has

historically relied on the "good repair" provisions to require property owners to make cosmetic

repairs such as repairing soap dishes before allowing property to be sold. An inspector has

unfettered discretion to order repairs unrelated to conditions that affect health or safety or the

public good. The Point of Sale Inspection Ordinance contains no standards to prevent arbitrary

enforcement. An owner must comply with any repair order before he can obtain the transfer

stamp necessary to close the sale of the property. Property owners must capitulate to City's

inspectors' demands, even if the repair order is mistaken, unnecessary from a public health or

safety standpoint or otherwise improper, if they want to sell their property. The home seller has

no protection if an inspector conditions City's consent on "repairs" that have no relationship to

health or safety. Such a scheme does not comport with due process. It is also unconstitutionally

vague.

      38.    As respects deconversions, the Point of Sale Inspection Ordinance does not

provide *any* procedural due process protection to ensure that City does not wrongfully deprive

property owners of the "valuable property right" to sell and transfer legal nonconforming

property. The ordinance does not provide any notice of how City will determine whether

property is "legal" or "illegal." Further, property owners are not granted a meaningful hearing

before an independent tribunal, where they can be represented by counsel, rebut City's positions or submit evidence to show that the property is not an illegal conversion.

39.     Plaintiffs have suffered and will continue to suffer immediate and irreparable harm from enforcement of the Point of Sale Inspection Ordinance, including its deconversion provisions, because the Point of Sale Inspection Ordinance fails to provide procedural due process guaranteed by the United States Constitution.  This irreparable harm to Plaintiffs will substantially outweigh any harm to City if immediate relief is granted.  Even if the Point of Sale Inspection Ordinance is enjoined, City can protect public health and safety with the Code Enforcement Ordinance and Rental Dwelling Inspection Ordinance.

40.     There is no adequate remedy at law.  Money damages are not adequate to remedy the immediate loss of Constitutional rights.

**WHEREFORE**, Plaintiffs pray for the following relief:

a.      A declaration that the Point of Sale Inspection Ordinance is unconstitutional under the United States Constitution;

b.      A temporary restraining order, preliminary and permanent injunction prohibiting City from enforcing the Point of Sale Inspection Ordinance and enjoining City from prohibiting the sale of property or refusing to issue transfer stamps in the absence of a point of sale inspection and/or issuance of a "Certificate of Compliance;"

c.      An award of reasonable attorneys fees and expenses as part of the costs of this action, pursuant to 42 U.S.C. § 1988; and

d.      Such other relief as the Court deems just and proper.

**COUNT III: CITY UNCONSTITUTIONALLY REFUSES TO
ISSUE RE-BUILD LETTERS AND/OR CONFIRM THAT PROPERTY IS LEGAL**

14

### NONCONFORMING TO FORCE THE DECONVERSION OR MODIFICATION OF LEGAL NONCONFORMING PROPERTY AS A CONDITION OF THE RIGHT TO SELL SUCH PROPERTY

41.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-26, as though fully set forth herein.

42.    The right to continued use of, and the right to sell, legal nonconforming property are constitutionally protected property rights.  Under Illinois law, the right to continue a legal nonconforming use can only be taken away gradually and only if necessary for health and safety reasons.  65 ILCS 5/11-13-1.

43.    The Point of Sale Inspection Ordinance, the Zoning Ordinance and City's refusal to issue re-build letters and/or confirmation that property is legal nonconforming effectively prohibits owners of legal nonconforming property from selling it unless they immediately deconvert it or conform it to the current zoning classification.  The Zoning Ordinance states that legal nonconforming property cannot be rebuilt as such if it is damaged by more than 50%.  Ex. C.  This, of course, means that if legal nonconforming property is damaged by less than 50%, it can be rebuilt as legal nonconforming even if current zoning regulations would otherwise restrict what could be built.  Notwithstanding the terms of the Zoning Ordinance, City arbitrarily and uniformly refuses to issue re-build letters (that state legal nonconforming property can be built as such if damaged by less than 50%) that buyers' lenders uniformly require.  City's pre-printed forms state that City will not issue re-build letters.  Buyers' lenders will not loan buyers money in the absence of a re-build letter.  City also refuses to confirm for buyers and/or their lenders whether property is, in fact, legal nonconforming.  Thus, under the current scheme, owners of legal conforming property are forever barred from selling their legal nonconforming property unless they deconvert.

