# EXHIBIT D

## ARTICLE IX. CODE ENFORCEMENT*

---

*Cross references:** Fire code prevention, § 30-161 et seq.

**State law references:** Administrative adjudication of ordinances, 65 ILCS 5/1-2.1-1 et seq.

---

### Sec. 2-941. Purpose.

The stated purpose of this article is to provide for the fair and efficient enforcement of the Municipal Code of Calumet City, Illinois, other than those ordinances pertaining to vehicular standing, parking or vehicle compliance regulation (hereafter the "City Code"), as may be allowed by law and directed by ordinance, through an administrative adjudication of violations; and, establishing a schedule of fines and penalties, and authority and procedures for collection of unpaid fines and penalties.

(Code 1980, § 2-501; Ord. No. 99-63, § VI, 11-10-1999)

### Sec. 2-942. Creation.

There is hereby established a department of the city government to be known as the ordinance enforcement department and to have the power to enforce any municipal ordinance as from time to time authorized by the city council, except for (i) any offense enforced pursuant to Article VII.5 of Chapter 17 of this Code; (ii) any offense under the Illinois Vehicle Code (625 ILCS 5/1-100 et seq.); or a similar offense that is a traffic regulation governing the movement of vehicles; and, (iii) except for any reportable offense under 625 ILCS 5/6-204. The establishment of the ordinance enforcement department does not preclude the mayor and city council from using any other method or court with jurisdiction to enforce ordinances of the city.

(Code 1980, § 2-503; Ord. No. 99-63, 11-10-1999)

### Sec. 2-943. Administrative composition.

(a)  The ordinance enforcement department shall be composed of a hearing officer, an ordinance enforcement administrator, system coordinator/computer operator and hearing room security personnel, with the power and authority as hereinafter set forth.

(1)  The hearing officer is authorized and directed to:

a.  The hearing officer, prior to appointment, must be an attorney licensed to practice law for at least three (3) years in the State of Illinois. The hearing officer shall preside over all adjudicatory hearings and shall have the following powers and duties:

1.  To administer oaths;

2.  To hear testimony and accept evidence that is relevant to the existence of the City Code violation;

3.  To issue subpoenas directing witnesses to appear and give relevant testimony at the hearing, upon the request of the parties or their representatives;

4.  To preserve and authenticate the record of the hearing and all exhibits and evidence introduced at the hearing;

5.  To issue and sign a written finding, decision and order stating whether a City Code violation exists;

6.  To impose penalties, sanctions or such other relief consistent with applicable City Code provisions and assessing costs upon finding a party liable for the charged violation, except however, that in no event shall the hearing officer have authority to impose a penalty of incarceration; and,

7.  To review final determination of liability for an ordinance violation in accordance with the administrative review procedures hereinafter set forth.

b.  Prior to conducting administrative adjudication proceedings under this article, the hearing officer shall have successfully completed a formal training program which includes the following:

1.  Instruction on the rules of procedure of the administrative hearings over which the hearing officer shall preside;

2.  Orientation to each subject area of the code violations that he/she will adjudicate;

3.  Observation of administrative hearings; and

4.  Participation in hypothetical cases, including ruling on evidence and issuing final orders.

(2)  The ordinance enforcement administrator is authorized and directed to:

a.  Operate and manage the ordinance enforcement department.

b.  Adopt, distribute and process all notices as may be required under this article or as may be reasonably required to carry out the purpose of this article.

c.  Collect moneys paid as fines and/or penalties assessed after a final determination of liability.

d.  Certify copies of final determinations of an ordinance violation adjudicated pursuant to this article, and any factual reports verifying the final determination of any violation liability which was issued in accordance with this article.

e.  Promulgate rules and regulations reasonably required to operate and maintain the administrative adjudication system hereby created.

f.  Collect unpaid fines and penalties through private collection agencies and direct the pursuit of all post-judgment remedies available by law.

(3)  The system coordinator/computer operator is hereby authorized and directed to operate and maintain the computer programs for the administrative adjudication system of the ordinance enforcement department hereby created, on a day-to-day basis, including but not limited to:

a.  Input of violation notice information.

b.  Establishing hearing dates and notice dates.

c.  Record fine and penalty assessment and payments.

d.  Issue payment receipts.

e.  Issue succeeding notice of hearing dates and/or final determination of liability.

f.  Keep accurate records of appearances and nonappearances at administrative hearings, pleas entered, judgments entered, sanctions imposed, if any, fines and penalties assessed and paid.

(4)  All hearing room security personnel shall be qualified off-duty, full-time, part-time or auxiliary police officers who are hereby authorized and directed to:

a.  Maintain hearing room decorum.

b.  Have and execute authority as is granted to courtroom deputies of the circuit court.

c.  Perform such other duties or acts as may reasonably be required and as directed by the hearing officer or ordinance enforcement administrator.

(b)  The mayor is hereby authorized to appoint persons to hold the positions above set forth. Other than the hearing officer, one person may hold and fulfill the requirements of one (1) or more of the above stated

positions and compensation for each of the above stated positions shall be as approved by the city council.

(Code 1980, § 2-504; Ord. No. 99-63, 11-10-1999; Ord. No. 01-56, 11-19-2001)

### Sec. 2-944. Procedures.

The system of administrative adjudication of any ordinance violation authorized to be adjudicated hereunder, shall afford a party due process of law and the hearings shall be conducted in accordance with the following procedures:

(1)  Violation notices of any City Code shall be issued by the persons authorized under this Code and shall contain information and shall be certified and constitute *prima facie* evidence of the violation cited as hereinafter set forth.

(2)  All full-time, part-time and auxiliary police officers as well as other specifically authorized individuals of any department of the city shall have the authority to issue violation notices.

(3)  Any individual authorized hereby to issue violation notices and who detects any ordinance violation authorized to be adjudicated under this article, is authorized to issue notice of violation thereof and shall make service thereof as is hereinafter set forth.

(4)  The violation notice of the City Code shall contain, but shall not be limited to, the following information:

    a.  The name of the party violating the ordinance, if known.

    b.  The date, time and place of the violation (date of issuance).

    c.  The particular ordinance violated.

    d.  The fine and any penalty which may be assessed for the ordinance violation.

    e.  The signature and identification number of the person issuing the notice.

    f.  The date and location of the adjudicating hearing of ordinance violations, and the penalties for failure to appear at the hearing.

    g.  That payment of the indicated fine and any late payment shall operate as a final disposition of the violation.

(Code 1980, § 2-505; Ord. No. 99-63, 11-10-1999; Ord. No. 01-56, 11-19-2001)

### Sec. 2-945. Service.

(a)  Service of any violation notice shall be made by the person issuing such notice by:

(1)  Handing the notice to the person responsible for the ordinance violation;

(2)  Handing the notice to the responsible person or leaving the notice with any person twelve (12) years of age or older at the residence of the responsible person;

(3)  Mailing the notice by first class mail, postage prepaid, to the person responsible for the ordinance violation; or,

(4)  Posting the notice upon the property where the violation is found when the person is the owner or manager of the property.

(b)  The correctness of facts contained in any violation notice shall be verified by the person issuing said notice by:

(1)  Signing his name to the notice at the time of issuance; or

(2)  In the case of a notice produced by a computer device, by signing a single certificate, to be kept by the ordinance enforcement administrator, attesting to the correctness of all notices produced by the device while under his control.

(c)  The original or a facsimile of the violation notice shall be retained by the ordinance enforcement administrator and kept as a record in the ordinary course of business.

(d)  Any violation notice issued, signed and served in accordance herewith, or a copy of the notice, shall be *prima facie* correct and shall be *prima facie* evidence of the correctness of the facts shown on the notice.

(Code 1980, § 2-506; Ord. No. 99-63, 11-10-1999)

### Sec. 2-946. Administrative hearings.

An administrative hearing to adjudicate any alleged City Code ordinance violation on its merits shall be granted to the person named in the ordinance violation notice. All administrative hearings shall be recorded and shall culminate in a determination of liability or nonliability, made by the hearing officer, who shall consider facts and/or testimony without the application of the formal or technical rules of evidence. Evidence, including hearsay, may be admitted only if it is of a type commonly relied upon by reasonable prudent persons in the conduct of their affairs. The hearing officer shall, upon a determination of liability, assess fines, penalties and costs in accordance with section 2-952 hereof. Persons appearing to contest the alleged violation on its merits may be represented by counsel at their own expense. The burden of proof shall be on the alleged offender to refute the *prima facie* case set forth in the verified notice of violation.

(Code 1980, § 2-507; Ord. No. 99-63, 11-10-1999)

### Sec. 2-947. Notices.

(a)  Upon failure of the person receiving a notice of a violation of the City Code to appear at the time and date designated for a hearing, the ordinance enforcement administrator shall send, or cause to be sent, notices as provided in subsection (b) of this section, by first class mail, postage prepaid, to the person who received the notice of an ordinance violation. Service of notices sent in accordance herewith shall be complete as of the date of deposit in the United States mail.

(b)  The notices sent pursuant to subsection (a) of this section shall be in the following sequence and contain, but not be limited to, the following information:

(1)  Date and location of violation cited in the violation notice.

(2)  Particular ordinance violated.

(3)  Fine and any penalty that may be assessed for late payment.

(4)  A section titled "Notice of Hearing" which shall clearly set forth that the person receiving a notice of the City Code ordinance violation may appear at an administrative hearing to contest the validity of the violation notice on the date and at the time and place as specified in the notice of hearing.

