IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HUSSEIN H. MANN and DEBRA HOUSTON-MANN, <br><br> *Plaintiffs,* <br><br> v. <br><br> CALUMET CITY, ILLINOIS, <br><br> *Defendant.* | Case No. 08-cv-00555 <br><br> Judge David H. Coar |

**MOTION FOR TEMPORARY
RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

Plaintiffs, Hussein H. Mann and Debra Houston-Mann (the "Manns"), pursuant to Fed. R. Civ. P. 65, move the Court for entry of a temporary restraining order and/or preliminary injunction enjoining enforcement of Calumet City's ("City") Point of Sale Inspection Ordinance ("Ordinance") (Ex. A[1]). The Manns' motion is directed at Counts I and II of their Amended Verified Complaint. In support of this motion, the Manns state as follows:

1. The Ordinance is unconstitutional because it unreasonably deprives homeowners of the right to freely sell their property, without any pre-deprivation due process. The Ordinance requires that every property in City be inspected before it can be sold. Homeowners are prohibited from selling their property unless and until the homeowners "pass" an inspection by complying with repair orders issued by City. City often requires that homeowners make cosmetic repairs, such as fixing a loose soap dish, that are unnecessary from a public health and

---

[1] All exhibits referenced herein are attached to the Memorandum In Support of Plaintiffs' Motion For Temporary Restraining Order And/Or Preliminary Injunction.

151551v3

safety standpoint as a condition of their right to sell. The Ordinance thus unreasonably restrains the right of property owners to freely sell their property, a right protected by the Constitution.

2. The Ordinance also allows City to halt the sale of nonconforming property on the grounds that the property was illegally converted (*i.e.*, when a single family home is converted to a multi-family dwelling without a permit). Pursuant to the Ordinance, City can order the "deconversion" of illegally converted property. The Ordinance, however, contains no due process protection against City ordering the "deconversion" of legal nonconforming property (*i.e.*, property originally built as a two-flat in an area that was subsequently rezoned to allow only single family houses), something that Illinois law does not permit. *Village of Oak Park v. Gordon*, 32 Ill. 2d 295, 298 (1965) (recognizing that the right to sell legal nonconforming property is a "valuable property right").

3. The Manns, who own legal nonconforming property in City located at 514 Forsythe, contend that the Ordinance is unconstitutional because it unreasonably restrains their right to freely sell their property, without due process of law. The Manns seek immediate injunctive relief against the enforcement of the Ordinance.

4. This case raises the same issues raised in litigation originally brought by the Mainstreet Organization of Realtors® ("Association"), No. 06 C 2271 (N.D. Ill.) (the "Prior Litigation"). Importantly, in the Prior Litigation, Judge Shadur twice ruled that immediate injunctive relief enjoining enforcement of earlier versions the Ordinance was necessary and appropriate. Judge Shadur first enjoined the ordinance on August 8, 2006 (Ex. B) and then again on December 8, 2006 after City amended the ordinance (Ex. C). *Importantly, the versions of the Ordinance enjoined by Judge Shadur are, in all material respects, the same as the Ordinance the Manns seek to now enjoin.* For example, both ordinances provide that a homeowner cannot sell

property unless the property "passes" an inspection. Moreover, neither version of the ordinance contains limitations on the scope of searches or the types of repairs City may order as a precondition of the right to sell property. Thus, both versions of the ordinance allow City to stop sales for purely cosmetic and trivial reasons, such as a having a loose soap dish. Further, neither version of the ordinance contains any due process protection against City ordering the deconversion of legal nonconforming property. The reasoning that led Judge Shadur to issue two injunctions applies with equal force in the instant action.

5. The Manns have already suffered considerable irreparable harm by City's enforcement of the Ordinance. For example, in October of 2006, the Manns entered into a contract to sell their property. In violation of the August 8 Injunction, City told the Manns and their buyer that the property would have to be "deconverted" even though City's file regarding the Manns' property indicated that it was legal nonconforming. City's conduct caused the buyer to back out of the deal and the Manns forever lost that sale. City's conduct violated the August 8 Injunction and Judge Shadur held City in contempt and ordered that City compensate the Manns for their damages. Ex. N. City has refused to so compensate the Manns and even denied the existence of Judge Shadur's contempt order. Ex. O.

