# Exhibit A

ROSENTHALMURPHYCOBLENT Fax:13125419191    Feb 15 2008 11:51am P003/011

# THE CITY OF CALUMET CITY
## COOK COUNTY, ILLINOIS

### ORDINANCE
### NUMBER 08-06

## AN ORDINANCE AMENDING CHAPTERS 14 AND 82
## OF THE MUNICIPAL CODE OF CALUMET CITY REGARDING
## POINT OF SALE INSPECTIONS AND
## REAL ESTATE TRANSFER TAX

MICHELLE MARKIEWICZ QUALKINBUSH, Mayor
Gloria L. Dooley, City Clerk

EDWARD GONZALEZ
THADDEUS JONES
BRIAN WILSON
GERALD A. TARKA
NIKOLAOS MANOUSOPOULOS
CYNTHIA M. PALLICK
LENI WOSCZYNSKI
Aldermen

Published in pamphlet form by authority of the Mayor and City Council of the City of Calumet City on 1-31-08
ODELSON & STERK, LTD. - City Attorneys - 3318 West 95th Street - Evergreen Park, Illinois 60805

ROSENTHALMURPHYCOBLENT Fax:13125419191          Feb 15 2008 11:51am P004/011

ORDINANCE NO. 08 - 06

AN ORDINANCE AMENDING CHAPTERS 14 and 82 OF THE MUNICIPAL CODE OF
CALUMET CITY REGARDING
POINT OF SALE INSPECTIONS AND REAL ESTATE TRANSFER TAX

WHEREAS, the City of Calumet City has reviewed the provisions of its Municipal Code governing Point of Sale Inspections, and

WHEREAS, it is the intention of the City of Calumet City to continue to provide for periodic inspections of dwellings upon the transfer of interest or ownership thereof, and

WHEREAS, the City of Calumet City believes it is in the best interests of the health, safety and welfare to make the following amendments to its Ordinance regarding Point of Sale Inspections;

NOW, THEREFORE, be it ordained by the Mayor and City Council of the City of Calumet City, Cook County, Illinois, in the exercise of Calumet City's home rule powers as follows:

Section I.     Chapter 14, Article I, Section 14-1 of the Municipal Code of the City of Calumet City is hereby amended by deleting the text thereof and substituting the following text in its place.

Sec. 14-1. *Point of Sale Inspection Requirement: Certificate of Compliance Procedures*

(a) *Department Created; Definition; General Requirement.*

1.     A Department of Inspectional Services is hereby created pursuant to this section. The Department of Inspectional Services ("Department") shall be headed by a Director of Inspectional Services ("Director," which shall also include the Director's designees) who shall be appointed by the Mayor with the advice and consent of the City Council. All inspectional services concerning point of sale matters within the City, including building and housing, shall be under the jurisdiction of the Department. The building commissioner, electrical inspector, plumbing inspector, housing director and all Department inspectors and staff shall be responsible for reporting to the Director relative to all matters relating to this section and the Director shall have full authority to direct, train and provide appropriate personnel subject to City Council approval as to expenditures and/or requirements as provided herein.

2.    For the purpose of this section, the term "Point of Sale Inspection" means an inspection of real property by the Department conducted in connection with a taxable transfer of real estate to determine whether the condition of said property conforms to the specific regulations identified in this Section.

3.    A Point of Sale Inspection shall be required relative to any transfer of any interest in property which is subject to this Section, except as exempted herein.

(b)    *Notice of Transfer of Real Property Required.*    Whenever an owner of real property in the City proposes to engage in a transfer of real property in the City which is subject to taxation under Chapter 82, Article X of the Calumet City Municipal Code (Real Estate Transfer Tax), such owner shall provide the Department a Notice of Transfer for said property on a form therefore provided by the Department.

(c)    Compliance *Inspection; Pertinent Code Requirements.* The Notice of Transfer form shall also constitute the Director's request to inspect such property ("Compliance Inspection") to determine whether such property is in compliance with the following specific requirements, which the corporate authorities of the City find are related to the public health, safety and welfare:

    (1)    *Compliance with Property Maintenance Code.* All structures shall be in compliance with Article X, Sections 14-691 and 14-692 of this Chapter 14, "Property Maintenance Code."

    (2)    *Inspection to Determine Possible Illegal Conversions.* All structures shall be inspected to determine whether they have been illegally converted. For purposes of this subsection, "illegally converted" means that the property was converted to another or additional use beyond that for which the property was originally permitted, and which [i] is in violation of the property's zoning limitations and [ii] is not a legal nonconforming use under Section V of the City Zoning Ordinance.

(d)    *Proposed Compliance Inspection.*    When the owner files the Notice of Transfer, the Department will schedule a proposed Compliance Inspection to be conducted within 28 calendar days of the Notice. The Notice of Transfer Form shall includes the following:

(1)    Date and time of the proposed Compliance Inspection.

    (2)    A statement that the owner or occupant has the right to withhold consent to the Compliance Inspection and require the City to obtain a warrant to conduct the inspection;

    (3)    For occupied rental dwellings, the City must also request and obtain the consent of the tenant prior to conducting any inspection; and

    (4)    A space for the owner and/or to indicate that the owner and/or tenant either consent to the Compliance Inspection, or refuse consent.

