IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HUSSEIN M. MANN and | ) | |
| DEBRA HOUSTON-MANN, | ) | |
| Plaintiffs, | ) | Case No. 08 C 555 |
| vs. | ) | |
| | ) | Judge David H. Coar |
| CALUMET CITY, ILLINOIS, | ) | Magistrate Judge Morton Denlow |
| Defendant. | ) | |

**ANSWER TO MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

Defendant, City of Calumet City ("City") files the following Answer to Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction. The Motion for Temporary Restraining Order has been denied.

1. The Ordinance is unconstitutional because it unreasonably deprives homeowners of the right to freely sell their property, without any pre-deprivation due process. The Ordinance requires that every property in City be inspected before it can be sold. Homeowners are prohibited from selling their property unless and until the homeowners "pass" an inspection by complying with repair orders issued by City. City often requires that homeowners make cosmetic repairs, such as fixing a loose soap dish, that are unnecessary from a public health and safety standpoint as a condition of their right to sell. The Ordinance thus unreasonably restrains the right of property owners to freely sell their property, a right protected by the Constitution.

**ANSWER:** The City denies the allegations of Paragraph 1.

2. The Ordinance also allows City to halt the sale of nonconforming property on the grounds that the property was illegally converted (*i.e.*, when a single family home is converted to

a multi-family dwelling without a permit).  Pursuant to the Ordinance, City can order the "deconversion" of illegally converted property.  The Ordinance, however, contains no due process protection against City ordering the "deconversion" of legal nonconforming property (*i.e.*, property originally built as a two-flat in an area that was subsequently rezoned to allow only single family houses), something that Illinois law does not permit.  *Village of Oak Park v. Gordon*, 32 Ill. 2d 295, 298 (1965) (recognizing that the right to sell legal nonconforming property is a "valuable property right").

**ANSWER:**  The City admits that in appropriate circumstance the City can refuse to issue transfer stamps in the event it discovers that a property was illegally converted as defined in the Ordinance.  The City admits that under appropriate circumstances the City can order the deconversion of illegally converted property.  The City denies the remaining allegations of Paragraph 2.

3.      The Manns, who own legal nonconforming property in City located at 514 Forsythe, contend that the Ordinance is unconstitutional because it unreasonably restrains their right to freely sell their property, without due process of law.  The Manns seek immediate injunctive relief against the enforcement of the Ordinance.

**ANSWER:**  The City admits the Manns' contentions but denies the validity of such contentions.

4.      This case raises the same issues raised in litigation originally brought by the Mainstreet Organization of Realtors® ("Association"), No. 06 C 2271 (N.D. Ill.) (the "Prior Litigation").  Importantly, in the Prior Litigation, Judge Shadur twice ruled that immediate injunctive relief enjoining enforcement of earlier versions the Ordinance was necessary and appropriate.  Judge Shadur first enjoined the ordinance on August 8, 2006 (Ex. B) and then again

on December 8, 2006 after City amended the ordinance (Ex. C). *Importantly, the versions of the Ordinance enjoined by Judge Shadur are, in all material respects, the same as the Ordinance the Manns seek to now enjoin.* For example, both ordinances provide that a homeowner cannot sell property unless the property "passes" an inspection. Moreover, neither version of the ordinance contains limitations on the scope of searches or the types of repairs City may order as a precondition of the right to sell property. Thus, both versions of the ordinance allow City to stop sales for purely cosmetic and trivial reasons, such as a having a loose soap dish. Further, neither version of the ordinance contains any due process protection against City ordering the deconversion of legal nonconforming property. The reasoning that led Judge Shadur to issue two injunctions applies with equal force in the instant action.

**ANSWER:** The City denies that this case raises all of the same issues raised in the litigation originally brought by the Realtors. The City denies the remaining allegations of Paragraph 4.

5. The Manns have already suffered considerable irreparable harm by City's enforcement of the Ordinance. For example, in October of 2006, the Manns entered into a contract to sell their property. In violation of the August 8 Injunction, City told the Manns and their buyer that the property would have to be "deconverted" even though City's file regarding the Manns' property indicated that it was legal nonconforming. City's conduct caused the buyer to back out of the deal and the Manns forever lost that sale. City's conduct violated the August 8 Injunction and Judge Shadur held City in contempt and ordered that City compensate the Manns for their damages. Ex. N. City has refused to so compensate the Manns and even denied the existence of Judge Shadur's contempt order. Ex. O.

**ANSWER:** The City denies the allegations of Paragraph 5.

6. The Manns are again attempting to sell their property and, if enforcement of the Ordinance is not enjoined, City will again be able to unconstitutionally interfere with the Manns' right to sell their property without providing the Manns any due process.

