IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HUSSEIN M. MANN and <br> DEBRA HOUSTON-MANN, | ) <br> ) | |
| Plaintiffs, | ) | Case No. 08 C 555 |
| vs. | ) | |
| | ) | Judge David H. Coar |
| CALUMET CITY, ILLINOIS, | ) | Magistrate Judge Morton Denlow |
| Defendant. | ) | |

**CITY OF CALUMET CITY'S MEMORANDUM OF LAW
IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

**I.     Factual Context, Summary of the Ordinance and the Ordinance in Operation**

In these times of rampant foreclosures caused by the subprime lending crisis and deterioration of the housing market, cities more than ever need tools to maintain the quality of the housing stock and combat urban decay.

The Ordinance is one such measure. It simply requires that before owners can sell property, and subject to various constitutional protections, they need to submit that property to a point of sale inspection in order to determine that the property complies with applicable building and zoning regulations. The Ordinance protects also against people running out on their water bills.

Our Motion to Dismiss summarizes the Ordinance in detail. We will now provide a hypothetical example of how the Ordinance operates.

**A.     Example Of How The Amended Ordinance Operates**

Let's assume that on May 1, 2008, the Johnsons sell their house in Calumet City. They contact a realtor and put the house on the market on May 5th. They know they are going to have to do some work on the house for two reasons: first because the Ordinance may require it; and second, because the typical form real estate contract grants the buyer pre-closing inspection

rights. The Ordinance does not require that the seller have a sales contract in hand as a condition precedent to requesting the inspection. Subsection 14-1(b) is triggered whenever an owner "proposes to engage in a transfer of real property . . ."

Mr. Johnson comes to City Hall on May 5th and authorizes the inspection. Under the Ordinance, that inspection <u>must</u> take place within 28 days (June 2, 2008) and the inspection report <u>must</u> be furnished to Mr. Johnson by June 5. Assuming Johnson completes the punchlist items by June 19, 2008, the reinspection must be completed within the next 3 days. Therefore, the notice, inspection and reinspection process will be completed within 45 days at the outside.

In the meantime, Mr. Johnson and his realtor are trying to sell the house. If they have a buyer and have signed a contract, the normal pre-closing activities are taking place during this same month and a half. The buyer is doing his own inspection and obtaining a home loan. The seller or his attorney is ordering a survey and title commitment.

If Johnson chooses not to consent to the inspection, the burden is on the City to seek and obtain an administrative search warrant. If the City does not to seek the warrant, or if the local judge refuses to issue one, the transfer takes place without an inspection. If the City obtains a warrant, the City must proceed with diligence to inspect the property and identify code violations.

Assume the closing is to take place in December, 2008, but the house has code violations which cannot be taken care of in winter. Under Subsection (j), the cost of these repairs is secured, a conditional certificate of compliance is issued, the sale is closed, and the buyer has an additional 180 days to make the necessary repairs.

The Ordinance does not impose unreasonable time constraints on a seller's ability to close on the sale. The time the process is anticipated to take dovetails with the normal passage of time

between contract and closing. The Ordinance also identifies the Code provisions with which structures must be in compliance. See Subsection (c)(1). As discussed above, one of the Chapter 14 codes is found in Article X of the Calumet City Code of Ordinances. This Article, "Property Maintenance Code," specifically adopts the International Property Maintenance Code subject to certain specific amendments and revisions. These codes have specific and objective requirements for property maintenance. See Am. Complaint, Ex. B.

### B. Administrative and Judicial Due Process

Administrative decisions under the Ordinance are subject to multiple layers of review. Owners have the right to appeal required repair determinations (g), water payment due determinations (i) and notice of deconversion (g(iii).). Sections 111-1 through 111.8 of the Property Maintenance Code provide that a determination by a building official is subject to appeal to the Zoning Board of Appeals. A full public hearing is provided (Section 111.4-111.6) as well as the right to judicial review (111.7). An appeal stays enforcement.

This due process protection is also statutory. Section 11-13-3 of the Illinois Zoning Code, 65 ILCS 5/11-13-3 calls upon municipalities to create a Zoning Board of Appeals. ("The city council of cities … having a population of less than 500,000 may provide for the appointment of a Board of Appeals …"). Section 11-13-3(c). Calumet City has implemented this authority in Section 12.5 of the Zoning Ordinance.