15

44.     City applies the Zoning Code and refuses to issue re-build letters and/or confirmation that property is legal nonconforming in such a way that unreasonably restrains the rights of owners of legal nonconforming property from selling their property as legal nonconforming.  City's conduct thus also violates 65 ILCS 5/11-13-1.

45.     Plaintiffs have suffered and will continue to suffer immediate and irreparable harm from how City applies the Zoning Code, including its refusal to issue re-build letters and confirmation of the legal nonconforming status of property because City's conduct effectively prohibits owners of legal nonconforming property from selling such property as legal nonconforming.  Thus, City's conduct in refusing to issue re-build letters and/or confirmation of the legal nonconforming status of property violates the protections in the United States Constitution against unreasonable governmental restriction on the right to sell private property. This irreparable harm to Plaintiffs will substantially outweigh any harm to City if immediate relief is granted.  City can protect public health and safety with the Code Enforcement Ordinance and Rental Dwelling Inspection Ordinance.

46.     There is no adequate remedy at law.  Money damages are not adequate to remedy the immediate loss of Constitutional rights.

**WHEREFORE**, Plaintiffs pray for the following relief:

a.     A declaration that City's refusal to issue re-build letters is unconstitutional under the United States Constitution and violates 65 ILCS 5/11-13-1;

b.     A declaration that City's refusal to confirm for buyers or their lenders whether property is legal nonconforming is unconstitutional under the United States Constitution and violates 65 ILCS 5/11-13-1;

16

c.    A temporary restraining order, preliminary and permanent injunction prohibiting

City from refusing to issue re-build letters and/or confirmation regarding whether

property is legal nonconforming;

d.    An award of reasonable attorneys fees and expenses as part of the costs of this

action, pursuant to 42 U.S.C. § 1988; and

e.    Such other relief as the Court deems just and proper.

## COUNT IV: PLAINTIFFS' REQUEST FOR DAMAGES

47.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-26, as

though fully set forth herein.

48.    Plaintiffs assert the following cause of action for damages against City for City's

failure to comply with an order entered by Judge Milton Shadur in litigation captioned *Realtor*

*Association of West/South Suburban Chicagoland v. Calumet City, IL*, No. 06 C 2271 (N.D. IL)

(the "*Realtor Association Litigation*"), in which Judge Shadur ordered City to compensate

Plaintiffs for the damages they suffered as a result of City interfering with the sale of property

owned by Plaintiffs in violation of a Preliminary Injunction entered in the *Realtor Association*

*Litigation*.

49.    The plaintiff in the *Realtor Association Litigation* filed suit seeking an injunction

against City's enforcement of its Point of Sale Inspection Ordinance and a declaration that such

ordinance is unconstitutional.  On August 8, 2006, Judge Shadur entered a Preliminary

Injunction which enjoined City from, among other things (a) enforcing the Point of Sale

Inspection Ordinance, (b) from ordering the deconversion of legal nonconforming property, and

(c) conditioning the issuance of transfer stamps on the payment of a water bill (the "August 8

Injunction").  *See* Ex. F.

17

50.     In the fall of 2006, Plaintiffs listed their property for sale and entered into a contract for the sale of the property.  Plaintiffs scheduled the closing of the sale for October 30, 2006.  Prior to the closing, Ms. Houston-Mann and the buyer went to City's Department of Inspectional Services to purchase the necessary transfer stamps.  In violation of the August 8 Injunction, City would not issue transfer stamps until the water bill was paid.  In addition, in further violation of the August 8 Injunction, City told Ms. Houston-Mann and the buyer that City would not issue a certificate of occupancy unless the property was deconverted.  As a result of City's statements, the buyer decided to not purchase the property and Plaintiffs lost the sale and suffered damage.