(5)  Date, time and place of the administrative hearing at which the alleged violation may be contested on its merits.

(6)  Statement that failure to either pay fine and any applicable penalty or failure to appear at the hearing on its merits on the date and at the time and place specified will result in a final determination of liability for the "cited" violation in the amount of the fine and penalty indicated.

(7)  Statement that upon the occurrence of a final determination of liability for the failure, and the exhaustion of, or the failure to exhaust, available administrative or judicial procedures for review, any unpaid fine or penalty will constitute a debt due and owing the city.

(c)  A notice of final determination of liability shall be sent following the conclusion of administrative hearing, as is hereinafter set forth, and shall contain, but not be limited to, the following information and warnings:

(1)  A statement that the unpaid fine and any penalty assessed is a debt due and owing the city;

(2)  A statement of any sanction ordered or costs imposed which costs are debts due and owing the city; and

(3)  A warning that failure to pay the fine and any penalty due and owing the city within the time

specified may result in proceeding with collection procedures in the same manner as a judgment entered by any court of competent jurisdiction.

(Code 1980, § 2-508; Ord. No. 99-63, 11-10-1999)

### Sec. 2-948. Final determination of liability.

A final determination of liability shall occur following the failure to pay the fine or penalty after the hearing officer's determination of liability and the exhaustion of, or the failure to exhaust, any administrative review procedures hereinafter set forth. Where a person fails to appear at the administrative hearing to contest the alleged violation on the date and at the time and place specified in a prior served or mailed notice pursuant to section 2-947(b) hereof, the hearing officer's determination of liability shall become final either upon a denial of a timely petition to set aside that determination or upon the expiration of the period for filing a petition without a filing having been made.

(Code 1980, § 2-509; Ord. No. 99-63, 11-10-1999)

### Sec. 2-949. Petition to set aside determination.

A petition to set aside a final determination of liability may be filed with the ordinance enforcement ministrator within twenty-one (21) days of the date of the final determination of liability and payment of twenty-five dollars ($25.00).

(Code 1980, § 2-510; Ord. No. 99-63, 11-10-1999)

### Sec. 2-950. Judicial review.

Any final decision by a hearing officer that a City Code violation does or does not exist shall constitute a final determination for purposes of judicial review under the Illinois Administrative Review Law (735 ILCS 5/3-101 et seq.).

(Code 1980, § 2-511; Ord. No. 99-63, 11-10-1999)

### Sec. 2-951. Enforcement of judgment.

(a)  Any fine, other sanction, or costs imposed, or part of any fine, other sanction, or costs imposed, remaining unpaid after the exhaustion of or the failure to exhaust judicial review procedures under the Illinois Administrative Review Law (735 ILCS 5/3-101 et seq.) are a debt due and owing the municipality and may be collected in accordance with applicable law.

(b)  After expiration of the period in which judicial review under the Illinois Administrative Review Law (735 ILCS 5/3-101 et seq.) may be sought for a final determination of a code violation, unless stayed by a court of competent jurisdiction, the findings, decision, and order of the hearing officer may be enforced in the same manner as a judgment entered by a court of competent jurisdiction.

(c)  In any case in which a hearing officer finds that a defendant has failed to comply with a judgment ordering a defendant to correct a code violation or imposing any fine or other sanction as a result of a code violation, any expenses incurred by the city to enforce the judgment including, but not limited to, attorney's fees, court costs, and costs related to property demolition or foreclosure after they are fixed by the hearing officer, shall be a debt due and owing the municipality and may be collected in accordance with applicable law.

(d)  A lien shall be imposed on the real estate or personal estate, or both, of the defendant in the amount of any debt due and owing the city under this section. The lien may be recorded and enforced in the same manner as a judgment lien pursuant to a judgment of a court of competent jurisdiction. No lien may be enforced under this section until it has been recorded in the manner provided by Article XII of the Code of Civil Procedure (735 ILCS 5/1-101 et seq.) or by the Uniform Commercial Code (810 ILCS 5/1-101et seq.).

(e)  A hearing officer may set aside any judgment entered by default and set a new hearing date upon a petition filed within twenty-one (21) days after the issuance of the order of default if the hearing officer determines that the petitioner's failure to appear at the hearing was for good cause or at any time if the

ARTICLE IX. CODE ENFORCEMENT*                                                                 Page 6 of 6

    petitioner establishes that the municipality did not provide proper service of process.

(Code 1980, § 2-512; Ord. No. 99-63, 11-10-1999)


**Sec. 2-952. Schedule of fines/penalties.**

    For an ordinance violation of the City Code, fines and penalties shall be as established from time to time by the mayor and city council.

(Code 1980, § 2-513; Ord. No. 99-63, 11-10-1999)


**//Calumet City, Illinois/MUNICIPAL CODE CALUMET CITY, ILLINOIS Codified through Ord. No. 07-72, enacted June 14, 2007. (Supplement No. 7)/Chapter 2 ADMINISTRATION*/ARTICLE IX. CODE ENFORCEMENT***

# EXHIBIT E

## DIVISION 2. RENTAL DWELLING INSPECTIONS*

---

*Editor's note: Ord. No. 06-49, adopted June 22, 2006, amended division 2 in its entirety to read as herein set out. Former division 2, which consisted of §§ 14-711—14-718, pertained to similar subject matter and derived from the 1980 Code; Ord. No. 87-5, adopted Mar. 26, 1987; Ord. No. 87-16, adopted July 23, 1987; Ord. No. 88-2, adopted Feb. 25, 1988; Ord. No. 89-8, adopted Feb. 9, 1989; Ord. No. 89-40, adopted Nov. 8, 1989; Ord. No. 90-1, adopted Jan. 11, 1990; Ord. No. 94-16, adopted May 12, 1994; and Ord. No. 04-42, adopted June 29, 2004.

---

### Sec. 14-711. Certificate of occupancy requirement.

(a) No owner, agent or person (hereinafter referred to as "responsible party") in charge of a one-family, two-family or multiple-family dwelling (hereinafter referred to as "rental dwelling"), as those terms are defined in the property maintenance code, shall allow any person to occupy the same as a tenant or lessee or for valuable consideration unless said dwelling or structure shall have been inspected and determined to be in compliance with all of the provisions of the property maintenance code as well as all health and building ordinances as evidenced by a certificate of occupancy issued by the department of inspectional services ("department"). Thereafter, all rental properties shall be inspected annually and an updated certificate of occupancy issued.

(b) No certificate of occupancy shall be issued unless the applicant[,] owner or operator agrees in his application to an inspection pursuant to this section. Notwithstanding any other provisions of this Code, when the city conducts inspections of a tenant's rental dwelling, the city must obtain the consent of such tenant to conduct the inspection. If a tenant refuses consent, the city may attempt to obtain a warrant pursuant to subsection (d) below.

(c) Prior to the time that the department is scheduled to conduct the inspection, the department shall deliver to the owner and occupants of the structure written notice that includes the following:

(1) Date and time of the inspection;

(2) A statement that the owner or tenant has the right to withhold his consent to the inspection and require the city to attempt to obtain a warrant to conduct the inspection;

(d) If the owner or occupant does not consent to the attempted inspection, the director of inspectional services ("director") or his designee shall seek in the circuit court of Cook County a warrant in accordance with the appropriate laws of the State of Illinois to allow an inspection. The application for the warrant shall specify the basis upon which the warrant is being sought and shall include a statement that the inspection will be limited to a determination whether there are violations of the city building and zoning ordinances or any applicable housing, fire or property maintenance codes or regulations. The court may consider any of the following factors along with such other matters as it deems pertinent in its decision as to whether a warrant shall issue:

(1) Eyewitness account of violation;

(2) Citizen complaints;

(3) Tenant complaints;

(4) Plain view violations;

(5) Violations apparent from city records;

(6) Property deterioration;

(7) Age of property;

(8) Nature of alleged violation;

(9) Similar properties in the area;

(10) Documented violations on similar properties in the area;

(11) Passage of time since last inspection;

(12) Previous violations on the property.

(e)  If the annual inspection establishes that the rental dwelling complies with all the provisions of the property maintenance code as well as all other health, zoning, and building ordinances of the city, then the department of inspectional services shall issue a certificate of occupancy for said dwelling or structure. The certificate shall indicate the date of the inspection; that such dwelling or structure complies with the requirements of the property maintenance code as well as other health and building ordinances that apply to the dwelling. One (1) copy of the certificate shall be delivered to or mailed to the owner of the dwelling unit. A record of all certificates shall be kept on file by the department, and copies shall be furnished upon request to any person having a proprietary interest or tenancy interest in the dwelling affected. The director shall submit once a month to the mayor and the city council a list of addresses of those dwellings which have been inspected the previous month with an indication whether or not said dwellings have been issued certificate of occupancy permits. Every certificate of occupancy shall be issued for a period of one (1) year after its date of issuance, unless sooner revoked.

(f)  Inspection fee schedule.

(1) Fifty dollars ($50.00) yearly.

(2) Ten dollars ($10.00) per additional unit.

(3) All inspection fees as herein provided shall be paid prior to the issuance of a certificate of occupancy.

(4) Each fee set for the above covers the cost of one (1) follow-up inspection to verify compliance. In the event that additional inspections are required because full compliance did not exist at the time of the reinspection, then an additional reinspection fee of fifty dollars ($50.00) plus ten dollars ($10.00) per unit shall be assessed.