6. The Manns are again attempting to sell their property and, if enforcement of the Ordinance is not enjoined, City will again be able to unconstitutionally interfere with the Manns' right to sell their property without providing the Manns any due process.

7. City appealed the injunction entered by Judge Shadur on December 8, 2006. On October 17, 2007, the Seventh Circuit vacated the December 8 injunction on the ground that Association lacks "prudential" standing to challenge the ordinance. The Manns' suit is one of several actions that have been filed by City homeowners seeking to have the injunctive relief

entered by Judge Shadur reinstated. Another of those actions, *Walker v. Calumet City*, No. 07 C 6148, was recently dismissed as moot after City represented that it would not enforce the Ordinance against the plaintiff because her property had recently passed an annual rental dwelling inspection. In *Walker*, prior to representing that it would not enforce the Ordinance against Walker, City represented to Judge Shadur that it would not enforce the Ordinance until he ruled on whether the Ordinance was Constitutional. City made that representation to induce Judge Shadur to defer consideration of Walker's motion for a preliminary injunction and her motion for class certification. City then mooted Walker's claim before Judge Shadur could consider Walker's motions. In the Manns' case, City has refused to agree that it will not enforce the Ordinance until the Court decides whether it is Constitutional. Moreover, despite the facts that (a) the Manns' property is subject to an annual rental dwelling inspection, and (b) City's file indicates that the Manns' property is legal nonconforming, City has declared that the Manns' property is actually *not* legal nonconforming. In light of City's positions, the Manns require immediate injunctive relief so that they can attempt to sell their property, without interference by City, and avoid foreclosure.

8. The facts and legal theories that support the Manns' claims are set forth in detail in their First Amended Verified Complaint and in the accompanying Supporting Memorandum, both of which are incorporated herein by reference. As set forth in the Supporting Memorandum, the Manns are entitled to immediate injunctive relief for the following reasons.

9. The Manns have a high likelihood of success on the merits of their claims. The Ordinance unreasonably and unconstitutionally restrains the alienability of their property. The Ordinance provides that property cannot be sold unless City issues a transfer stamp. Ex. A at § 14-1(h); Ex. F at §§ 82-325, 82-327(b), 82-328. The only way for the Manns to obtain a transfer

stamp is to first obtain a "Certificate of Compliance" which, in turn, can only be obtained if an inspector decides their property "passed" a point of sale inspection. Ex. A. A property owner can "pass" a point of sale inspection only if she completes all repairs required by the inspector -- even if those repairs are cosmetic in nature. *Id.* at § 14-1(k). Thus, even if the Manns' property complies with all City codes, they may not sell their property if City refuses to issue a "Certificate of Compliance." The Ordinance is thus unconstitutional. *Petropoulos v. Chicago*, 5 Ill. 2d 270, 274-75, 125 N.E.2d 522, 525 (Ill. 1955) (municipalities may not use ordinances to interfere with the free alienability of property: "To place a legal restriction on the use of such property to the extent the same is rendered practically unsaleable would be an utter violation of a man's right to alienate property"); Op. Ill. Att'y Gen. No. 94-024 (Oct. 25, 1994), 1994 WL 601863 ("Municipalities are authorized, under Article 11 of the Municipal Code (65 ILCS 5/11-1-1 *et seq.*) (West 1992) to adopt a number of ordinances and codes designed to protect public health and safety, and are authorized to enforce such codes by requiring permits, fees, and fines ... Further, municipalities may impose various fees for other services relating to real property. *In no instance, however, are municipalities authorized to limit the alienability of property in order to enforce such code.*") (emphasis added) (Ex. L).

10. The Ordinance is also unconstitutional because it deprives homeowners of the right to sell their property without any pre-deprivation due process. Ex. A.

11. The Ordinance is also unconstitutional because it does not restrict, in any way, the scope of searches or limit searches to health or safety issues. Ex. A. The Ordinance does not contain any limitations on the duration or location of inspections. The Ordinance is also unconstitutionally vague. For example, the Ordinance requires that property be in "good repair" but nowhere defines what that means. City has historically relied on the "good repair"

provisions of the Ordinance to stop sales of property until homeowners make cosmetic repairs. *See* Ex. H.