(e)    *Refusal to Consent; Warrant Procedures.* If the owner or occupant does not consent to the proposed inspection, the Director may appear before any judge in the Circuit Court of Cook County and seek an administrative search warrant to allow an inspection. Any such application shall be made within 10 calendar days after the owner's nonconsent. The application for the warrant shall specify the basis upon which the warrant is being sought and shall include a statement that the inspection will be limited to a determination whether there are violations of the Code provisions identified in this Section, and whether there have been any illegal conversions. The Court may consider any of the following factors along with such other matters as it deems pertinent in its decision as to whether a warrant shall issue:

    (1)    eyewitness account of violation;

    (2)    citizen complaints;

    (3)    tenant complaints;

    (4)    plain view violations;

    (5)    violations apparent from City records;

    (6)    property deterioration;

    (7)    age of property;

    (8)    nature of alleged violation;

    (9)    condition of similar properties in the area;

    (10)    documented violations on similar properties in the area;

    (11)    passage of time since last inspection;

    (12)    previous violations on the property.

(f)    *Uninspected Property Transfer Stamps.* In the event the owner or occupant refuses to consent to an inspection, and the Director does not seek a warrant (or if Court refuses an application for the warrant), the Department shall notify the City Clerk that "Uninspected Property" transfer stamps may issue. In connection with the issuance of transfer stamps, the City Clerk shall advise the purchaser of such property that it is "Uninspected Property."

(g)    *Inspection Procedures; Appeal.*

    (1)    In the event consent is given or a warrant issues, the Department shall conduct the Compliance Inspection as provided in subsection (c) and (d). Within 3 business days after the Compliance Inspection the Department shall issue a written notice of violations and repairs, if any, necessary to bring the property into compliance with this Section. In the event the inspection reveals a structure which has been illegally converted, the Department shall issue a Notice of Deconversion specifying the measures which must be taken in order to bring the illegally converted structure into compliance with applicable zoning regulations.

4

Ord. #08-6

2008-Feb-15 12:11 PM     13125419191     2/11     ROSENTHALMURPHYCOBLENT Fax:13125419191     Feb 15 2008 11:53am P007/011

(2) In the event the owner disputes the determination of violations and repairs, the owner may file a request for administrative review on a form provided by the City. An independent administrative hearing officer appointed by the City shall convene an administrative hearing within five (5) business days from the date of appeal. Upon completion of the administrative hearing, the hearing officer will issue a final determination of violation and repairs.

(3) In the event an owner disagrees with an administrative issuance of a notice of deconversion, said owner may appeal to the Zoning Board of Appeals in accordance with Section 12-5 of the City's Zoning Ordinance.

(h) *Follow-Up Repairs; Reinspection.* A party issued a notice of repairs as provided for in subsection (g) shall proceed to make such repairs. Upon completion of said repairs and notice thereof to the Department, the Department will conduct a reinspection within 3 business days thereafter. Upon completion of the follow-up repairs, and the completion of any deconversion measures required by the Department, the Department shall issue a Certificate of Compliance.

(i) *Payment of Current Water Bills; Predeprivation Hearing.* The seller must pay the current water bill (as defined in Section 82-327(b) of the Municipal Code) and other fees owed by the seller to Calumet City prior to the issuance of transfer stamps. In the event the owner disputes any such obligation (or any portion thereof), the Office of City Clerk shall promptly provide the owner with a predeprivation due process hearing consistent with the principles enunciated in *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1 (1978). The City Clerk's office shall provide the hearing with 3 business days of a request. If the owner disputes the City's determination as to liability, the owner may pay said bill under protest, and may pursue any remedies available to said seller to recover the claimed overcharge.

(j) *Conditional Certificate of Compliance; Procedures.* An owner who has not completed the repairs identified through the inspection may nevertheless transfer ownership of property if:

(1) The owner or agent has deposited with the City an amount of money determined by the Director or his designee to be sufficient to bring the structure into compliance with all City building and zoning ordinances and any applicable housing, fire or property maintenance codes or regulations; and

(2) The buyer, conveyee, transferee, assignee or successor in title, ownership or interest (hereinafter "buyer") has entered into an agreement with the City whereby the buyer agrees to bring the structure into compliance within the time period determined by the Director or his designee, to bring the structure into compliance with all applicable Code requirements within a period not to exceed

Ord. #08-6

2008-Feb-15 12:11 PM    13125419191    ROSENTHALMURPHYCOBLENT Fax: 13125419191    8/11    Feb 15 2008 11:53am  P008/011

one hundred eighty (180) calendar days after the closing of the transaction ("closing").

(3)  If the buyer enters into such an agreement, a Conditional Certificate of Compliance will issue in order to allow the closing to be completed. The Conditional Certificate of Compliance shall be issued by the Department and shall terminate on the one hundred eighty-first day after closing and no extensions shall be granted. A buyer who elects to accept the premises subject to the inspection with existing violations, and who agrees, in order to close, to be responsible as provided herein, shall execute a sworn affidavit satisfactory to the Director, which will clearly indicate that the buyer is fully aware of the existing violations as well as the possibility of violations that may have existed but were undiscovered due to lack of access and agrees to accept the requirement and obligation to bring the structure into compliance within one hundred eighty (180) days of the closing. The City shall issue a Certificate of Compliance upon completion of the repairs necessary to bring the dwelling or structure into compliance.