**ANSWER:** The City denies the allegations of Paragraph 6.

7. City appealed the injunction entered by Judge Shadur on December 8, 2006. On October 17, 2007, the Seventh Circuit vacated the December 8 injunction on the ground that Association lacks "prudential" standing to challenge the ordinance. The Manns' suit is one of several actions that have been filed by City homeowners seeking to have the injunctive relief entered by Judge Shadur reinstated. Another of those actions, *Walker v. Calumet City*, No. 07 C 6148, was recently dismissed as moot after City represented that it would not enforce the Ordinance against the plaintiff because her property had recently passed an annual rental dwelling inspection. In *Walker*, prior to representing that it would not enforce the Ordinance against Walker, City represented to Judge Shadur that it would not enforce the Ordinance until he ruled on whether the Ordinance was Constitutional. City made that representation to induce Judge Shadur to defer consideration of Walker's motion for a preliminary injunction and her motion for class certification. City then mooted Walker's claim before Judge Shadur could consider Walker's motions. In the Manns' case, City has refused to agree that it will not enforce the Ordinance until the Court decides whether it is Constitutional. Moreover, despite the facts that (a) the Manns' property is subject to an annual rental dwelling inspection, and (b) City's file indicates that the Manns' property is legal nonconforming, City has declared that the Manns' property is actually *not* legal nonconforming. In light of City's positions, the Manns require

immediate injunctive relief so that they can attempt to sell their property, without interference by City, and avoid foreclosure.

**ANSWER:** The City admits that it successfully appealed Judge Shadur's December 8, 2006 Order. The City admits that there have been several lawsuits filed against the Ordinance. The City admits the Walker litigation was dismissed as moot. The City denies that the City "mooted" Walker's claim. The City admits that it is enforcing the Ordinance. The City denies the remaining allegations of Paragraph 7.

8. The facts and legal theories that support the Manns' claims are set forth in detail in their First Amended Verified Complaint and in the accompanying Supporting Memorandum, both of which are incorporated herein by reference. As set forth in the Supporting Memorandum, the Manns are entitled to immediate injunctive relief for the following reasons.

**ANSWER:** The City admits that Manns' theories are set forth in their First Amended Complaint and accompanying Memorandum. The City denies that the Manns are entitled to any relief.

9. The Manns have a high likelihood of success on the merits of their claims. The Ordinance unreasonably and unconstitutionally restrains the alienability of their property. The Ordinance provides that property cannot be sold unless City issues a transfer stamp. Ex. A at § 14-1(h); Ex. F at §§ 82-325, 82-327(b), 82-328. The only way for the Manns to obtain a transfer stamp is to first obtain a "Certificate of Compliance" which, in turn, can only be obtained if an inspector decides their property "passed" a point of sale inspection. Ex. A. A property owner can "pass" a point of sale inspection only if she completes all repairs required by the inspector --

even if those repairs are cosmetic in nature. *Id.* at § 14-1(k). Thus, even if the Manns' property complies with all City codes, they may not sell their property if City refuses to issue a "Certificate of Compliance." The Ordinance is thus unconstitutional. *Petropoulos v. Chicago*, 5 Ill. 2d 270, 274-75, 125 N.E.2d 522, 525 (Ill. 1955) (municipalities may not use ordinances to interfere with the free alienability of property: "To place a legal restriction on the use of such property to the extent the same is rendered practically unsaleable would be an utter violation of a man's right to alienate property"); Op. Ill. Att'y Gen. No. 94-024 (Oct. 25, 1994), 1994 WL 601863 ("Municipalities are authorized, under Article 11 of the Municipal Code (65 ILCS 5/11-1-1 *et seq.*) (West 1992) to adopt a number of ordinances and codes designed to protect public health and safety, and are authorized to enforce such codes by requiring permits, fees, and fines ... Further, municipalities may impose various fees for other services relating to real property. *In no instance, however, are municipalities authorized to limit the alienability of property in order to enforce such code.*") (emphasis added) (Ex. L).

**ANSWER:**   The City denies the allegations of Paragraph 9.

10.   The Ordinance is also unconstitutional because it deprives homeowners of the right to sell their property without any pre-deprivation due process. Ex. A.

**ANSWER:**   The City denies the allegations of Paragraph 10.

11.   The Ordinance is also unconstitutional because it does not restrict, in any way, the scope of searches or limit searches to health or safety issues. Ex. A. The Ordinance does not contain any limitations on the duration or location of inspections. The Ordinance is also unconstitutionally vague. For example, the Ordinance requires that property be in "good repair"

but nowhere defines what that means. City has historically relied on the "good repair" provisions of the Ordinance to stop sales of property until homeowners make cosmetic repairs. *See* Ex. H.

**ANSWER:** The City denies the allegations of Paragraph 11.

12. The Ordinance permits City to order the "deconversion" of "illegally converted" property. Ex. A. at §§ 14-1(c)(2), 14-1(g). As respects deconversions, the Ordinance is unconstitutional because it contains no due process protection against City improperly ordering the deconversion of legal nonconforming property as a precondition of the right to sell the property. Ex. A. For example, there is no pre-deprivation hearing at which property owners are permitted to be represented by counsel and to submit evidence that the property is legal. *Id*. Thus, City may prevent sales of legal nonconforming property simply by declaring it illegal. *Id*. Indeed, that is exactly just what City did with respect to the Manns' attempt to sell their property in October 2006.