Among the responsibilities of the ZBA is to "hear and decide appeals from and review any order, requirement, decision or determination made by an administrative official charged with the enforcement of any ordinance adopted under this Division 13." Sec. 11-13-3(f). Ordinance Section 12.5(a) similarly vests the Calumet City ZBA with the authority to "hear and

decide appeals from any order, requirement, decision or determination made by the zoning administrator under this ordinance …"

Section 11-13-12 of the Illinois Municipal Code establishes appeal rights. An appeal "may be taken by any person aggrieved or by any officer, department board or bureau of the municipality." Once an appeal is filed, the ZBA fixes a time for a hearing, gives the parties notice, and conducts a hearing where "any party may appear in person or by agent or by attorney." The decision of the ZBA is subject to administrative review. 65 ILCS 5/11-13-13; Ordinance Section 12.5 ("finality of decisions of the zoning board of appeals.").

The ZBA/administrative review process is specifically available if a municipal administrative official determines that the use of a building as a multi-family residence is not a legal nonconforming use. Taylor v. Zoning Board of Appeals of the City of Evanston, et al., 375 Ill.App.3d 585, (1st Dist. 2007). If a property owner invokes her appeal rights, she receives the benefit of an automatic stay absent an emergency. See 65 ILCS 5/11-13-12 ("An appeal stays all proceedings in furtherance of the action appealed from"). Even then, either the ZBA or the Circuit Court of Cook County has the authority to overturn the administrative certification that a stay is not appropriate.

## II.    Scope of Challenge and Relevant Legal Standard

Plaintiffs seek to enjoin the enforcement of the Ordinance based solely on the allegations of Counts I and II of the their Amended Complaint. See Motion for P.I. at 1 (the "Manns' motion is directed at Counts I and II"). A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant by a clear showing carries the burden of persuasion." Second Hand Tunes v. City of Chicago, 231 F.Supp.2d 784, 788 (N.D. Ill. 2002 (setting forth the familiar balancing factors).

Like Second Hand Tunes, this is a facial challenge to an ordinance. However, unlike that case, this case does not involve a First Amendment challenge. The Court should therefore follow the familiar rule that "'[f]acial challenges to legislation are generally disfavored." Id. at 789. This important limiting principle was brought home twice this term by the Supreme Court. Washington State Grange v. Washington State Republican Party, 128 S.Ct. 1184, 1191 (2008). Facial challenges are disfavored because they "often rest on speculation," resulting in "premature interpretation of statutes …" Facial challenges "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." See also Crawford v. Marion County Election Board, 128 S.Ct. 610, 622-3 (2008).

### III. Plaintiffs Have No Likelihood of Success on the Merits

#### A. Legal Framework

Point of sale inspection ordinances are common. They aim "to prevent the surreptitious conversion of single family homes to multi-family dwellings, and to retard the physical deterioration of the housing stock … Point of sale ordinances like this one are common building and zoning code enforcement measures and are aimed at maintaining the quality of municipal housing stocks." Main Street Organization of Realtors v. Calumet City, 505 F.3d 742, at 743-4 (Opinion of the Court) and 750 (Judge Sykes, concurring).

Because Counts I-II are facial challenges involving neither First Amendment rights nor suspect classifications, the Court's review of the Ordinance is deferential. Plaintiffs' facial vagueness challenge must be rejected unless they can "demonstrate that the law is impermissibly vague in all of its applications." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497 (1982). "Economic regulation" such as this "is subject to a less strict

vagueness test," Id. at 489, because "the consequences of imprecision are qualitatively less severe" with an enactment involving "civil rather than criminal penalties." Id.

A reviewing Court should consider "only whether the ordinance is wholly arbitrary," meaning that a law has no rational relationship to a legitimate state interest. Vaden v. Village of Maywood, 809 F.2d 361, 363 (7th Cir. 1987); Greater Chicago Combine and Center v. City of Chicago, 431 F.3d 1065, 1072 (7th Cir. 2005).

Finally, Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." The first step in any such claim is to identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 271 (1994).