51.     After learning of these events, on November 17, 2006, the plaintiff in the *Realtor Association Litigation* filed a Motion for Order to Show Cause Why Calumet City Should Not Be Held in Contempt for Violating the Court's Order.  Ex. G.  After lengthy briefing and argument, on March 14, 2007, Judge Shadur granted the motion in part and denied it in part.  As respect Plaintiffs, Judge Shadur's order (the "March 14 Order," Ex. H) states:

a.     The owners of the property at 514 Forsythe in Calumet City, along with the involved real estate brokers, are entitled to be compensated by Calumet City for the damages they incurred or will incur in the future in connection with their failed closing of the sale and transfer of the property on or about October 31, 2006.

b.     The owners of the property at 514 Forsythe in Calumet City, along with the involved real estate brokers, are entitled to be compensated by Calumet City for reasonable attorneys' fees and related costs incurred in enforcing their rights under paragraph 1 of this Order.

52.     After entry of the March 14 Order, Plaintiffs demanded that City comply with the order and compensate them for the damages they suffered.  City refused to compensate Plaintiffs for their damages and, in bad faith, even denied the existence of the March 14 Order.  For example, Mark Sterk (counsel for City in the *Realtor Association Litigation* and in this case)

18

wrote Plaintiffs' counsel a letter on August 23, 2007 in which he stated: "I am unaware of an order entered by Judge Shadur directing that your client's [sic] are entitled to any relief. Absent such an order we respectfully decline to respond to the demand." Ex. I.

53.     Although City has refused to compensate Plaintiffs for their damages and denied the existence of the March 14 Order, City has paid the brokers involved in the lost sale the damages they suffered (*i.e.*, lost commissions) pursuant to the very March 14 Order which City denies exists as respects the claim by Plaintiffs.

54.     Alternatively, City's refusal to issue transfer stamps in connection with the scheduled sale of Plaintiffs' property in October 2006 violated Plaintiffs' constitutional rights, resulting in the sale failing to close and damages.

**WHEREFORE**, Plaintiffs pray for the following relief:

a.     An award of damages to compensate them for damages suffered as a result of City's violation of the August 8 Injunction and City's interference with the sale of Plaintiffs' property located at 514 Forsythe in City;

b.     An award of attorney's fees and costs incurred in enforcing their rights under the March 14 Order; and

c.     Such other relief as the Court deems just and proper.

DATED: May 19, 2008                                    Respectfully submitted,

                                                       **HUSSEIN H. MANN AND DEBRA HOUSTON-MANN,**

Philip C. Stahl
Patrick T. Nash
Donald P. Bunnin                                       By:  /s/ Patrick T. Nash
Mark A. Semisch                                             One of Their Attorneys
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, IL 60606

150880v1

Phone: (312) 704-7700
Fax: (312) 558-1195

Marcia B. Gevers
MARCIA B. GEVERS & ASSOCIATES
19710 Governors Highway, Suite 8
Flossmoor, IL 60422
Phone: (708) 957-2700
Fax: (708) 957-2720

<u>VERIFICATION</u>

I, Debra Houston-Mann, verify under penalty of perjury that the foregoing statements set forth in the First Amended Verified Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, Declaratory and Other Relief are true and correct.

Debra Houston-Mann

I, Hussein H. Mann, verify under penalty of perjury that the foregoing statements set forth in the First Amended Verified Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, Declaratory and Other Relief are true and correct.

Hussein H. Mann

<u>CERTIFICATE OF SERVICE</u>

I, Patrick T. Nash, hereby certify that I caused a copy of the First Amended Verified Complaint For Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, Damages, Declaratory and Other Relief to be served by electronic mail through the ECF filing system this 19th day of May, 2008 upon the following:

John B. Murphey
Rosenthal, Murphey & Coblentz
30 North LaSalle Street
Suite 1624
Chicago, IL  60602

Mark Sterk
Odelson & Sterk, Ltd.
3318 West 95th Street
Evergreen Park, IL  60804

/s/ Patrick T. Nash