(5) If an owner, agent or tenant has failed to appear for two previously scheduled inspections, an additional inspection fee of fifty dollars ($50.00) plus ten dollars ($10.00) per unit shall be assessed.

(Ord. No. 06-49, § 1, 6-22-2006)

### Sec. 14-712. Notice of violation.

(a)  Whenever the building official determines that any rental dwelling or the premises surrounding fails to meet the requirements set forth in this chapter or in applicable rules and regulations issued pursuant thereto, the building official in accordance with the property maintenance code and the other city health, and building codes shall issue a notice setting forth the alleged failures and advising the responsible party that such failures must be corrected. This notice shall:

(1) Be in writing.

(2) Set forth the alleged violations of this chapter or of applicable rules and regulations issued pursuant thereto.

(3) Describe the rental dwelling where the violations are alleged to exist or to have been committed. Such written notice shall specify an appropriate or acceptable method of correction.

(4) Specify a specific date for the correction of any violation alleged.

(5) Be served upon the responsible party of the rental dwelling by the building official, or mailed to the responsible party. If one (1) or more persons to whom such notice is addressed cannot be found after diligent effort to do so, service may be made upon such persons by posting the notice in or about the rental dwelling described in the notice.

(b)  At the end of the period of time allowed for the correction of any violation alleged, which was stated in the inspection notice, the building official shall reinspect the rental property described in the notice.

(c)  If, upon reinspection, the violations are determined by the building official not to have been corrected, the

building official, in turn, shall issue an O.V. (ordinance violation) ticket to initiate legal proceedings to be handled in Calumet City's housing court for the immediate correction of the alleged violations or shall order the rental property vacated within thirty (30) days, or both.

(Ord. No. 06-49, § 1, 6-22-2006)

## Sec. 14-713. Responsibility of tenants.

No tenant shall damage or cause to be damaged any unit or building leased nor shall any damage be caused to the general premises of any building used by the tenants. Each tenant and the families of each tenant shall maintain his rental unit free of any litter, and tenants shall not litter any of the premises or the buildings provided for use by the tenants. The tenants must maintain their responsibilities as outlined in the property maintenance code, subject to O.V. citations.

(Ord. No. 06-49, § 1, 6-22-2006)

## Sec. 14-714. Penalties.

Any responsible party of a rental dwelling who has received an order or notice of an alleged violation of this article shall be subject to a penalty of not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) for each day the alleged violation continues after expiration of the specified reasonable consideration period; provided that no such penalty shall be applicable while reconsideration, hearing or appeal to a court of competent jurisdiction is pending in the matter.

(Ord. No. 06-49, § 1, 6-22-2006)

## Sec. 14-715. Validity and severability.

If any section, subsection, paragraph, sentence, clause, or phrase of this Code shall be declared invalid for any reason whatsoever, this decision shall not affect the remaining portions of this Code, which shall continue in full force and effect, and to this end, the provisions of this Code are hereby declared to be severable.

(Ord. No. 06-49, § 1, 6-22-2006)

## Sec. 14-716. Savings clause.

This Code shall not affect violations of any other ordinance, code or regulation of the jurisdiction existing prior to the effective date hereof, and any such violation shall be governed and shall continue to be punishable to the full extent of the law under the provisions of those ordinances, codes or regulations in effect at the time the violation was committed.

(Ord. No. 06-49, § 1, 6-22-2006)

Secs. 14-717—14-750. Reserved.

# EXHIBIT F

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

REALTOR® ASSOCIATION OF WEST/  )
SOUTH SUBURBAN                 )
CHICAGOLAND,                   )        Case No. 06 C 2271
               *Plaintiff,*      )
                        )
    v.                         )        Judge Milton I. Shadur
CALUMET CITY, ILLINOIS,        )
              *Defendant.*      )
                        )

### ORDER GRANTING PRELIMINARY INJUNCTION

This matter coming to be heard on Plaintiff's motion for a preliminary injunction, due

notice having been given, and the Court being fully advised in the premises, for the reasons set

forth on the record at the hearing of this matter on August 2, 2006, and at prior hearings, and

based on the written submissions of the parties, the Court finds that, as to Plaintiff's claims that

the Deconversion Provisions and the Point of Sale Inspection Ordinance (as defined below) are

facially unconstitutional: (i) Plaintiff has associational standing, (ii) Plaintiff has established a

high likelihood of success on the merits, (iii) there is no adequate remedy at law and Plaintiff and

its Members will suffer irreparable harm if injunctive relief is not granted, (iv) the irreparable

harm the Plaintiff and its Members will suffer if injunctive relief is wrongfully denied will

outweigh any irreparable harm the Defendant will suffer if injunctive relief is wrongfully

granted, and (v) granting injunctive relief will not disserve the public interest in terms of the

consequences to non-parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

    1.     Calumet City, Illinois, including its agents, employees, officers, successors and

members (collectively, the "City"), is prohibited and enjoined from enforcing (i) Section 14-1 of

Chapter 14, Article I of the Calumet City Code (the "Point of Sale Inspection Ordinance"), including but not limited to those provisions of the Point of Sale Inspection Ordinance that require sellers of legal nonconforming property to "deconvert" them into structures with fewer income-producing rental units (the "Deconversion Provisions"), and (ii) Section 327(b) of Chapter 82, Article X of the Calumet City Code. This Order shall not prohibit the City from attempting to collect unpaid water bills by lawful means other than pursuant to Section 327(b) of Chapter 82, Article X of the Calumet City Code.

2.    The City is prohibited and enjoined from (i) conducting inspections pursuant to the Point of Sale Inspection Ordinance; (ii) prohibiting the sale of property and refusing to issue transfer stamps in the absence of a point of sale inspection and/or issuance of a "certificate of compliance" or "conditional certificate of compliance;" and (iii) ordering the deconversion of legal nonconforming property. The City shall allow the sale or transfer of property without requiring point of sale inspections or deconversions of legal nonconforming property.

3.    This order shall remain in effect until the trial on the merits, unless modified by this Court.

4.    Because no costs or damages will be incurred or suffered by the City if the requested injunction is issued, the Court deems it proper that, pursuant to Fed. R. Civ. P. 65(c), no security need be given by the Plaintiff.

Dated:        August 8, 2006            ENTERED:

                                        Judge Milton I. Shadur

86409v4

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

REALTOR® ASSOCIATION OF WEST/ )
SOUTH SUBURBAN )
CHICAGOLAND, )        Case No. 06 C 2271
              *Plaintiff.* )
 )
        v. )        Judge Milton I. Shadur
 )
CALUMET CITY, ILLINOIS, )
              *Defendant.* )
 )

### PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE WHY CALUMET CITY SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING THE COURT'S INJUNCTION

Plaintiff Realtor® Association of West/South Suburban Chicagoland (the "Realtor Association"), requests that the Court enter an order directing Defendant Calumet City, Illinois (the "City") to show cause why the City should not be held in contempt for violating this Court's August 8 Injunction Order (the "Order") (attached as Exhibit 1) which enjoined the City from enforcing and taking certain actions in connection with provisions of the Point of Sale Inspection Ordinance (the "POS Inspection Ordinance"), including the Deconversion Provisions. In support of this motion, the Realtor Association states as follows:

1.      The Order prohibits the City from: (i) prohibiting the sale of property and refusing to issue transfer stamps in the absence of a point of sale inspection and/or issuance of a "certificate of compliance" or "conditional certificate of compliance;" (ii) ordering the deconversion of legal nonconforming property; and (iii) conditioning issuance of transfer stamps on anything other than payment of tax (*e.g.*, payment of the water bill).

2.      The City has violated and continues to violate the Order by: (i) refusing to issue transfer stamps unless water bills are paid: (ii) denying certificates of occupancy for legal

nonconforming property (and telling buyers of such property that they will have to deconvert their property in order to obtain the certificates of occupancy); and (iii) otherwise willfully interfering with the transfer of property at the point of sale. The City first violated the Order very soon after it was issued. At that time, the Realtor Association brought the violations to the attention of the City's lawyers who assured the Realtor Association that the City would stop its conduct. Ex. 2. On other occasions, the Realtor Association has also raised apparent violations of the Order in open court. Ex. 3. In those instances, counsel for the City assured the Court that the City had stopped its improper conduct.

3.    Despite the assurance of the City's counsel to both the Realtor Association and the Court, the City has continued to violate the Order. More alarming, the City's counsel has recently decided to ignore the Realtor Association's inquiries regarding potential violations of the Order. For example, the Realtor Association recently brought two apparent violations of the Order to attention of the City's lawyers. Ex. 4. The City's lawyers failed to respond, at all, to the Realtor Association's concerns. It is these two unaddressed violations, as well as the City's policy of requiring a plat of survey before it will issue transfer stamps, that are the subject of this motion. Each is discussed below.

4.    514 Forsythe. For the past fifty years, the City inspected and approved the nonconforming use at 514 Forsythe and the current owner purchased 514 Forsythe from a Calumet City official who also occupied the property as a multiple-family property. Ex. 5 at ¶ 2. At the time the current owner bought the property from the City official, the City did not require or threaten deconversion. _Id._ Indeed, the City has classified the property as a "legal nonconforming use" based on its point of sale inspection. Ex. 6. On October 30, 2006, however, the property owner and potential buyer attempted to purchase transfer stamps from the Calumet

2

City Inspectional Services. Ex. 5 at ¶ 4. The City conditioned the issuance of the transfer stamp on the payment of the outstanding water bill. *Id.* Moreover, the City told the buyer that it would not issue a certificate of occupancy until the property was deconverted. *Id.* The City explained to the buyer that, although the buyer could close the sale of the property, the City would eventually demand deconversion of the property. *Id* at ¶ 5. After hearing the City's position, the buyer became very concerned about proceeding with the purchase. *Id* at ¶ 6. On October 31, after the seller of the property complained to the City, the City agreed to issue a certificate of occupancy for the property without deconversion. *Id.* at ¶ 7. However, when the owner contacted the buyer on November 1, the buyer did not renew the offer to purchase the property. *Id.* at ¶ 8. As a result, the owner lost the only opportunity to sell the property. The sale was necessary to prevent foreclosure of the property. *Id.* at ¶ 9.