12.     The Ordinance permits City to order the "deconversion" of "illegally converted" property. Ex. A. at §§ 14-1(c)(2), 14-1(g). As respects deconversions, the Ordinance is unconstitutional because it contains no due process protection against City improperly ordering the deconversion of legal nonconforming property as a precondition of the right to sell the property. Ex. A. For example, there is no pre-deprivation hearing at which property owners are permitted to be represented by counsel and to submit evidence that the property is legal. *Id.* Thus, City may prevent sales of legal nonconforming property simply by declaring it illegal. *Id.* Indeed, that is exactly just what City did with respect to the Manns' attempt to sell their property in October 2006.

13.     In proceedings before Judge Shadur and the Seventh Circuit, City has never challenged that the factors other than likelihood of success on the merits favor injunctive relief. City's concession is wise because it is plain that the Manns (and other homeowners) have suffered and will continue to suffer irreparable harm by virtue of City's unconstitutional Ordinance.

14.     Similarly, the balance of harm unquestionably favors the Manns. Absent an injunction, the Manns will be deprived of their Constitutional rights. An injunction against enforcement of the Ordinance, however, will not harm City because, even with an injunction, City may enforce its safety codes through two other ordinances, its Code Enforcement Ordinance and its Rental Dwelling Inspection Ordinance. These two ordinances allow City to eliminate code violations, including those created by illegal conversions that relate to public health and safety, without encroaching on the right to sell property. *See* Ex. I at § 2-952. As City conceded

in the *Walker* litigation, City does not need to enforce the Ordinance to address health and safety issues. Moreover, beginning upon entry of the August 8 Injunction and lasting until the recent dismissal of the *Walker* litigation, City has not enforced the Ordinance. Since August 8, 2006, there have been at least 611 sales of property that have closed in City. Ex. E at ¶ 3. Yet City has failed to point to any harm that it has suffered as a result of such sales and the lack of enforcement of the Ordinance.

15. Finally, the public interest is served by the issuance of an injunction which enjoins the Ordinance. As of April 28, 2008, there were 35 real estate listings in City with contracts pending and 456 active listings of property in City. Ex. E at ¶ 3. Each owner of such property will have his or her Constitutional rights violated if the Ordinance is not enjoined. The public interest is served by an injunction against enforcement of an unconstitutional ordinance.

WHEREFORE, for the reasons set forth above and in the Supporting Memorandum, the Manns request that the Court immediately enter a temporary restraining order and/or a preliminary injunction that:

1. enjoins enforcement of the Ordinance;

2. prohibits City from performing point-of-sale inspections pursuant to the Ordinance and enjoins City from prohibiting the sale of property and refusing to issue transfer stamps in the absence of a point of sale inspection and/or issuance of a "Certificate of Compliance;"

3. prohibits City from ordering the deconversion of legal nonconforming property and refusing to issue Certificates of Occupancy for legal nonconforming property, including the Manns' property;

4. grants such other relief as the Court deems just and proper; and

    5.    finds that because no costs or damages will be incurred or suffered by City if the requested injunction is issued, the Court deems it proper that, pursuant to Fed. R. Civ. P. 65(c), no security need be given by the Manns.

Dated: May 21, 2008

Respectfully submitted,

HUSSEIN H. MANN and DEBRA HOUSTON-MANN,

By:   /s/ Patrick T. Nash
       One of Their Attorneys

Philip C. Stahl
Patrick T. Nash
Donald P. Bunnin
Mark A. Semisch
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, IL 60606
Phone: (312) 704-7700
Fax: (312) 558-1195

## CERTIFICATE OF SERVICE

I, Patrick T. Nash, certify that on this 21st day of May, 2008, I electronically filed **PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION, MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION, and NOTICE OF MOTION** with the Clerk of the Court using the CM/ECF system which will send notification of said filing to:

>   Mark H. Sterk
>   Odelson & Sterk, Ltd.
>   3318 West 95th Street
>   Evergreen Park, Illinois  60805
>
>   John B. Murphey
>   Rosenthal, Murphey & Coblentz
>   30 North LaSalle Street
>   Suite 1624
>   Chicago, IL  60602

>   /s/  Patrick T. Nash

151453v1