(4)  In the event the buyer fails to complete the required repairs, and have the repairs verified on reinspection, the Director is hereby authorized to pursue enforcement proceedings through the Calumet City administrative adjudication process, or, at his discretion, through the Circuit Court of Cook County. The buyer hereby agrees to submit to the jurisdiction and venue of the Calumet City Administrative Adjudication Process and the Circuit Court of Cook County and to waive service of summons subject only to the notice requirement as required by law in order to enable the City to expeditiously obtain an order of compliance with this section.

(5)  If reasonable proof that the repairs have been completed is not received by the Director or his designee within the required period for the repairs to be completed, the City may also issue a citation for violation of this Chapter and/or the escrow repair agreement, and may also pursue any applicable administrative or judicial remedies to bring the structure and property into compliance with applicable codes and regulations.

(6)  The fine for violations of this Chapter shall be not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000.00) per day for each day the violations remain uncorrected.

(k)  *Licensed and Bonded Contractors.* All contractors performing repairs identified in the point of sale inspection, or issuing certifications, shall be licensed by the City and bonded and

6

Ord. #08-6

shall make available, upon request, copies of their license(s), verification of their liability insurance, errors and omissions insurance policies, and surety bond.

(l)    *Validity of Certificate of Compliance.*    A Certificate of Compliance issued to the seller shall be valid for one hundred eighty (180) days from the date of issuance.

(m)    *No Warranty.* In issuing a certificate of compliance or a conditional certificate of compliance, the City and its agents do not make any warranty, representation or statement nor does it intend to insure or guarantee to either buyer or seller of the property subject to the point of sale inspection or any of their designees, agents, representatives, heirs or assigns or any other interested party, including mortgage companies, insurance companies, banks or any other party which may have any interest relative to the property subject to the point of sale inspection, nor does the City affirm that there are no additional unnoted violations relative to any other provisions of any of the Municipal Code of the City of Calumet City, or relevant statutes, ordinances, rules and regulations of the County of Cook, the State of Illinois or the United States of America.

(o)    *Inspection Fee Schedule.*

(1)    The fee for a point of sale inspection shall be one hundred fifty dollars ($150.00) for all single-family residential inspections. The failure of an owner/seller or his designee to appear at the time of inspection shall result in a fifty dollar ($50.00) penalty.

(2)    The fee for a point of sale inspection shall be one hundred fifty dollars ($150.00) plus twenty-five additional dollars ($25.00) for each residential unit in excess of one unit.

(3)    A fee of twenty cents ($0.20) per square foot shall be charged for each commercial/industrial unit inspected with a minimum fee of two hundred dollars ($200.00) per commercial/industrial unit.

(4)    Each fee set for the above covers the cost of one (1) follow-up inspection to verify compliance. In the event that additional inspections are required because full compliance did not exist at the time of the reinspection, then an additional reinspection fee of fifty dollars ($50.00) per unit shall be assessed.

(5)    If an owner, agent or tenant has failed to appear for two previously scheduled inspections, an additional inspection fee of fifty dollars ($50.00) per unit shall be assessed.

**Section 2:**    Section 82-327(b) of the Calumet City Municipal Code is hereby amended to provide as follows:

7

Ord. #08-6

(b) The City Clerk shall issue no stamps for the transfer of any dwelling, structure, commercial or industrial building unless the grantor/seller (i) presents a "Certificate of Compliance" or other certificate indicating compliance with appropriate city ordinances and/or codes signed by an authorized signatory of the department of inspectional services or (ii) presents an "Uninspected Property" notice to the City Clerk pursuant to Section 14-1(i) of the City Code. The City Clerk shall provide the purchaser notice whether the property is inspected or uninspected.

Additionally, prior to the issuance of transfer tax stamps, and subject to the procedures as set forth in Section 14-1(i) of the City Code, the grantor/seller shall present to the city clerk proof of a current paid water bill. The term "current" shall be defined as the most recent bill issued to the grantor/seller and certified as same by an authorized official of the water department of the city. The water department shall not issue certification of a paid water bill relative to any transfer of title unless the new owner's name and address is supplied to an official of the water department simultaneously upon request for certification of a paid water bill. Grantors/sellers who are exempt from the requirement of purchase of transfer stamps shall be required to comply with the requirements of this section, and shall have the Section 14-1(i) procedural rights.

**Section 3:**  If any section, paragraph, clause or provision of this ordinance shall be held invalid, the invalidity thereof shall not effect any of the other provisions of this ordinance.

**Section 4:**  All ordinances in conflict herewith are hereby repealed to the extent of such conflict.

**Section 5:**  This ordinance shall be in full force and effect from and after its passage, approval and publication as provided by law.