**ANSWER:** The City denies the allegations of Paragraph 12.

13. In proceedings before Judge Shadur and the Seventh Circuit, City has never challenged that the factors other than likelihood of success on the merits favor injunctive relief. City's concession is wise because it is plain that the Manns (and other homeowners) have suffered and will continue to suffer irreparable harm by virtue of City's unconstitutional Ordinance.

**ANSWER:** The City denies the allegations of Paragraph 13.

14.　　Similarly, the balance of harm unquestionably favors the Manns. Absent an injunction, the Manns will be deprived of their Constitutional rights. An injunction against enforcement of the Ordinance, however, will not harm City because, even with an injunction, City may enforce its safety codes through two other ordinances, its Code Enforcement Ordinance and its Rental Dwelling Inspection Ordinance. These two ordinances allow City to eliminate code violations, including those created by illegal conversions that relate to public health and safety, without encroaching on the right to sell property. See Ex. I at § 2-952. As City conceded in the *Walker* litigation, City does not need to enforce the Ordinance to address health and safety issues. Moreover, beginning upon entry of the August 8 Injunction and lasting until the recent dismissal of the *Walker* litigation, City has not enforced the Ordinance. Since August 8, 2006, there have been at least 611 sales of property that have closed in City. Ex. E at ¶ 3. Yet City has failed to point to any harm that it has suffered as a result of such sales and the lack of enforcement of the Ordinance.

**ANSWER:**　　The City denies the allegations of Paragraph 14.

15.　　Finally, the public interest is served by the issuance of an injunction which enjoins the Ordinance. As of April 28, 2008, there were 35 real estate listings in City with contracts pending and 456 active listings of property in City. Ex. E. at ¶ 3. Each owner of such property will have his or her Constitutional rights violated if the Ordinance is not enjoined. The public interest is served by an injunction against enforcement of an unconstitutional ordinance.

**ANSWER:**　　The City denies the allegations of Paragraph 15.

WHEREFORE, the City respectfully prays that this Court deny the Motion for Preliminary Injunction seeking to enjoin the Ordinance based on the allegations of Count I and Count II.

        Respectfully submitted,

        City of Calumet City

        By:   /s/ John B. Murphey

| | |
|---|---|
| JOHN B. MURPHEY/ARDC #1992635 | MARK STERK/ARDC #3125540 |
| Rosenthal, Murphey & Coblentz | Odelson & Sterk, Ltd. |
| 30 North LaSalle Street, Suite 1624 | 3318 West 95th Street |
| Chicago, Illinois 60602 | Evergreen Park, Illinois 60805 |
| Tel. (312) 541-1070/Fax (312) 541-9191 | Tel. (708) 424-5678/Fax (708) 424-5829 |

G:\rmcj\calumet City\mann\Answer to Mo-TRO & Prel Injunction.doc

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2008, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of said filing to all parties listed below:

| | | |
|---|---|---|
| Marcia B. Gevers<br>Marcia B. Gevers & Assoc.<br>19710 Governors Hwy<br>Suite 8<br>Flossmoor, Illinois 60422 | Mark H. Sterk<br>Michael Joseph Hayes, Jr.<br>Robert Wilder<br>Richard F. Bruen, Jr.<br>Odelson & Sterk<br>3318 W. 95th St.<br>Evergreen Park, Ill. 60805 | Philip C. Stahl<br>Maggie M. Hanel<br>Patrick Thomas Nash<br>Grippo & Elden<br>111 South Wacker Drive<br>Chicago, Illinois 60606 |

Donald P. Bunin
Mark A. Semisch
Grippo & Elden LLC
111 South Wacker Drive
Chicago, Illinois 60606

    /s/    Douglas M. Doty
ROSENTHAL, MURPHEY & COBLENTZ
Attorneys for Calumet City
30 North LaSalle Street, Suite 1624
Chicago, Illinois 60602
Tel. (312) 541-1070
Fax: (312) 541-9191

| | |
|---|---|
| Filename: | Answer to Mo-TRO & Prel Injunction |
| Directory: | C:\Documents and Settings\Mary\Local Settings\Temp |
| Template: | C:\Documents and Settings\Mary\Application Data\Microsoft\Templates\Normal.dot |
| Title: | IN THE UNITED STATES DISTRICT COURT |
| Subject: | |
| Author: | Cleo |
| Keywords: | |
| Comments: | |
| Creation Date: | 6/24/2008 1:27 PM |
| Change Number: | 8 |
| Last Saved On: | 7/7/2008 10:55 AM |
| Last Saved By: | Cleo |
| Total Editing Time: | 23 Minutes |
| Last Printed On: | 7/7/2008 12:31 PM |

As of Last Complete Printing
   Number of Pages: 10
   Number of Words:   2,275 (approx.)
   Number of Characters:   12,969 (approx.)