B. **History of Point-of-Sale Ordinances**

Many cities throughout the country have adopted point of sale housing inspection ordinances. Dome Realty v. City of Paterson, 83 N.J. 212, 416 A.2d 334 (N.J. 1980) Butcher v. City of Detroit, 156 Mich.App. 165, 401 N.W.2d 260 (Mich.Ct.App. 1986), *cert. denied*, 482 U.S. 905 (1987) (upholding Detroit ordinance as a rational way of addressing fraud and dealing with the problem of housing deterioration and "combat[ting] housing deterioration." 156 Mich.App. at 170; City of Vincennes v. Emmons, 842 N.E.2d 155, 158 (Ind. 2006) at n.6 (collecting cases). These cases teach that a city may rationally determine that these codes are best enforced when property ownership is changing hands. Anderson, American Law of Zoning, §19.3 (because illegal alterations frequently occur literally behind closed doors, municipalities "undertake to plug the gap through the use of occupancy permits").

C. **Count I: The Point of Sale Inspection Ordinance Does Not Amount To An Unreasonable Restraint On "The Right Of Property Owners To Transfer Their Property."**

6

Count I alleges that the Ordinance "is unconstitutional because it violates [unidentified] protections in the U.S. Constitution against unreasonable governmental restriction on the right to sell private property." ¶33. It is true that the Ordinance regulates the right to sell real property. Like Illinois and Cook County, Calumet City requires sellers to pay a tax before they can convey real estate. Plaintiffs concede that the City has the right to tax the sale of property and enforce building codes. If the City can (i) restrain the sale of property by way of a tax, and (ii) regulate the condition of structures, then (iii) it is rational to use one regulatory mechanism to facilitate compliance with other regulations. When property ownership is transitioning, privacy interests diminish, and the parties may be negotiating these repairs themselves. One "particular advantage of point of sale inspection over other types of inspection is that it is conducted at time when money is available…" <u>Delman v. City of Cleveland Heights</u>, 41 Oh. St.3d 1, 534 N.E.2d 835 (1989).

In an effort to create a constitutional issue, paragraphs 33-36 rely on repeated misstatement of the Ordinance. The scope of search and types of repair the City may require are specific and limited. See subsection (c)(1), specifying provisions for compliance) and subsection (e) (limiting warranted inspections "to a determination whether there are violations of the code provisions identified").

The paragraph 33 complaint that the Ordinance requires the use of a "licensed contractor" is empty-headed. The Ordinance does not prevent homeowner do-it-yourself repair work. It provides only that <u>if</u> an owner contracts for repairs, the work has to be done by a licensed contractor. The Ordinance does not prevent plaintiffs from scraping their own gutters or replacing their defective switch plates.

Paragraph 33 speculates that even if a property is in compliance, the City may nevertheless ignore the Ordinance and refuse to issue a Certificate of Compliance. That speculative fear has nothing to do with the facial validity of the Ordinance; it merely raises state a potential state law mandamus issue. Plaintiffs' next two concerns, relating to no "meaningful right to a hearing" are belied by the terms of the Ordinance. The concerns about inspections and reinspections taking "an unreasonably long period of time" are also not true. As shown by the Johnson hypothetical, the timing of these compliance measures works with the contract-to-deed cycle of a real estate transaction.[1]

Paragraph 34 complains that the Ordinance does not provide detail regarding the water bill hearing. The absence of such detail does not go to the facial validity of the Ordinance; Memphis Light, Gas & Water v. Kraft, 436 U.S. 1, 11-12 (1978) teaches that all due process requires is the opportunity for a "presentation to a designated employee of a customer's complaint that he is being overcharged," in the setting of an "informal consultation with designated personnel empowered to correct a mistaken determination."

Count I can only be analyzed under a rational basis analysis and is best viewed as a substantive due process challenge. National Paint & Coatings Assn. v. City of Chicago, 45 F.3d 1124, 1129 (7th Cir. 1995); New Burnham Prairie Homes v. Village of Burnham, 910 F.2d 1474, 1480-81 (7th Cir. 1990). General Auto Service Station v. City of Chicago, 526 F.3d 991 (7th Cir. 2008) demonstrates that the Count I challenge fails.[2] Substantive due process is not "a blanket protection against unjustifiable interferences with property." Id. at 1000. It is only a "modest limitation that prohibits government action only when it is random and irrational." Id. Plaintiff

---

[1] Because an inspection is good for six months, an owner contemplating sale can get this done before she has a signed contract to sell her property.
[2] For purposes of our analysis of this case, and for ease of reading, we will drop internal quotations and citations.

have the heavy burden of showing the Ordinance is "arbitrary and unreasonable, bearing no substantial relationship to the public health, safety or welfare." Id. At 1001. The law survives under the rational basis test if the reason for the deprivation is not "so inadequate that the judiciary will characterize it as 'arbitrary.'" Id.