     5.     <u>514 Pulaski</u>. Before the owner placed 514 Pulaski, a multiple-family dwelling, on the market, the City was contacted to determine the property's classification so that it could be offered for sale through the regional multiple listing service and the owner would know whether the City would require deconversion of the property. The City responded that 514 Pulaski could only be listed as a single-family property and refused to recognize it as a legal nonconforming multiple-family property. The owner of the property believes that the property is legal nonconforming and the City provided no evidence that the property is not legal nonconforming. (The City's counsel refused to provide the City file for this property requested by Plaintiff's counsel.) The City stated that the only way to avoid deconversion was for the owner to provide a letter from a structural engineer stating that the property was originally built as a multiple-family property. The owner could also not afford to hire such an engineer. The owner of the property could not afford to deconvert the property or in the alternative, to sell the property at the lower

selling price of a single-family residence, so it has not been listed for sale as a multiple-family property.

6.    <u>Plat of survey</u>. Since the entry of the Order, in violation of the Order, the City has delayed the transfer of property by conditioning the issuance of a transfer stamp on the receipt of an "original survey for the property being transferred," pursuant to Section 82-327(c) of the Calumet City Municipal Code. The City refuses to issue transfer stamps, even though the taxes are tendered, without the survey.

7.    <u>Re-build permit</u>. Since entry of the Order, the City has denied property owners of legal nonconforming property a re-build letter to rebuild property that is damaged by fire or other casualty. Ex. 7 at ¶ 5. Lenders frequently require a re-build letter to complete the mortgage process. *Id.* The City now requires the owner to agree to deconvert the property before the City will issue the letter. *Id.* Ordering deconversion of property in this manner is a clear violation of the Order. Ex. 1.

8.    The conduct described in paragraphs 4 through 7 above, plainly violates the Order. For example, as seen at 514 Forsythe, the City continues to unlawfully condition the issuance of transfer stamps on the final payment of the water bill. Similarly, the City also conditions the issuance of transfer stamps on receipt of a plat of survey. Conditioning issuance of transfer stamps on anything other than payment of the transfer tax is a direct violation of the Order. Ex. 1. Moreover, the City has prevented the transfer of legal nonconforming property by threatening to refuse to issue certificates of occupancy and threatening to issue deconversion orders. Further, the City has violated the Order by ordering deconversion of property without providing any evidence that the subject property is not legal nonconforming while refusing to provide the documents (*i.e.*, the City's file for the property) that would allow the owner of the

4

property to easily establish that the City has for many years approved the use of the property as legal nonconforming.

9.      The City's conduct has directly led to extreme hardship on property owners and the loss of sales. Ex. 5 at ¶ 9. The City's behavior indicates that, unless punished, the City will continue to violate the Order. The City's conduct plainly warrants a finding of contempt because the City has knowingly and repeatedly violated the Court's Order, has misrepresented to the Court that it would not violate the Order and has ignored the Realtor Association's efforts to curtail the City's conduct. *United States v. United Mine Workers of Am..* 67 S.Ct. 677 (1947); *Rockwell Graphic Syst., Inc. v. DEV Indus., Inc.,* 91 F3d 914, 920 (7ᵗʰ Cir. 1996) (finding that the purpose of contempt proceedings are to secure compliance with prior court order), *remanded to* No. 84-C-6746, 1997 WL 285813 (N.D.Ill. May 23, 1997).

10.      Further, because the City's violations of the Order have directly led to adverse financial consequences to the property owners and the buyer of 514 Forsythe, the Court should include in its contempt order a requirement that the City compensate the property owners and the buyer of 514 Forsythe for their losses. *Id. See also, Cannon v. Loyola Univ. of Chicago,* 676 F. Supp. 823, 828 (N.D. Ill. 1987) (holding that "[a] district court has broad discretion to fashion an appropriate coercive remedy in a case of civil contempt, based on the nature of the harm and the probable effect of alternative sanctions") *vacated in part,* 687 F.Supp. 424 (N.D. Ill. June 21, 1988).

WHEREFORE, for the reasons set forth above, the Realtor Association requests that the Court enter an order that directs the City to show cause why it should not be held in contempt for failing to comply with the Court's August 8, 2006 Order and to produce within 14 days the property files for 514 Pulaski and 514 Forsythe. Upon a finding of contempt, plaintiff requests

105095v4

that the Court impose a penalty that will cause the City to comply with the Order, compensate plaintiff and the victims of the City's violations of the Order by awarding damages, including attorneys' fees and expenses and compensation for the losses sustained by property owners of 514 Pulaski and 514 Forsythe, the buyer of 514 Forsythe, and their agents, due to the City's patent violations of the Order and grant such other relief as the Court deems just and proper.

Dated: November 17, 2006      Respectfully submitted,
                             **REALTOR® ASSOCIATION OF**
                             **WEST/SOUTH SUBURBAN CHICAGOLAND**

                          By:     <u>s/Patrick T. Nash</u>
                               One of its Attorneys

Philip C. Stahl
Patrick T. Nash
Maggie M. Hanel
Grippo & Elden LLC
111 South Wacker Drive
Chicago, Illinois 60606
(312) 704-7700

6

105095v4

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

REALTOR® ASSOCIATION OF WEST/          )
SOUTH SUBURBAN                          )
CHICAGOLAND,                            )     Case No. 06 C 2271
                       *Plaintiff,*     )
                                        )
        v.                              )     Judge Milton I. Shadur
                                        )
CALUMET CITY, ILLINOIS,                 )
                       *Defendant.*     )
                                        )

## ORDER GRANTING PRELIMINARY INJUNCTION

This matter coming to be heard on Plaintiff's motion for a preliminary injunction, due

notice having been given, and the Court being fully advised in the premises, for the reasons set

forth on the record at the hearing of this matter on August 2, 2006, and at prior hearings, and

based on the written submissions of the parties, the Court finds that, as to Plaintiff's claims that

the Deconversion Provisions and the Point of Sale Inspection Ordinance (as defined below) are

facially unconstitutional: (i) Plaintiff has associational standing, (ii) Plaintiff has established a

high likelihood of success on the merits, (iii) there is no adequate remedy at law and Plaintiff and

its Members will suffer irreparable harm if injunctive relief is not granted, (iv) the irreparable

harm the Plaintiff and its Members will suffer if injunctive relief is wrongfully denied will

outweigh any irreparable harm the Defendant will suffer if injunctive relief is wrongfully

granted, and (v) granting injunctive relief will not disserve the public interest in terms of the

consequences to non-parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

    1.     Calumet City, Illinois, including its agents, employees, officers, successors and

members (collectively, the "City"), is prohibited and enjoined from enforcing (i) Section 14-1 of

Chapter 14, Article I of the Calumet City Code (the "Point of Sale Inspection Ordinance"), including but not limited to those provisions of the Point of Sale Inspection Ordinance that require sellers of legal nonconforming property to "deconvert" them into structures with fewer income-producing rental units (the "Deconversion Provisions"), and (ii) Section 327(b) of Chapter 82, Article X of the Calumet City Code. This Order shall not prohibit the City from attempting to collect unpaid water bills by lawful means other than pursuant to Section 327(b) of Chapter 82, Article X of the Calumet City Code.

2.      The City is prohibited and enjoined from (i) conducting inspections pursuant to the Point of Sale Inspection Ordinance; (ii) prohibiting the sale of property and refusing to issue transfer stamps in the absence of a point of sale inspection and/or issuance of a "certificate of compliance" or "conditional certificate of compliance;" and (iii) ordering the deconversion of legal nonconforming property. The City shall allow the sale or transfer of property without requiring point of sale inspections or deconversions of legal nonconforming property.

3.      This order shall remain in effect until the trial on the merits, unless modified by this Court.

4.      Because no costs or damages will be incurred or suffered by the City if the requested injunction is issued, the Court deems it proper that, pursuant to Fed. R. Civ. P. 65(c), no security need be given by the Plaintiff.

Dated:        August 8, 2006                ENTERED:

Judge Milton I. Shadur

86409v4

# EXHIBIT 2

**Mail From:**      Pat Nash
**Recipients:**     , PCS@grippoelden.com, jmurphey@rmcj.com, MMH@grippoelden.com
**Date:**           8/10/2006 4:50:12 PM
**Subject:**        Realtor Association v. Calumet City - Violation of Injunction

Mark and John:

This email follows up on our telephone conference this morning regarding Calumet City's violation of the injunction order entered by Judge Shadur.  Specifically, we explained that we had evidence that, in violation of the injunction, Calumet City is requiring buyers to sign a form entitled "Consent to Accept a Conditional Certification of Compliance to be Executed by Buyer(s)" as a condition of transfer stamps being issued.  You asked us to provide you the address of the property involved where Calumet City required the form.  This will confirm what I told you this morning.  We did not learn of Calumet City's violation of the injunction in connection with any particular property.  Rather, after the injunction was entered, Realtor Association Members and property sellers have personally gone to Calumet City's Department of Inspectional Services to find out how the process would work.  On those occasions, employees in the Department of Inspectional Services have stated that the form is now required on all sales and that transfer stamps would not be issued unless the buyer signed the form.