8

Ord. #08-6

ADOPTED this 31st day of February, 2008, pursuant to a roll call vote as follows:

| | YES | NO | ABSENT | PRESENT |
|---|---|---|---|---|
| González | | X | | |
| Jones | X | | | |
| Pallick | | | | |
| Manousopoulos | X | | | |
| Tarka | X | | | |
| Wilson | | | | |
| Wosczynski | X | | | |
| Qualkinbush (Mayor) | | | | |
| TOTAL | 7 | | | |

APPROVED by the Mayor on January 31, 2008

Michelle Markiewicz Qualkinbush
MAYOR

ATTEST:

Gloria Dooley
CITY CLERK

C:\Documents _ and _ Settings\deputy _clerk\Local _Settings\Temporary _Internet _Files\Content.IE5\LKVZ194E\amending _chap _14 _& _82 10131.08.wpd

9

Ord #08-6

# Exhibit B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

REALTOR® ASSOCIATION OF WEST/     )
SOUTH SUBURBAN     )
CHICAGOLAND,     )    Case No. 06 C 2271
           *Plaintiff,*     )
            )
       v.     )    Judge Milton I. Shadur
CALUMET CITY, ILLINOIS,     )
           *Defendant.*     )
            )

## <u>ORDER GRANTING PRELIMINARY INJUNCTION</u>

This matter coming to be heard on Plaintiff's motion for a preliminary injunction, due

notice having been given, and the Court being fully advised in the premises, for the reasons set

forth on the record at the hearing of this matter on August 2, 2006, and at prior hearings, and

based on the written submissions of the parties, the Court finds that, as to Plaintiff's claims that

the Deconversion Provisions and the Point of Sale Inspection Ordinance (as defined below) are

facially unconstitutional: (i) Plaintiff has associational standing, (ii) Plaintiff has established a

high likelihood of success on the merits, (iii) there is no adequate remedy at law and Plaintiff and

its Members will suffer irreparable harm if injunctive relief is not granted, (iv) the irreparable

harm the Plaintiff and its Members will suffer if injunctive relief is wrongfully denied will

outweigh any irreparable harm the Defendant will suffer if injunctive relief is wrongfully

granted, and (v) granting injunctive relief will not disserve the public interest in terms of the

consequences to non-parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

      1.      Calumet City, Illinois, including its agents, employees, officers, successors and

members (collectively, the "City"), is prohibited and enjoined from enforcing (i) Section 14-1 of

Chapter 14, Article I of the Calumet City Code (the "Point of Sale Inspection Ordinance"),

including but not limited to those provisions of the Point of Sale Inspection Ordinance that

require sellers of legal nonconforming property to "deconvert" them into structures with fewer

income-producing rental units (the "Deconversion Provisions"), and (ii) Section 327(b) of

Chapter 82, Article X of the Calumet City Code. This Order shall not prohibit the City from

attempting to collect unpaid water bills by lawful means other than pursuant to Section 327(b) of

Chapter 82, Article X of the Calumet City Code.

     2.     The City is prohibited and enjoined from (i) conducting inspections pursuant to

the Point of Sale Inspection Ordinance; (ii) prohibiting the sale of property and refusing to issue

transfer stamps in the absence of a point of sale inspection and/or issuance of a "certificate of

compliance" or "conditional certificate of compliance;" and (iii) ordering the deconversion of

legal nonconforming property. The City shall allow the sale or transfer of property without

requiring point of sale inspections or deconversions of legal nonconforming property.

     3.     This order shall remain in effect until the trial on the merits, unless modified by

this Court.

     4.     Because no costs or damages will be incurred or suffered by the City if the

requested injunction is issued, the Court deems it proper that, pursuant to Fed. R. Civ. P. 65(c),

no security need be given by the Plaintiff.

Dated:     August _8_, 2006     ENTERED:

                                     _Judge Milton I. Shadur_

86409v4

-2-

# Exhibit C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| REALTOR® ASSOCIATION OF WEST/ SOUTH SUBURBAN CHICAGOLAND, | ) ) ) | |
| *Plaintiff,* | ) | Case No. 06 C 2271 |
| v. | ) ) | Judge Milton I. Shadur |
| CALUMET CITY, ILLINOIS, | ) | |
| *Defendant.* | ) ) ) | |

## ORDER GRANTING PRELIMINARY INJUNCTION

This matter has come on to be heard on the motion of plaintiff ("Association") for a preliminary injunction, with due notice having been given and this Court being fully advised in the premises. For the reasons set forth on the record at the hearing of this matter on August 2, 2006 and at other hearings, and based on the written submissions of the parties, this Court finds that as to Association's claims that the Deconversion Provisions and the Amended Point of Sale Inspection Ordinance (as defined below) are facially unconstitutional:

1.     Association has established associational standing.

2.     Association has established a high likelihood of success on the merits.

3.     There is no adequate remedy at law, and Association and its Members will suffer irreparable harm if injunctive relief is not granted.

4.     Such irreparable harm that Association and its Members will suffer if injunctive relief is wrongfully denied substantially outweighs any irreparable harm that defendant Calumet City ("City") will suffer if injunctive relief is wrongfully granted.

5.     Granting injunctive relief will not disserve the public interest -- indeed, will serve the public interest – in terms of the consequences to non-parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     City and its agents, employees, officers, successors and members (collectively included within "City," though treated for convenience as a singular noun in this Order), is prohibited and enjoined from enforcing (a) Section 14-1 of Chapter 14, Article I of the Calumet City Code, as amended by Ordinance No. 06-68 (the "Amended Point of Sale Inspection Ordinance"), including but not limited to any provisions of the Amended Point of Sale Inspection Ordinance that require sellers of legal nonconforming property to "deconvert" them into structures with fewer income-producing rental units (the "Deconversion Provisions"), and (b) Section 327(b) of Chapter 82, Article X of the Calumet City Code ("Section 327(b)"). This Order shall not prohibit City from attempting to collect unpaid water bills by lawful means other than pursuant to Section 327(b).