In this case, "because the right infringed upon is an interest in property rather than life or liberty," plaintiffs' initial constitutional challenges are to establish "either an independent constitutional violation, or the inadequacy of state remedies to redress the deprivation" before a court will even "consider whether the interference with property is arbitrary or irrational." Id. at 1001. In the present case, Plaintiffs allege no independent constitutional violation and the process is replete with state remedies.

The Supreme Court has never constitutionalized plaintiff's "restraint on alienation" theory, referring to it only as "an ancient doctrine disfavoring restraints and alienation of property." Asgrow Seed Company v. Winterboer, 513 U.S. 179, 188 (1995) at n.3. Municipal land use regulations are constitutional unless they are "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." Euclid v. Ambler Realty, 272 U.S. 365, 395 (1926); Lingle v. Chevron U.S.A., 544 U.S. 528, 541 (2005). Because there are ample remedies under Illinois law for a property owner upset about an inspector's interpretation of building codes or the City's determination regarding illegal use of land, the Court should find the Ordinance constitutional without the necessity of a rational basis analysis.

The Ordinance also easily survives scrutiny. Maintaining the quality of the housing stock and preventing urban (or in our case, suburban) decline, are quintessential public purposes.

Utilizing the municipal transfer tax as a vehicle for obtaining code compliance is a rational means for a local government to further those legitimate goals.

The flaws alleged in Count I are either misreads of the Ordinance or potential as-applied issues which do not undercut the law's facial validity. For example, ¶12 hypothecates unrestricted intrusive searches of bedrooms and closets. The Ordinance requires either consent by the homeowner (which results in a waiver of the ¶12 privacy concerns) or an administrative warrant (which will circumscribe the scope and nature of an administrative search). Paragraph 13's reference to a "prior ordinance" is irrelevant to this Court's analysis of the present Ordinance.

Count I depends entirely on a 1994 letter opinion written by the Illinois Attorney General to the Illinois Department of Financial Institutions.. The letter opinion responds to a question of whether non-home rule municipalities in Illinois (Calumet City is home rule) had the statutory authority to "require the inspection of documents and the payment of fees prior to the transfer of real property lying within the municipality."  The advisory opinion was that non-home rule municipalities lacked the statutory authority to impose a transfer tax.

The letter opinion is irrelevant to this constitutional challenge. The Attorney General was commenting on a question of Illinois municipal statutory authority, not a principle of constitutional law. The comment lacks any citation to authority. As such, it is worthless as authority on a matter of constitutional law.

### C. Count II: The Ordinance Does Not Violate Procedural Due Process

Before discussing process issues, it will be helpful to identify the property interests at stake in Counts I and II.. In the case of the code compliance requirements, the "property" at stake is money — the cost of repairs. If the transfer tax on a $200,000 home is $1,600 and there

are $500 in identified repairs, the sellers must pay an additional $500 "tax" to sell their house.[3] The property interest at stake is a variable based on the condition of individual houses

### 1.     Vagueness/Unfettered Discretion

Plaintiffs complain that the City's codes are vague because they use terms such as "good repair." ¶¶12; 37. They also argue that the Ordinance gives an inspector "unfettered discretion to order repairs unrelated to conditions that affect health or safety or the public good." ¶37. Plaintiffs' "what ifs" do not undercut the Ordinance's facial validity. Any such concerns are fully redressable under Illinois law on a case-by-case basis.

It is for the legislature to determine what building code provisions are reasonable and further the public health, safety and welfare. Plaintiffs may think that replacing floor tiles, painting a bedroom wall, repairing closet doors, and repairing kitchen cabinets are merely "cosmetic repairs unrelated to public health and safety." Am. Cplt. ¶13. But the City may rationally determine that making sure these "little" repairs are made will have a cumulative positive impact on the housing stock. See James Q. Wilson, "Broken Windows: The Police and Neighborhood Safety," www.theatlantic.com/doc/198203/broken-windows.