Please provide written confirmation that you have instructed Calumet City that it is not permitted to require buyers to sign the form, or to do anything else other than pay the tax, as a condition of transfer stamps being issued.

Patrick

----------------------------------------
Patrick T. Nash
Grippo & Elden LLC
Phone: 312.704.7711
Fax:  312.558.1195
E-mail: pnash@grippoelden.com


**ATTACHMENTS:**

| Name | Size | Date |
|------|------|------|
| MESSAGE | 2052 | 8/10/2006 4:50:12 PM |

**This page is intentionally left blank**

## 03311 (SSAR) - RE: Realtor Association v. Calumet City - Violation of Injunction

| | |
|---|---|
| **From:** | "Mark Sterk" <MSterk@odelsonsterk.com> |
| **To:** | "Pat Nash" <pnash@grippoelden.com> |
| **Date:** | 8/11/2006 9:07 AM |
| **Subject:** | RE: Realtor Association v. Calumet City - Violation of Injunction |
| **CC:** | "John Murphey (E-mail)" <jmurphey@rmcj.com> |

Patrick,
This reiterates what I told you yesterday that the Department of Inspectional Services has been advised not to conduct any point of sale inspections or reinspections or to request anyone to execute the consent to accept a conditional certificat of compliance orany other document other than the transfer stamp form. I have been informed that the Department is directing stamp purchasers to City Hall to without any action by the Department. If your client's members have information about a specific address please forward it to me so that I can investigate the cause of the complaint.
Marki

> -----Original Message-----
> **From:** Pat Nash [mailto:pnash@grippoelden.com]
> **Sent:** Thursday, August 10, 2006 4:50 PM
> **To:** Mark Sterk; jmurphey@rmcj.com
> **Cc:** Philip Stahl
> **Subject:** Realtor Association v. Calumet City - Violation of Injunction
>
> Mark and John:
>
> This email follows up on our telephone conference this morning regarding Calumet City's violation of the injunction order entered by Judge Shadur. Specifically, we explained that we had evidence that, in violation of the injunction, Calumet City is requiring buyers to sign a form entitled "Consent to Accept a Conditional Certification of Compliance to be Executed by Buyer(s)" as a condition of transfer stamps being issued. You asked us to provide you the address of the property involved where Calumet City required the form. This will confirm what I told you this morning. We did not learn of Calumet City's violation of the injunction in connection with any particular property. Rather, after the injunction was entered, Realtor Association Members and property sellers have personally gone to Calumet City's Department of Inspectional Services to find out how the process would work. On those occasions, employees in the Department of Inspectional Services have stated that the form is now required on all sales and that transfer stamps would not be issued unless the buyer signed the form.
>
> Please provide written confirmation that you have instructed Calumet City that it is not permitted to require buyers to sign the form, or to do anything else other than pay the tax, as a condition of transfer stamps being issued.
>
> Patrick
>
> --------------------------------------------
> Patrick T. Nash
> Grippo & Elden LLC
> Phone: 312.704.7711
> Fax: 312.558.1195
> E-mail: pnash@grippoelden.com

This page is intentionally left blank

| Mail From: | Pat Nash |
| --- | --- |
| Recipients: | , PCS@grippoelden.com, jmurphey@rmcj.com, MMH@grippoelden.com |
| Date: | 9/5/2006 4:35:57 PM |
| Subject: | Realtor Association v. Calumet City |

Mark and John:

Because we did not want to surprise you tomorrow, I am writing to inform you about two serious matters that we plan to raise with Judge Shadur at tomorrow's hearing.

First, the Realtor Association has received a complaint from a Member regarding comments made by Tiffany Nelson of Odelson Sterk to a lender who had been contacted by a property owner regarding refinancing a mortgage. The property at issue is located at 424-26 Sibley in Calumet City. The owner, Ms. Veronica Black, purchased the property in 1997 as a four flat and, at that time, Calumet City issued a certificate of occupancy for 4 units. Sometime thereafter, the property in question was rezoned to R-1 (single family homes). Earlier this year before the Realtor Association filed suit against Calumet City, Ms. Black attempted to refinance her mortgage. The lender declined because the property had been rezoned. Ms. Black then sought assistance from Calumet City. Calumet City responded via a March 13, 2006 letter from Ms. Nelson. In that letter (attached), Ms. Nelson recognized that the building was "legal nonconforming" but further stated that "should the property be sold . . . the Calumet City Municipal Code must be complied with." Based on the POS inspection ordinance enacted at that time, Ms. Nelson's statement appears to have been accurate. However, as you know, Judge Shadur has enjoined enforcement of the POS inspection ordinance that required deconversion of legal conforming property at the point of sale. Moreover, on August 24, Calumet City adopted a new POS inspection ordinance which no longer allows or requires the deconversion of legal nonconforming property.

Over the last few weeks, Ms. Black has continued her efforts to refinance her mortgage with a different lender. In light of the R-1 rezoning, the lender contacted Calumet City to determine what impact the rezoning had on Ms. Black's property. The lender spoke to Ms. Nelson. Ms. Nelson told the lender that because the building was zoned as R-1, it would have to be sold as a single family dwelling. In essence, Ms. Nelson told the lender that, if Ms. Black decided to sell her property, she would have to deconvert it, even though the property is legal nonconforming as Ms. Nelson recognized in her March 13, 2006 letter. Ms. Nelson's statement is plainly incorrect under either the injunction entered by Judge Shadur or the new POS inspection ordinance — both of which prohibit Calumet City from ordering deconversions of legal nonconforming property. Ms. Nelson's false statement caused the lender to decline to refinance Ms. Black's mortgage, thus directly and adversely affecting Ms. Black's property interests. The Realtor Association believe Ms. Nelson's conduct violates both the spirit and the letter of the injunction. We are particularly troubled by Ms. Nelson's conduct because she is counsel of record in this litigation. Thus, you cannot blame the violation of the injunction on an unidentified Calumet City employee who had not been informed about the injunction as you did when we first informed you of Calumet City's violations of injunction.

We plan to ask Judge Shadur for immediate relief, including holding Calumet City in contempt and ordering Calumet City to correct the misinformation supplied to the lender regarding Ms. Black's property.

Second, we have received information that Calumet City continues to violate the injunction by requiring buyers of property to sign "as is" affidavits as a condition of obtaining transfer stamps. The most recent example of this occurring involves property located at 900 160th Place, which is owned by HUD. We also plan to seek relief from Judge Shadur regarding Calumet City's conduct in this regard including by explaining that we had brought previous similar violations to your attention, you conceded that the conduct violated the injunction and you promised to inform Calumet City officials to stop requiring as-is affidavits.

Patrick

---------------------------------------------
Patrick T. Nash
Grippo & Elden LLC
Phone: 312.704.7711
Fax:  312.558.1195


E-mail: pnash@grippoelden.com

**ATTACHMENTS:**

| Name | Size | Date |
|------|------|------|
| MESSAGE | 4903 | 9/5/2006 4:35:57 PM |
| Document_2.pdf | 100261 | 9/1/2006 2:28:25 PM |

# EXHIBIT 3

1

2            *IN THE UNITED STATES DISTRICT COURT*
              *NORTHERN DISTRICT OF ILLINOIS*
3                 *EASTERN DIVISION*

4
*REALTOR ASSOCIATION OF WEST/SOUTH*   ) *DOCKET NO. 06 C 2271*
5 *SUBURBAN CHICAGO LAND*              )
                  *Plaintiff,*)
6                         )
     *vs.*                      )
7                         )
*CALUMET CITY, ILLINOIS*          ) *Chicago, Illinois*
8                         ) *September 6, 2006*
              *Defendant.*) *8:45 o'clock a.m.*
9

10

11

12     *TRANSCRIPT OF PROCEEDINGS BEFORE THE HONORABLE*
            *MILTON I. SHADUR, Judge*
13
*APPEARANCES:*
14
*For the Plaintiff:*
15           *MR. PHILIP STAHL and*
          *MR. PATRICK T. NASH*
16
*For the Defendant:*
17           *MR.MARK H. STERK*

18

19

20                *JESSE ANDREWS*
21    *Official Court Reporter - U. S. District Court*
           *219 S. Dearborn Street*
22         *Chicago, Illinois  60604*
           *(312) 435-6899*
23

24       *   *   *   *   *   *

25

7

1 schedules where we will be out of town, either of us.  Could we

2 have then until October 4th?  That's two more weeks.

3          THE COURT:  Sure.  October 4th then for the response.

4 And as I said in connection with one of the earlier cases, I

5 don't set a reply.  You know, we will see.

6          MR. STAHL:  Right.

7          THE COURT:  I will expect that you will have

8 addressed the issues.  And let me take a look at what we have

9 got here.  Suppose that I give you October 13th.  How is

10 October 13th, that's a Friday or the 12th, that's a Thursday at

11 8:45 look for everybody?  Sandy, double check.

12          Is that okay for everybody?

13          MR. STERK:  It works for me.

14          MR. STAHL:  October 12th, your Honor.

15          THE COURT:  Yes, 8:45, then for status on October

16 12th.