2.     City is prohibited and enjoined from (a) conducting inspections pursuant to the Amended Point of Sale Inspection Ordinance; (b) prohibiting the sale of property and refusing to issue transfer stamps in the absence of a point of sale inspection and/or issuance of a "certificate of compliance" or "conditional certificate of compliance;" and (c) ordering the deconversion of legal nonconforming property. City shall allow the sale or transfer of property without requiring point of sale inspections or deconversions of legal nonconforming property.

3.     This order shall remain in effect until the trial on the merits, unless modified by this Court.

4.     Because no costs or damages will be incurred or suffered by City if the requested injunction is issued, this Court deems it proper that, pursuant to Fed. R. Civ. P. 65(c), no security need be given by Association.

2

5.    This Court's August 8, 2006 Order Granting Preliminary Injunction as to an earlier version of the now-Amended Point of Sale Ordinance is now moot, and the injunction granted thereby is dissolved.

Dated:        December 8, 2006            ENTERED:

_Judge Milton I. Shadur_

3

# Exhibit D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| HUSSEIN H. MANN and DEBRA HOUSTON-MANN, | ) ) ) | |
| *Plaintiffs,* | ) ) | Case No. 08-cv-00555 |
| v. | ) ) ) | Judge David H. Coar |
| CALUMET CITY, ILLINOIS, | ) ) ) ) | |
| *Defendant.* | ) | |

### DECLARATION OF DEBRA HOUSTON-MANN IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

DEBRA HOUSTON-MANN declares as follows:

1.     The following facts are personally known to me, and if called to testify, I could and would competently testify thereto.

2.     My husband, Hussein Mann, and I are homeowners in Calumet City, Illinois. Our property is located at 514 Forsythe. We have always understood that the property is a legal nonconforming use. We purchased the property from a Calumet City official. The previous owner owned and operated the property as a multiple-family dwelling. When I purchased the property from the Calumet City official, I was not informed that it was not legal nonconforming or that it would have to be deconverted. Since we have owned it, the property has had two units. The upstairs unit has a separate exterior entrance at the back of the property. The property sits on two lots, each with its own Property Index Number: 30-08-401-033-0000 and 30-08-401-034-0000. We have paid and continue to pay taxes on both lots.

151505v1

3.      In the fall of 2006, my husband and I listed our property for sale and entered into a contract for the sale of the property.  We scheduled the closing of the sale for October 30, 2006 at 2:00 p.m.

4.      At 12:00 p.m. on October 30, 2006, the buyer and I went to Calumet City's Department of Inspectional Services to purchase the necessary transfer stamps.  Rebecca, an employee at the Calumet City Department of Inspectional Services, required the payment of the final water bill before Calumet City would issue the transfer stamps.

5.      Rebecca also refused to issue the certificate of occupancy.  Rebecca explained that the buyer could not occupy the property until it was deconverted.  Rebecca then warned the buyer that if the buyer closed on the property Calumet City could eventually demand the deconversion of the property.

6.      Without the certificate of occupancy, the buyer did not want to close the sale of the property on October 30.

7.      I called the Calumet City Inspectional Services on October 31 to request further information about the decision to prohibit occupancy of the property.  Again, I spoke with Rebecca.  During our conversation, Rebecca agreed to issue a certificate of occupancy for the property prior to deconversion.

8.      On November 1, 2006 I contacted the buyer.  The buyer was concerned about the threatened deconversion of the property.  Also, the buyer could no longer afford to close the sale of the property because, as a result of the delay by Calumet City, she had to use the money for the closing to renew the lease on her current apartment.

9.      My husband and I are again attempting to sell our property.

151505v1

10.      As a result of the City's action, I suffered an emotional and financial hardship. The lives of my husband and I have been turned upside down by Calumet City's conduct. We thought we were going to sell the property on October 30, 2006 and packed all of our belongings. We had found a new place to live and had to put down money to hold the new place. We lost that money. We have borrowed money for repairs on our home. Because the closing did not happen, we had no money to pay the people who we borrowed from who expected to get their money back after closing. We are confined to a home that we can't sell due to the deconversion law. We were not aware of the deconversion laws when we purchased our home. We want to sell this property as a Multi-Unit. This has caused us severe financial, mental, physical and emotional stress. My husband and I lost the costs directly associated with the sale, including lost wages, the negotiated settlement amount for the property's second mortgage, the cost of work and inspections required to close property, and the security deposit for the place we intended to move upon the closing of the property. Moreover, it is likely that I will lose the property to foreclosure as I am several months behind the first mortgage.