Count II's "unfettered discretion" argument is likewise without merit. A law is unconstitutionally vague if it does not give a person of ordinary intelligence a reasonable opportunity to know what it is prohibited and must contain explicit standards to avoid arbitrary and discriminatory enforcement. Native American Arts v. Bundy-Howard, Inc., 168 F.Supp.2d 905, 909 (N.D. Ill. 2001). The codes which are incorporated by reference into the Ordinance are anything but vague. See Cplt. Ex. B. Sections 304 and 305 of the International Property Maintenance Code are densely detailed. Plaintiffs focus on Section 304.1 of the IPMC,

---

[3] This hypothetical cost assumes contracted as opposed to do-it-yourself repair work.

providing that an exterior of a structure must be maintained "in good repair, structurally sound and sanitary, so as to not pose a threat to the public health, safety or welfare," and 305.1 which provides that the interior must be maintained "in good repair, structurally sound and in sanitary condition."

People with common intelligence can understand what it means to keep a house in good repair. Sections 304.01 and 305.01 are general requirements further refined fleshed out by the subsequent provisions. Numerous cases have held that laws requiring properties to be maintained "in good repair" are not unconstitutionally vague. Freeman United Coal Mining v. Federal Mine Safety, 108 F.3d 358, 362 (CADC 1997); People v. Beecher, 153 Misc.2d 247, 580 N.Y.S.2d 980 (N.Y. Just. Ct. 1992); City of Cleveland Heights v. G.&C. Properties, 1974 WL 184833 (Oh.App. 1974); People v. Balmer, 17 Cal.Rptr. 612 (Cal. Super. 1961) ("the words clean, sanitary, and good repair are not so vague and indefinite as to make the administrative code sections unconstitutional.").

An identical vagueness challenge to the same model code provisions adopted by a municipality was rejected by the court in Reedy v. Borough of Collingswood, 2005 WL 1490478 (D.Ct. 2005). The code sections under challenge used terms like "sound and in good repair," and "maintained in good condition." See *8-9. In denying a motion for preliminary injunction, the court was "not persuaded that the above provisions contain language that is so ambiguous and technical so as to deprive the ordinary citizen in Collingswood of constitutional required notice." Accordingly, Count II's void for vagueness challenge should be rejected.

### 2. Code Compliance/ Procedural Due Process

The Ordinance provides multiple layers of procedural due process to an individual who disputes the administrative determination of either needed repairs or payment for water services

owed. Subsection (g)(2) provides fast track review of an administrative repair decision by "an independent hearing officer." Final administrative determination are appealable to the City's Zoning Board of Appeals, and thereafter to the Illinois courts. This process destroys plaintiff's' due process challenge to the repair requirements. Plaintiffs' corollary claims (Am. Cplt. ¶16) that repairs will take too long because the Ordinance mandates the use of contractors is a manufactured misreading. Subsection (h), "Follow up Repairs; Reinspections," says that "a party issued a notice of repairs"—the owner—"shall proceed to make such repairs." Subsection (k) provides only that any contractors who perform the repairs "shall be licensed by the City."

The homeowners of Calumet City may rest assured that their time spent watching "This Old House" has not been in vain - they are free to fix their own screens and gutters.

### 3. Determination of Illegal Nonconforming Use and Due Process

The Paragraph 38 challenge to the deconversion provisions (assuming Plaintiffs have standing) is without merit. Section (c) (2) operates against only illegal conversions, and Plaintiffs do not allege their property has been illegally converted to multi-family. An administrative determination of illegal conversion is appealable to the City's ZBA, and then to the Circuit Court of Cook County. Ordinance, Sec. (g)(2); 65 ILCS 5/ 11-13-12 ("an appeal [to the ZBA] stays all proceedings"); Taylor v. Zoning Board of Appeals, City of Evanston, 375 Ill.App.3d 585 (1st Dist. 2007). Once again, a simple reading of the Ordinance disposes of the Par. 38 facial challenge.

### D.     Conclusion – the Ordinance Is Constitutional.

The Ordinance is rational. It provides ample due process. Therefore, it is constitutional and plaintiffs have no likelihood of success on the merits.

**IV.     Plaintiffs Fail to Satisfy any of the Other Elements for a Preliminary Injunction**

   **A.     Any Claim of Irreparable Injury Is Speculative and May Not Serve as a Basis for Preliminary Injunctive Relief**

The Seventh Circuit has "repeatedly held that a 'speculative' injury does not constitute an irreparable injury justifying injunctive relief." Singer Co. v. P. R. Mallory & Co., Inc., 671 F.2d 232, 235 (7th Cir. 1982). In the present case, any potential injury to plaintiffs rests on multiple layers of speculation. First, plaintiffs have to trigger the operation of the Ordinance by stating their intent to sell. If plaintiffs don't consent to a search and the City chooses not to obtain a warrant, then plaintiffs will proceed to close unaffected by any of the Ordinance's provisions.