17          Thank you.

18          MR. STERK:  Okay.  Thank you, Judge.

19          MR. STAHL:  Your Honor, before we depart --

20          THE COURT:  Yes.

21          MR. STAHL:  -- there are a couple of problems with

22 Cal City's noncompliance with the injunction that's in force

23 now that Mr. Nash would like to address.  We sent a

24 communication to Mr. Sterk yesterday.  We just wanted to

25 discuss how to get this in front of the Court for resolution.

8

1          MR. NASH:  Thank you, your Honor.

2          There were really two issues that we raised in the

3    communication with Mr. Sterk last night.  One we think is a

4    direct violation of the injunction.  We have received

5    information that Cal City is telling buyers of property that

6    Cal City will not issue transfer stamps unless the buyers sign

7    what are called "As Is" affidavits, saying that the buyer will

8    be responsible for certain repairs at some point in the future

9    if they go ahead with the sale.  And if they don't sign that

10   affidavit, then transfer stamps will not issue.

11         This was a problem very early on after the court

12   entered the injunction.  We raised it with Mr. Sterk and with

13   Mr. Murphey.  They candidly concede that Cal City should not be

14   doing it, and they informed us that they would tell Cal City to

15   stop it.  Unfortunately, we received notice last week that this

16   practice is still going on.  So that's one issue.

17         They second issue is more of what I will call the

18   indirect --

19         THE COURT:  Wait a minute.  Let's pause on that one.

20         MR. NASH:  Okay.

21         THE COURT:  That's just a matter of controlling your

22   client, right?

23         MR. STERK:  Well, you know this is a communication

24   that was sent to me yesterday --

25         THE COURT:  I am not blaming you.

9

1       MR. STERK: -- at 4:38 in the afternoon when he found

2 out about it last week. You know, where I come from they call

3 that sandbagging.

4       THE COURT: Well, I don't know.

5       MR. STERK: This could have been -- he could have

6 told me about that before.

7       THE COURT: Well, look. It sounds to me as though

8 this is just a matter of your -- I won't call it, "reading the

9 riot act to your client," but simply informing them that that's

10 sort of an end run around the provision.

11       MR. STERK: If that is in fact happening. We have

12 had this conversation with them. And we have admonished our

13 clients that they are not suppose to do anything like that.

14 That they are simply to issue the transfer stamps during the

15 pendency of the preliminary injunction. And I have been

16 assured that that's what they are doing.

17       THE COURT: Okay.

18       MR. STERK: So if they are not doing that, and he has

19 specific factual information about a particular transaction, I

20 would like to know about it so that I can take the client to

21 the proverbial woodshed.

22       THE COURT: Then tell them.

23       MR. STERK: Thank you.

24       MR. NASH: Well, I did provide the address

25 information on that.

10

1          THE COURT:  I expect that you are going to work that
2  one out.

3          MR. NASH:  Okay.

4          THE COURT:  I doubt that you are going to have to
5  present that to me.  You know Mr. Sterk has said an I credit
6  that:  That's not something that's appropriate.  And if he
7  finds out it's being done we will make it very clear to the
8  client that it can't be done.

9          MR. NASH:  Thank you.

10          There is a second issue, which is a less direct
11  violation of the injunction, but still we think is violated by
12  the injunction.  A property owner recently sough to refinance
13  the mortgage on her property.  The property when she bought it
14  was a four-flat.  It was subsequently rezoned to a
15  single-family dwelling.  The lender wouldn't refinance because
16  of the rezoning.  The property owner then sought Cal City's
17  help on what to do.  And last week an associate --

18          THE COURT:  Legal noncompliance.

19          MR. NASH:  Legal nonconforming.  And Cal City has
20  admitted in writing that it is legal nonconforming.

21          Last week an associate from Mr. Sterk's office
22  informed the lender who called that when the property is sold
23  it will have to be sold as a single-family unit not as an
24  existing four-flat.  Of course the lender then refused to
25  refinance which directly impacted the owner's rights.  Now she

11

1 is left without the ability to refinance which she needs to do.

2     And what Mr. Sterk's association said is obviously

3 directly contrary to the injunction, which says you cannot

4 order deconversions of legal nonconforming.

5     THE COURT:  Have you informed Mr. Sterk about that.

6     MR. NASH:  Yes.  We informed him in any e-mail last

7 night.

8     MR. STERK:  I got an e-mail at 4:38 yesterday

9 afternoon, which I found simply because I went back to the

10 office because I forgot my cell phone.  Otherwise I wouldn't

11 have known about it until this morning.

12     THE COURT:  That's not ripe for me for me either.  I

13 am sure that Mr. Sterk -- you know, he knows the

14 responsibilities and he has been -- I certainly understand he

15 has been operating under them.  So it's matter of his making

16 sure that.

17     MR. STERK:  Right.

18     THE COURT:  You know this brings in mind the John

19 Paul Jones story.  You know when the Bonhomme Richard and the

20 Serapis are at it hot and heavy, there is a marine up in the

21 riggings and he's getting shot and shelled, piercing his

22 clothes and so on.  And when the word comes up -- you know to

23 surrender -- and John Paul Jones say, "I will not give up the

24 ship," you know.  The marine says, "There is always some SOB

25 who hasn't gotten the word."  You know in this case he's gotten

12

1 the word and he will do it.

2          MR. STERK:  But that's assuming that this has

3 happened.

4          THE COURT:  I know .

5          MR. STERK:  Because this is hearsay upon hearsay upon

6 hearsay.

7          THE COURT:  Again you know all I am telling you I

8 done except this one to have to come in front of me.

9          MR. NASH:  I simply raised it to see how your Honor

10 wanted to proceed.

11          THE COURT:  Well, talk to each other.

12          MR. STERK:  Thank you, Judge.

13          MR. NASH:  Thank you.

14      (WHICH WERE ALL OF THE PROCEEDINGS HAD AT THE HEARING OF
         THE ABOVE-ENTITLED CAUSE ON THE DAY AND DATE AFORESAID.)
15
                    C E R T I F I C A T E
16
I HEREBY CERTIFY that the foregoing is a true and correct
17 transcript from the report of proceedings in the above-entitled
   cause.
18
   _____
19 JESSE ANDREWS, CSR
   OFFICIAL COURT REPORTER
20 UNITED STATES DISTRICT COURT
   NORTHERN DISTRICT OF ILLINOIS
21 EASTERN DIVISION
   DATED: September 7, 2006
22

23

24

25

**EXHIBIT 4**

## 03311 (SSAR) - Realtor Association v. Calumet City

| | |
|---|---|
| **From:** | Maggie Hanel |
| **To:** | Murphey, John;  Sterk, Mark |
| **Date:** | 10/30/2006 11:26 AM |
| **Subject:** | Realtor Association v. Calumet City |
| **CC:** | Nash, Pat;  Stahl, Philip |

Counsel:

I write in regards to the Calumet City property located at 514 Pulaski Road.  We are investigating whether a Calumet City employee named "Becky" violated the August 8 Order.  As such, please send a copy of the file for 514 Pulaski Road to us before 5 p.m. on Wednesday, November 1.

As always, please call with questions.

Very truly yours,

Maggie Hanel

Maggie M. Hanel
Grippo & Elden LLC
111 South Wacker Drive
Chicago, Illinois 60606
Ph:     (312) 704-7753
Fax:    (312) 558-1195
Email: mhanel@grippoelden.com

This page is intentionally left blank

## 03311 (SSAR) - Realtor Association v. Calumet City: 514 Forsythe

| | |
|---|---|
| **From:** | Maggie Hanel |
| **To:** | Murphey, John;  Sterk, Mark |
| **Date:** | 10/30/2006 3:02 PM |
| **Subject:** | Realtor Association v. Calumet City: 514 Forsythe |
| **CC:** | Nash, Pat;  Stahl, Philip |

Counsel:

I write in regards to the Calumet City property located at 514 Forsythe.  As indicated in my earlier email, we are investigating whether Calumet City violated the August 8 Order.  In addition to the file for 514 Pulaski Road, please send a copy of the file for **514 Forsythe** to us before 5 p.m. on Wednesday, November 1.

As always, please call with questions.

Very truly yours,

Maggie Hanel


Maggie M. Hanel
Grippo & Elden LLC
111 South Wacker Drive
Chicago, Illinois 60606
Ph:      (312) 704-7753
Fax:     (312) 558-1195
Email: mhanel@grippoelden.com

**This page is intentionally left blank**

| Mail From: | Philip Stahl |
|---|---|
| Recipients: | MMH@grippoelden.com, Pat@grippoelden.com, MSterk@odelsonsterk.com, JMurphey@rmcj.com |
| Date: | 11/1/2006 9:50:16 AM |
| Subject: | Re: Realtor Association v. Calumet City: 514 Forsythe |

John,

It appears that the action of Cal City has caused this transaction not to close, inflicting substantial harm on the sellers. Please provide the last name of "Rebecca" in Inspectional Srrvices. I will call you this morning to discuss how you want to proceed.

Phil


Philip C. Stahl
Grippo & Elden LLC
111 South Wacker Drive
Chicago, Illinois 60606
Phone:  (312) 704-7730
Fax:  (312) 704-8771
pstahl@grippoelden.com

>>> "John Murphey" <JMurphey@rmcj.com> 10/31/2006 7:48 AM >>>
I was in an arbitration all day yesterday. I will review with Mr. Sterk today (you may have spoken to him already).