151505v1

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 20, 2008　　　　　　　　　_Debra Houston-Mann_

151505v1

# Exhibit E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HUSSEIN H. MANN and DEBRA HOUSTON-MANN, | ) ) ) | |
| *Plaintiffs,* | ) ) | Case No. 08-cv-00555 |
| v. | ) ) ) | Judge David H. Coar |
| CALUMET CITY, ILLINOIS, | ) ) ) ) | |
| *Defendant.* | ) | |

**DECLARATION OF THOMAS JOSEPH IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

THOMAS JOSEPH declares as follows:

1.    The following facts are personally known to me, and if called to testify, I could and would competently testify thereto.

2.    I act as Government Affairs Director for the Mainstreet Organization of Realtors® ("Association") for the South and Southwest Suburban Cook and Will counties.

3.    Association has access to the Multiple Listing Service ("MLS"). According to the MLS, as of April 28, 2008, there were 35 real estate listings in Calumet City, Illinois ("City") with contracts pending. There are 456 active listings of property in City as of the same date. Since August 8, 2006, there have been at least 611 sales of property that have closed in City.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 20th, 2008

Thomas Joseph

# Exhibit F

# ΛRTICLE X. REAL ESTATE TRANSFER TAX*

_____

**\*State law references:** Authority, 65 ILCS 5/8-11-6a(4).

_____

### Sec. 82-321. Definitions.

For the purpose of this article, whenever any of the following words, terms or definitions are used herein, they shall have the meanings ascribed to them in this section:

*Beneficial interest in real property* includes, but is not limited to (1) the beneficial interest in an Illinois land trust; (2) the lessee interest in a ground lease (including any interest of the lessee in the related improvements) that provides for a term of thirty (30) or more years when all options to renew or extend are included, whether or not any portion of the term has expired; or (3) the indirect interest in real property as reflected by a controlling interest in a real estate entity.

*Controlling interest* means:

(1)  Fifty (50) percent or more of the combined voting power or fair market value of all ownership interests or beneficial interests in a real estate entity, whether the interests are owned by one (1) or by several persons: or

(2)  The right of one (1) or of several persons to receive at the time of any distribution fifty (50) percent or more of the income or profits of a real estate entity.

*Person* means any individual, receiver, administrator, executor, conservator, assignee, trust, estate, .nership, joint venture, club, joint stock company, business trust, political subdivision of the state, corporation, association, limited liability company, syndicate, society, or any group of persons acting as a unit, whether mutual, cooperative, fraternal, nonprofit or otherwise.

*Real estate entity* means any person (other than a state land trust) including, but not limited to, any partnership, corporation, trust, or single or multi-tiered entity, that exists or acts substantially for the purpose of holding directly or indirectly title to or beneficial interest in real property located in the city, whether for personal use, the *production of rental income, or investment.* It shall be presumed, unless proved otherwise, that an entity is a real estate entity if it owns directly or indirectly real property located in the city having a fair market value greater than seventy-five (75) percent of the total fair market value of all of the entity's assets, determined without deduction for any mortgage, lien or encumbrance.

*Recordation* means the recording of deeds with the office of the recorder of deeds or the registration of deeds with the Registrar of Titles of Cook County, Illinois.

*Transfer price* means the consideration furnished for the transfer of title to, or beneficial interest in, real property, valued in money, whether paid in money or otherwise, including cash, credits and property, determined without any deduction for mortgages, liens or encumbrances, and specifically including the amount of any indebtedness or obligation cancelled or discharged in connection with the transfer. In the case where the controlling interest in a real estate entity is transferred, and the real estate entity holds assets in addition to title to or beneficial interest in real property located in the city, "transfer price" means only that portion of the consideration attributable to the transfer of such real property or such beneficial interest.

(Code 1980, § 26-70; Ord. No. 80-17, § 1, 7-24-1980; Ord. No. 98-21, § 1, 4-30-1998)

### Sec. 82-322. Imposed.

(a)  Except as otherwise provided in this article, a tax is imposed upon the privilege of transferring title to, or beneficial interest in, real property located within the corporate limits of the city. The tax shall be imposed at the

following rates:

(1)  Eight dollars ($8.00) per one thousand dollars ($1,000.00) of the transfer price, or fraction thereof, of the real property or the beneficial interest in real property up to, and including, two million dollars ($2,000,000.00)

(2)  Ten dollars ($10.00) per one thousand dollars ($1,000.00) of the transfer price, or fraction thereof, of the real property or the beneficial interest in real property between two million dollars and one cent ($2,000,000.01) and five million dollars ($5,000,000.00).

(3)  Twelve dollars ($12.00) per one thousand dollars ($1,000.00) of the transfer price, or fraction thereof, of the real property or the beneficial interest in real property between five million dollars and one cent ($5,000,000.01) and ten million dollars ($10,000,000.00).

(4)  Fourteen dollars ($14.00) per one thousand dollars ($1,000.00) of the transfer price, or fraction thereof, of the real property or the beneficial interest in real property between ten million dollars and one cent ($10,000,000.01) and twenty million dollars ($20,000,000.00).

(5)  Sixteen dollars ($16.00) per one thousand dollars ($1,000.00) of the transfer price, or fraction thereof, of the real property or the beneficial interest in real property over twenty million dollars ($20,000,000.00).

(b)  (1)  The tax imposed by this chapter is due upon the earlier of the delivery or recording of the deed, assignment or other instrument of transfer.