If the plaintiffs do consent to a search, or if a warrant is obtained, it is speculative as to whether any code violations will be found. The nature and extent of any repair costs are speculative. For all we know, the house may be in pristine condition and will be given a clean bill of health on first inspection.

"Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction … a plaintiff must do more than merely allege imminent harm … a plaintiff must demonstrate immediate threatened injury as a prerequisite to a preliminary injunctive relief." Caribbean Marine Service v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988). Plaintiffs' claim of irreparable injury rests on multiple layers of speculation. They have failed to show the type of immediate threatened injury necessary for a preliminary injunction.

   **B.     The Balance of Harms and Public Interest Weigh Against Enjoining the Ordinance**

The City has a legitimate public interest in maintaining the quality of its housing stock. The Ordinance's enforcement mechanisms are a means of achieving that legitimate goal. The

City's interest is not simply a factor to be considered in evaluating success on the merits; "the ability of a city to enact and enforce measures it deems to be in the public interest is still an equity to be considered in balancing hardships." Heideman v. South Salt Lake City, 348 F.3d 1182, 1191 (10th Cir. 2003).  Plaintiffs have furnished nothing which would carry their burden to show that the speculative harm to them outweighs the harm to the City in maintaining the quality of its housing stock if the enforcement of the Ordinance is suspended pending the disposition of this lawsuit.

The public interest would not be served by enjoining enforcement of the Ordinance.  This Ordinance has been adopted and amended through the democratic process.  The history of this litigation and the City's defense of the Ordinance against multiple assaults by the local Realtors' Association (the real plaintiffs in this case) demonstrates the commitment of this community to the importance of enforcing the Ordinance.  That public interest outweighs any claim demonstrated by these plaintiffs with respect to Counts I and II.

**V.**     **Conclusion**

The Motion for Preliminary Injunction should be denied.

> Respectfully submitted,
>
> City of Calumet City
> By:   /s/ John B. Murphey

JOHN B. MURPHEY/ARDC #1992635
Rosenthal, Murphey & Coblentz
30 North LaSalle Street, Suite 1624
Chicago, Illinois 60602
Tel. (312) 541-1070
Fax (312) 541-9191

MARK STERK/ARDC #3125540
Odelson & Sterk, Ltd.
3318 West 95th Street
Evergreen Park, Illinois 60805
Tel. (708) 424-5678
Fax (708) 424-5829

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2008, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of said filing to all parties listed below:

| | | |
|---|---|---|
| Marcia B. Gevers | Mark H. Sterk | Philip C. Stahl |
| Marcia B. Gevers & Assoc. | Michael Joseph Hayes, Jr. | Maggie M. Hanel |
| 19710 Governors Hwy | Robert Wilder | Patrick Thomas Nash |
| Suite 8 | Richard F. Bruen, Jr. | Grippo & Elden |
| Flossmoor, Illinois 60422 | Odelson & Sterk | 111 South Wacker Drive |
| | 3318 W. 95th St. | Chicago, Illinois 60606 |
| | Evergreen Park, Ill. 60805 | |

Donald P. Bunin
Mark A. Semisch
Grippo & Elden LLC
111 South Wacker Drive
Chicago, Illinois 60606

    /s/   Douglas M. Doty
ROSENTHAL, MURPHEY & COBLENTZ
Attorneys for Calumet City
30 North LaSalle Street, Suite 1624
Chicago, Illinois 60602
Tel. (312) 541-1070
Fax: (312) 541-9191

Filename:            MemLawOppMPI7-5-08clean
Directory:           C:\Documents and Settings\Mary\Local Settings\Temp
Template:            C:\Documents and Settings\Mary\Application Data\Microsoft\Templates\Normal.dot
Title:               IN THE UNITED STATES DISTRICT COURT
Subject:
Author:              Cleo
Keywords:
Comments:
Creation Date:       7/5/2008 9:33 AM
Change Number:       12
Last Saved On:       7/7/2008 10:59 AM
Last Saved By:       Cleo
Total Editing Time:  99 Minutes
Last Printed On:     7/7/2008 12:31 PM
As of Last Complete Printing
    Number of Pages: 16
    Number of Words:      4,227 (approx.)
    Number of Characters: 24,097 (approx.)