>>> "Maggie Hanel" <mhanel@grippoelden.com> 10/30/06 03:02PM >>>
Counsel:

I write in regards to the Calumet City property located at 514 Forsythe. As indicated in my earlier email, we are investigating whether Calumet City violated the August 8 Order. In addition to the file for 514 Pulaski Road, please send a copy of the file for 514 Forsythe to us before 5 p.m. on Wednesday, November 1.

As always, please call with questions.

Very truly yours,

Maggie Hanel


Maggie M. Hanel
Grippo & Elden LLC
111 South Wacker Drive
Chicago, Illinois 60606
Ph:     (312) 704-7753
Fax:    (312) 558-1195
Email: mhanel@grippoelden.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This transmission is intended only for the party to whom
it is addressed and may contain privileged and confidential
information. Any unauthorized use, dissemination or copying
of this transmission is prohibited. If you have received
this transmission in error, please notify us immediately
by telephone, return this transmission and delete or
destroy any copies (digital or paper). Unless expressly
stated in this e-mail, nothing in this message should be
construed as a digital or electronic signature. We do not
provide tax advice and therefore any advice contained in
this email and any attachments is not intended or written
to be used, and cannot be used, for purposes of avoiding
tax penalties that may be imposed on any taxpayer.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**ATTACHMENTS:**

| Name | Size | Date |
|---|---|---|
| MESSAGE | 3549 | 11/1/2006 9:50:16 AM |

**This page is intentionally left blank**

**Mail From:**     Philip Stahl
**Recipients:**    MMH@grippoelden.com, Pat@grippoelden.com, jmurphey@rmcj.com
**Date:**          11/2/2006 12:19:25 PM
**Subject:**       514 Forsythe

John,

Cal City's actions-- in violation of the injunction and without authority under the Amended Ordinance-- and your decisison to ignore our emails and my phone call have resulted in the loss of a sale and substantial economic and other damage to the seller and buyer. I had hoped we could rectify the situation and mitigate the loss. Unfortunately, that opportunity is lost.

We will proceed to ask Judge Shadur to hold Cal City and its responsible agents in contempt and to impose all sanctions and remedies allowed by law. Please let me know whether Cal City will provide the property file and the name of the City official we requested so that we may move expeditiously.

Phil


Philip C. Stahl
Grippo & Elden LLC
111 South Wacker Drive
Chicago, Illinois 60606
Phone:  (312) 704-7730
Fax:  (312) 704-8771
pstahl@grippoelden.com


**ATTACHMENTS:**

| Name | Size | Date |
|------|------|------|
| **MESSAGE** | 1424 | 11/2/2006 12:19:25 PM |

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| REALTOR® ASSOCIATION OF WEST/ SOUTH SUBURBAN CHICAGOLAND, | ) ) ) | |
| *Plaintiff,* | ) ) | Case No. 06 C 2271 |
| v. | ) ) | Judge Milton I. Shadur |
| CALUMET CITY, ILLINOIS, | ) ) | |
| *Defendant.* | ) ) ) | |

**DECLARATION OF DEBRA HOUSTON IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE WHY CALUMET CITY SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING THE COURT'S INJUNCTION**

DEBRA HOUSTON declares as follows:

1.      The following facts are personally known to me, and if called to testify, I could and would competently testify thereto.

2.      I am a homeowner in Calumet City, Illinois. My property is located at 514 Forsythe. I purchased the property from a Calumet City official seven years ago. The previous owner owned and operated the property as a multiple-family dwelling. When I purchased the property from the Calumet City official, I was not informed that it was not legal nonconforming or that it would have to be deconverted.

3.      I planned to sell the property as a legal nonconforming property and scheduled the closing of the property on October 30, 2006. On prior occasions, Calumet City had confirmed that the property is legal nonconforming. Exhibit 6 includes true and correct copies of documents from Calumet City which show that Calumet City's records show that the property is legal nonconforming.

4.      Prior to the closing, the buyer and I went to Calumet City Inspectional Services to purchase the necessary transfer stamp. Rebecca, an employee at the Calumet City

Inspectional Services, required the payment of the final water bill before Calumet City would issue the transfer stamps.

5.      Rebecca also refused to issue the certificate of occupancy. Rebecca explained that the buyer could not occupy the property until it was deconverted. Rebecca then warned the buyer that if the buyer closed on the property the City would eventually demand the deconversion of the property.

6.      Without the certificate of occupancy, the buyer did not want to close the sale of the property on October 30.

7.      I called the Calumet City Inspectional Services on October 31 to request further information about the decision to prohibit occupancy of the property. Again, I spoke with Rebecca. During our conversation, Rebecca agreed to issue a certificate of occupancy for the property prior to deconversion.

8.      On November 1, 2006 I contacted the buyer. The buyer was concerned about the threatened deconversion of the property. Also, the buyer could no longer afford to close the sale of the property because, as a result of the delay by Calumet City, she had to use the money for the closing to renew the lease on her current apartment.

9.      As a result of the City's action, I suffered an emotional and financial hardship. The lives of my husband and I have been turned upside down by Calumet City's conduct. We thought we were going to sell the property on October 30 and packed all of our belongings. We had found a new place to live and had to put down money to hold the new place. Now, we are going to lose that money. We have borrowed money for repairs on our home. Now, because the closing did not happen, we have no money to pay the people who we borrowed from who expected to get their money back after closing. We are confined to a home

that we can't sell due to the deconversion law. We are very depressed. We were not aware of the deconversion laws when we purchased our home. We want to sell this property as a Multi-Unit. This has caused us severe financial, mental, physical and emotional stress. My husband and I lost the costs directly associated with the sale. including lost wages, the negotiated settlement amount for the property's second mortgage. the cost of work and inspections required to close property, and the security deposit for the place we intended to move upon the closing of the property. Moreover, it is likely that I will lose the property to foreclosure as I am three months behind the first mortgage.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 16 2006                    _Delva Houston_

# EXHIBIT 6

# CALUMET CITY FIRE DEPARTMENT
## DEPARTMENT OF INSPECTIONAL SERVICES
### (708) 891-8120
### RESIDENTIAL/MULTIFAMILY "POS" INSPECTION

The following is the result of the inspection on the occupancy at _514 FORSYTHE_ . This inspection is not in any way intended to be a complete list of Code or Municipal Ordinance requirements. Our inspection can be substantially limited by access available and stored items or furniture. It is not meant to take the place of private home inspections nor will it cover the same items. Some occupancies may require certifications to be completed on individual systems such as the heating appliances, roofing, or fire protection systems. Certifications must be performed by contractors that are registered in the City of Calumet City. Some of the repairs may require registered contractors and permits. If you have any questions about this inspection please call us at (708) 891-8120.

Specific requirements of the point of sale inspections and limitations is available by referring to Municipal Code Section 6-308 as amended on May 9,1996. The first inspection and subsequent reinspection is included in the cost. Any additional inspections or failure of owner/agent/designee to appear for a scheduled inspection will require additional fees.

The inspector will note the deficiencies by writing "NO"in the blank in front of the statement and may additionally circle a specific area or make comments. On the back of the inspection sheets is some of the code language that relates to the deficiencies noted by the inspector. The "PM" sections refer to the present adopted Property Maintenance Code and the "MC" refers to Municipal Code references. There may be additional Code requirements that explain a deficiency.

INSPECTOR _Radeck_          1ST INSPECTION DATE _3-18-99_

I AM THE OWNER/AUTHORIZED AGENT OF THE ABOVE PROPERTY AND CAN LEGALLY AUTHORIZE THIS INSPECTION.

OWNER/AUTHORIZED AGENT IN ATTENDANCE _M. Zimmerman_
PRINTED NAME _Michael Zimmerman_

INSPECTOR _____          REINSPECTION DATE _____

I AM THE OWNER/AUTHORIZED AGENT OF THE ABOVE PROPERTY AND CAN LEGALLY AUTHORIZE THIS INSPECTION.

OWNER/AUTHORIZED AGENT IN ATTENDANCE _Michael A. Zimmerman_

APPROVED FOR CERTIFICATE OF OCCUPANCY BY _____

DATE _9-14-99_

# EXTERIOR OF HOUSE AND GARAGE

1) YES — Are property areas being maintained in a clean, safe, and sanitary condition ?

2) YES — Are private sidewalks, driveways, and similar areas being kept free from trip hazards, large cracks, etc. ?

3) YES — Are the weeds, plant growth, and grasses less than 6 inches ?

4) YES — Are fences, retaining walls, porches, and decks in good repair ?

OK 5) NO — Is the street address posted on the property and visible from the public right of ways such as the street and alley ?

Missing or deficient at (REAR OF GARAGE) HOUSE

6) YES — Are the gutters, siding, fascia, and soffit areas free of peeling paint and deterioration ?

7) YES — Are all the exterior walls and chimneys in good repair ?

8) YES — Is the roof preventing the elements from damaging the structure ?
CERTIFICATION NEEDED YES ____ NO X

OK 9) NO — Are all windows, doors, screens, and frames in good repair on the exterior ?

10) YES — Do the exit doors have single keyed locks/dead bolts or is key permanently in place ?

11) YES — Are all light fixtures and electrical outlets in good repair and are outside outlets protected by a ground fault interrupter circuit ?

12) YES — Are all sheds or auxiliary structures in good repair ?