(2)  In the case of an assignment of a beneficial interest in a trust, delivery shall be deemed to occur when the trustee receives possession of a valid assignment of the beneficial interest. In the case of other transfers, delivery shall be deemed to occur when the transferee, or the transferee's representative or agent, receives or becomes entitled to receive possession of the instrument of transfer.

(c)  The tax imposed by this article shall be due whether the transfer of a controlling interest in a real estate entity is effected by one (1) transaction or by a series of related transactions. For purposes of this subsection, it shall be presumed, unless provided otherwise, that transactions are related if they occur within the same twenty-four (24) month period.

(d)  Nothing in this article shall be construed to impose a tax upon any transaction or privilege which, under the circumstances of the United States or the State of Illinois, may not be made the subject of taxation by the city.

(Code 1980, § 26-71; Ord. No. 80-17, § 1, 7-24-1980; Ord. No. 93-35, § 1, 10-28-1993; Ord. No. 95-32, § 1, 7-27-1995; Ord. No. 98-21, § 2, 4-30-1998)


## Sec. 82-323. Exceptions.

(a)  The tax imposed by this article shall not apply to the following transactions:

(1)  Transactions involving property acquired by or from any governmental body or by any corporation, society, association, foundation or institution organized and operated exclusively for charitable, religious or educational purposes; provided that only the governmental body or corporation, society, association, foundation or institution organized and operated exclusively for charitable, religious or education purposes shall be exempt from the tax imposed by this article;

(2)  Transactions which secure debt or other obligations;

(3)  Transactions in which deeds, without additional consideration, confirm, correct, modify or supplement deeds previously recorded;

(4)  Transactions in which the actual consideration is less than one hundred dollars ($100.00);

(5)  Transactions in which the deeds are tax deeds;

(6)  Transactions which are releases of property which is security for a debt or other obligation;

(7)  Transactions of partitions;

(8)   Transactions made pursuant to mergers, consolidations or transfers or sales of substantially all of the assets of a corporation pursuant to plans of reorganization;

(9)   Transactions between subsidiary corporations and their parents for no consideration other than the cancellation or surrender of the subsidiary corporation's stock;

(10)   Transactions wherein there is an actual exchange of real property except that the money difference or money's worth paid from one to the other shall not be exempt from the tax;

(11)   Transactions representing transfers subject to the imposition of a documentary stamp imposed by the government of the United States.

(12)   Transactions by full-time employees of the City of Calumet City who sell their residence within the city limits and purchase residential property within the city limits for the purpose of relocating their legal residence. .

(13)   Transactions in which the deed or other instrument of transfer is issued to the mortgagee or secured creditor pursuant to a mortgage or security interest foreclosure proceeding or sale or pursuant to a transfer in lieu of foreclosure.

(b)   Every deed or other instrument which is tax exempt pursuant to this section shall be presented to the city clerk so as to be appropriately marked by said city clerk as an exempt deed or instrument eligible for recordation without the payment of tax. At such time as a deed or instrument is presented to the city clerk a certificate setting forth the facts which justify exemption shall be presented.

(c)   No other fees shall apply to any transactions in this section, except that a service fee of fifty dollars ($50.00) shall be assessed on all transactions in which deeds, without additional consideration, confirm, correct, modify, or supplement deeds previously recorded.

(Code 1980, § 26-75; Ord. No. 80-17, § 1, 7-24-1980; Ord. No. 82-3, § 1, 2-11-1982; Ord. No. 95-21, § 1, 5-25-1995; Ord. No. 95-32, § 3, 7-27-1995; Ord. No. 98-21, § 3, 4-30-1998; Ord. No. 05-09, § 1, 2-10-2005; Ord. No. 05-51, § 1, 7-28-2005)

## Sec. 82-324. Liability for tax.

The ultimate incidence of and liability for payment of the tax imposed by this section shall be borne as follows:

(1)   One-half ( 1/2) the tax shall be borne by the grantor of any deed subject to this article or by the grantor, assignor or transferor of any instrument conveying the beneficial interest in real estate within the corporate limits of the city.

(2)   One-half ( 1/2) the tax shall be borne by the grantee of any deed subject to this article or by the grantee, assignee or transferee of any instrument conveying the beneficial interest in real estate within the corporate limits of the city.

(Code 1980, § 26-72; Ord. No. 80-17, § 1, 7-24-1980; Ord. No. 95-32, § 1, 7-27-1995)

## Sec. 82-325. Purchase of stamps.

The tax levied by this article shall be paid by the purchase of tax stamps from the city clerk or a designated agent. The payment of such tax shall be denoted by the adhesive stamp or stamps affixed to the fact of the deed or instrument transferring the beneficial interest.

(Code 1980, § 26-73; Ord. No. 80-17, § 1, 7-24-1980)

## Sec. 82-326. Filing of declaration.

At such time as the tax levied by this article is paid there shall be filed with the city clerk a fully executed and completed copy of the "real estate transfer declaration" required by Section 3 of the real estate transfer tax of the state, or a declaration of the full consideration paid for the transfer of beneficial interest which declaration shall be on a

form provided by the city clerk. Such declaration shall be deemed as a confidential record.