EXTERIOR COMMENTS #9 GARAGE FASCIA - DOOR TRIMS - OK HOMES WINDOWS ALL NEED SMALL AMOUNT OF PAINT

LEGAL NON - CONFORMING USE

*11/16661 - Buyer*

PAY TO THE ORDER OF
CORUS BANK
FOR DEPOSIT ONLY
CITY OF CALUMET CITY
CLEARING ACCOUNT
502.536 2

30 - 08 - 401 - 033/034
Two Units

CITY OF CALUMET CITY

09/17/99    11:36:17    ADD

| 1 | R/E TRANSFER EX | | .00 |
| | 16660/514 FORSYTHE | 3 | |
| 2 | R/E TRANSFER EX | | .00 |
| | ZIMMERMAN/EXEMPT | 3 | |
| 3 | REAL ESTATE TRA | | 460.00 |
| | 16661/514 FORSYTHE | 2 | |
| 4 | REAL ESTATE TRA | | 12.00 |
| | 16661/514 FORSYTHE | 1 | |
| 5 | REAL ESTATE TRA | | .00 |
| | HOUSTON/BUYER | 3 | |

AMOUNT PAID        472.00
AMOUNT TENDERED    472.00
CHANGE DUE          .00

13    CASHIER CODE: EQ

# CITY OF CALUMET CITY

### OFFICE OF THE CITY CLERK
## MICHELLE MARKIEWICZ QUALKINBUSH
### (708)891-8110

Monday, Tuesday, Thursday & Friday    9:00 a.m. - 5:00 p.m.
Wednesday    9:00 a.m. - 8:00 p.m.

_____ Fragua _____ CC

...t City, IL    60409    Thornton Township
(...is a vacant lot, please attach legal description)

$ 118,000

...urchase    $ _____

Net consideration for real estate    $ _____

Net taxable consideration to be covered by stamps *Exempt*    $ _____

TOTAL Amount of tax stamps paid by: (CIRCLE ONE)  SELLER  (BUYER)  (BOTH)    $ 472

If EXEMPT:  Transaction is exempt under paragraph _____ of Sec. 26-75 of the Calumet City Municipal Code.

hereby declare the full actual consideration and above facts contained in this declaration to be true and correct.

person executing this signature block swears and affirms under penalty of perjury that the information is true and correct. Failure to comply with this provision may result in prosecution.
PRINT NAME: Debbie Rasala    SIGN Debra Rasel

Name & Address of Seller/Owner/Grantor:

Name Mike Zimmerman
Address 514 Forsyth
City Calumet City    State IL
Zip 60409    Phone # 862-8830

Name & Address of Buyer/Grantee:

Name Debra Houston
Address 7616 S 5th Ave
City Chicago    State IL
Zip 60641    Phone # 312 - 574-4

Agent's Name & Company Name Debbie Rasch - Realty Ex.

Agent must be a licensed attorney and/or licensed broker/realtor or the owner of record. In the event the party requesting is an agent, please put your bar number and/or broker's license number below your name.

Bar and/or Broker's License # 076355649
(CIRCLE ONE)
Address 1010 E. 16t
City So Holland    State IL
Zip 60473    Phone # 331-8497

# CITY OF CALUMET CITY, ILLINOIS
## DEPARTMENT OF INSPECTIONAL SERVICES
### 708-891-8120

## *ANNUAL RESIDENTIAL/MULTIFAMILY RENTAL INSPECTION*

The following is the result of an inspection at the property known as ___5/4 For Sale___

The inspection is not in any way intended to be a complete list of Code or Municipal Ordinance requirements. The inspection can be substantially limited by access available and stored items or furniture preventing access. It is not meant to take the place of a private home inspection nor will it cover the same items.

Some buildings may require certifications to be complete on individual systems such as the heating appliances, roofing, or fire protection systems. Specific requirements of the *Annual Rental Inspection* and limitations are available by referring to the Calumet City Municipal Code, Section 6-308, available in the City Clerk's Office. The first inspection and subsequent re-inspection is included in the initial cost. Any additional inspections or failure of the owner/agent/designee to appear for a scheduled inspection will require additional fees.

The inspector will note the deficiencies by writing "NO" in the blank in front of a statement and may additionally circle a specific area or make comments. On the back of the inspection sheets are some of the code language that relates to the deficiencies noted by the inspector. The "PM" sections refer to the present adopted Illinois Property Maintenance Code and the "MC" refers to the Calumet City Municipal Code reference. Copies of these Codes are available for viewing in the City Clerk's Office. Some of the repairs may require registered contractors and permits.

## Non-conforming structures may be subject to additional requirements.

Multi-family occupancies converted from original single family use without the required proof of permit and/or the required zoning applications may be required to de-convert and return the building to the original intent of single family use when the owner (s) choose to sell this occupancy. Multi-family occupancies converted from the original purpose and construction of unit usage without the required proof of permit and/or the required zoning applications may be required to de-convert and return the building to the original intent of design when the owner (s) choose to sell this building.

ZONING_____ CONFORMING (YES)_____ (NO)_____ # OF EXISTING UNITS _2_ *

INSPECTOR___Vacant 103___ (NO EEYS) DATE _11-18-05_

OWNER PRINTED NAME _Hussein Mann_ DATE _11-18-05_

I AM THE OWNER/AUTHORIZED AGENT OF THE ABOVE PROPERTY AND CAN LEGALLY AUTHORIZE THIS INSPECTION. I HAVE RECEIVED PERMISSION FROM ANY TENANTS/LEASEES TO ENTER THEIR UNIT(S) FOR THIS INSPECTION.

OWNER SIGNATURE _Hussein H. Mann_          see 12/14 /12

### REINSPECTIONS:

INSPECTOR_____ DATE _Fr. Dec 16, 11:3. AM_

INSPECTOR_____ DATE_____

APPROVED FOR OCCUPANCY (ONLY ORIGINAL UNITS) DATE _12-14-05_

APPROVED FOR OCCUPANCY (FOR RENTAL PURPOSES) DATE _12-14-05 /unit_

NOT APPROVED FOR OCCUPANCY** DATE_____

*This building is non-conforming per the Calumet City Zoning Ordinance. An application for remedy to re-zoning for land is attached.

**EXPLANATION OF NOT APPROVED OR CONDITIONAL CERTIFICATION_____

___deconvert prior to Sale___

**Building may not be sold before A *Point Of Sale Inspection* is completed**

FROM MCCOLLY REAL ESTATE          (THU)NOV 16 2006 12:45/ST. 12:44/No. 6882361B879 P 2

**GENERAL INTERIOR APARTMENT #** _____

13) Do all stairs have guardrails if over 4 steps and are stairs in good repair ?
LOCATION _____

14) Are walls,floors, and ceilings free of peeling paint, holes, deterioration and in good repair?
LOCATION _____

15) Are all windows opening properly and weight cords attached ?
LOCATION _____

16) Are fans present in all baths where windows are not present and are they vented outside?
LOCATION _____

17) Are all toilets, sinks, showers, and baths free from leaks, drain blockage, other defects affecting their operation ?

18) Are ground fault interrupter circuits protecting the bath, kitchen, garage, and unfinished basement outlets?
MISSING/NOT WORKING PROPERLY AT _____

19) Is the property free from "romex" type wiring, extension cords, or excessive amounts of flexible metallic raceways (Bx, Greenfield) ?
LOCATION _____

20) Are all junction boxes properly covered ?
LOCATION _____

21) Does every bedroom, living, dining, family room, or other room used for sleeping, living, or cooking have at least two outlets and are they in good repair ?
LOCATION _____

22) Does every hall, stairway, laundry or mechanical rooms have an electric light fixture ?
LOCATION _____

23) Does the entry doors to halls have a properly operating door closure if required ?

24) Is a smoke detector present within 15 feet of each bedroom and on each level within the unit ? *but*

ADDITIONAL COMMENTS / STF/. O/D NOT INSPECTED

9/12/14

low batter at rear corridor / 2nd fl

2nd fl - Change Plastic water Supply
line hose at toilet to flexible stainless
** min to next years inspection
- weak batter at Smoke det
(owner will change today)

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| REALTOR® ASSOCIATION OF WEST/ SOUTH SUBURBAN CHICAGOLAND, | ) ) ) | Case No. 06 C 2271 |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Judge Milton I. Shadur |
| CALUMET CITY, ILLINOIS, | ) ) | |
| *Defendant.* | ) ) | |

**DECLARATION OF RICHARD SEBOK IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE WHY CALUMET CITY SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING THE COURT'S INJUNCTION**

RICHARD SEBOK declares as follows:

1.      The following facts are personally known to me, and if called to testify, I could and would competently testify thereto.

2.      I am a realtor in Calumet City.  I am an active member of the Realtor® Association of West/South Suburban Chicagoland (the "Realtor Association").

3.      I am informed that, on August 8, the Court entered a preliminary injunction enjoining the City from taking certain actions in connection with provisions of the Municipal Code of Calumet City, Illinois.

4.      Although the City does not enforce the point of sale inspection ordinance, the City continues to condition the issuance of a transfer stamp upon the completion of the original Point of Sale Inspection Application Form in order to obtain transfer stamps.  The City files the Form and informs the owner that the City may inspect the property based upon the form and could demand repairs if the property is not in compliance.

5.    Further, the City is refusing to issue a rebuild letter in order to rebuild legal nonconforming property that has been damaged by fire or other casualty.  In many cases, lenders are requesting this letter from the City in order to complete the mortgage process.  Thus the City's refusal to issue a rebuild letter interferes with the orderly transfer of property.

Case 1:08-cv-00555    Document 37-5    Filed 05/19/2008    Page 63 of 63

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November _17_. 2006