(Code 1980, § 26-74; Ord. No. 80-17, § 1, 7-24-1980)

### Sec. 82-327. Real estate transfer tax stamps required.

(a)  The tax herein levied and imposed shall be collected by the city clerk through the sale of real estate transfer tax stamps, which shall be caused to be prepared by said clerk in such quantities as said clerk may from time to time prescribe. Such stamps shall be available for sale at, and during the regular business hours of the city offices and the offices of such agent as the city may designate. For the purpose of reviewing a request for the stamps, the city shall process a request within forty-eight (48)hours of working time. Upon payment of the tax herein levied and imposed, the stamps so purchased shall be affixed to the deed or other instrument of conveyance. Any person so using or affixing a stamp shall cancel it and so deface it as to render it unfit for reuse by marking it with his initials and the day, month and year when the affixing occurs. Such markings shall be made by writing or stamping in indelible ink or by perforating with a machine or punch; however, the stamp shall not be so defaced as toprevent ready determination of its genuineness.

(b)  The city clerk shall issue no stamps for the transfer of any dwelling, structure, commercial or industrial building unless the grantor/seller (i) presents a "certificate of compliance" or other certificate indicating compliance with appropriate city ordinances and/or codes signed by an authorized signatory of the department of inspectional services or (ii) presents an "uninspected property" notice to the city clerk pursuant to subsection 14-1(f) of the City Code. The city clerk shall provide the purchaser notice whether the property is inspected or uninspected.

Additionally, prior to the issuance of transfer tax stamps, and subject to the procedures as set forth in subsection 14-1(i) of the City Code, the grantor/seller shall present to the city clerk proof of a current paid water bill. The term "current" shall be defined as the most recent bill issued to the grantor/seller and certified as same by an authorized official of the water department of the city. The water department shall not issue certification of a paid water bill relative to any transfer of title unless the new owner's name and address is supplied to an official of the water department simultaneously upon request for certification of a paid water bill. Grantors/sellers who are exempt from the requirement of purchase of transfer stamps shall be required to comply with the requirements of this section, and shall have the subsection 14-1(i) procedural rights.

(c)  The city clerk shall issue no stamps for the transfer of any dwelling, structure, commercial or industrial building unless the city is presented with an original survey for the property being transferred. When the property being transferred is improved with any building, the survey shall not be dated more than one year prior to the date of the transfer.

(Code 1980, § 26-76; Ord. No. 80-17, § 1, 7-24-1980; Ord. No. 96-29, § 1, 5-9-1996; Ord. No. 05-09, § 2, 2-10-2005; Ord. No. 06-68, § 2, 8-24-2006)

### Sec. 82-328. Recordation of deeds.

No deed conveying real property within the corporate limits of the city shall be entitled to recordation by the recorder of deeds or the registrar of titles of the county, unless such deed shall bear either a city real estate transfer tax stamp or an exemption mark from the city clerk.

(Code 1980, § 26-77; Ord. No. 80-17, § 1, 7-24-1980; Ord. No. 82-3, § 2, 2-11-1982; Ord. No. 95-21, § 2, 5-25-1995)

### Sec. 82-329. Duty of trustee.

No trustee of real estate shall accept an assignment of beneficial interest in real estate located in the city unless such instrument shall bear either a city real estate transfer tax stamp or an exemption mark from the city clerk.

(Code 1980, § 26-78; Ord. No. 80-17, § 1, 7-24-1980)

### Sec. 82-330. Proceeds of tax.

All proceeds resulting from the collection of the tax imposed by this article, including interest and penalties, shall be paid into the treasury of the city and shall be credited to and deposited in the general fund of the city.

`ode 1980, § 26-79; Ord. No. 80-17, § 1, 7-24-1980)

### Sec. 82-331. Interest and penalties.

In the event of failure by any person to pay to the city clerk the tax required hereunder when the same shall be due, interest shall accumulate and be due upon said tax at the rate of one (1) percent per month commencing as of the first day following the day when the deed was recorded or the assignment of beneficial interest was accepted by the trustee. In addition, a penalty of fifty (50) percent of the tax and interest shall be assessed and collected against any person who shall fail to pay the tax imposed by this article.

(Code 1980, § 26-80; Ord. No. 80-17, § 1, 7-24-1980)

### Sec. 82-332. Civil liability for tax.

In the event of failure by any person to pay to the city clerk tax required hereunder when the same shall be due, said person shall be liable to the city for such tax, together with interest and penalties. The city may bring an action to collect such tax, interest and penalties in any court of competent jurisdiction.

(Code 1980, § 26-81; Ord. No. 80-17, § 1, 7-24-1980)

### Sec. 82-333. Fine for violation.

In addition to the remaining provisions of this article, any person found guilty in a court of competent jurisdiction violating, disobeying, omitting, neglecting or refusing to comply with any provision of this article, upon conviction :eof, shall be punished by a fine of not more than five hundred dollars ($500.00) for each offense.

(Code 1980, § 26-82; Ord. No. 80-17, § 1, 7-24-1980)

### Sec. 82-334. Severability.

If any clause, sentence, section, provision or part of this article or the application thereof to any person or circumstance shall be adjudged to be unconstitutional, the remainder of this article or its application to persons or circumstances other than those to which it is held invalid shall not be affected thereby.

(Code 1980, § 26-83; Ord. No. 95-32, § 4, 7-27-1995)

Secs. 82-335--82-370. Reserved.