IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HUSSEIN M. MANN and<br>DEBRA HOUSTON-MANN,<br><br>           Plaintiffs,<br>v.<br><br>CALUMET CITY, ILLINOIS,<br><br>           Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 08 C 555<br><br>Judge David Coar<br>Magistrate Judge Morton Denlow |

**PLAINTIFFS' MEMORANDUM
IN OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**

Philip C. Stahl
Patrick T. Nash
Donald P. Bunnin
Mark A. Semisch
GRIPPO & ELDEN LLC
111 S. Wacker Drive
Chicago, IL 60606
Phone: (312)704-7700
Fax:   (312)558-1195

490544.3

This Court should deny Calumet City's ("City") motion to dismiss because the Manns have described their claim in sufficient detail and, at a minimum, their allegations plausibly suggest a right to relief. As explained below, City's motion fails to offer substantive legal arguments to the contrary, fails to apply the proper legal standard, and relies on irrelevancies.

I.   **Fed. R. Civ. P. 12(b)(6) Provides The Proper Legal Standard**

City purports to bring its motion under Rules 12(b)(1) and 12(b)(6). In its motion, however, City makes no Rule 12(b)(1) arguments as to why this Court lacks jurisdiction. Insofar as any such argument can be gleaned from City's brief, it should be rejected because the Manns' claims fall squarely within this Court's federal-question jurisdiction.

In addition to invoking an inapplicable defense, City confuses the controlling legal standard by incorporating arguments set forth in its response to the Manns' motion for a preliminary injunction. Under Rule 12(b)(6), the Court assesses whether the complaint (1) "describe[s] the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and whether (2) "its allegations . . . plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (citation omitted); *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007). When performing this inquiry, the Court must "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [plaintiff's] favor." *Tamayo*, 526 F.3d at 1081.

A different standard controls the Court's inquiry into whether to grant a request for preliminary injunction. In addition to establishing irreparable harm and other equitable factors, to obtain a preliminary injunction, a party must show that *it is reasonably likely to succeed on the merits*. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). By incorporating its

490544.3

preliminary-injunction arguments, City thus applies the wrong standard to its motion to dismiss. Rule 12(b)(6)'s "easy-to-clear hurdles," *Tamayo*, 526 F.3d at 1084, not the more stringent preliminary-injunction factors, control City's motion to dismiss. City incorrectly assumes that should this Court decide not to grant a preliminary injunction, it necessarily must dismiss pursuant to 12(b)(6). That is plainly not the law. As explained below, the Manns have easily satisfied the pleading requirements to defeat a Rule 12(b)(6) attack.

II. **Count I: The Manns State A Claim That The Point Of Sale Inspection Ordinance Unreasonably Restrains The Right Of Property Owners To Transfer Their Property**

Count I is a facial challenge to City's Point of Sale Inspection Ordinance (the "Ordinance") and alleges that the Ordinance unconstitutionally interferes with the right to sell property without due process of law in violation of the due process clause of the Fourteenth Amendment. Count I also alleges that the Ordinance violates the Fourth Amendment because it contains no limitations on the scope of searches required by the Ordinance. More specifically, the Manns allege that the Ordinance states that private property cannot be sold unless City says it can be sold. Under the Ordinance, property cannot be sold unless City issues a transfer stamp, which first requires that a City inspector decide that the property has "passed" an inspection. Am. Compl. ¶ 30. There are no limitations on the scope of searches required by the Ordinance or the type of repair that City can require as a condition of the right to sell property. *Id.* City can stop a sale for any reason whatsoever by ordering cosmetic repairs such as repairing a soap-dish or painting a bathroom ceiling. *Id.* ¶¶ 13, 27. A property owner can "pass" an inspection only if it completes all repairs required by the inspector, even if those repairs are cosmetic. *Id.* ¶ 30. Count I further alleges that the Ordinance unconstitutionally interferes with the right to sell property by imposing unreasonably long delays while inspections, repairs, and re-inspections take place. *Id.* ¶¶ 16, 27, 30. In addition, Count I explains that the Ordinance is unnecessary to

2

achieve City's stated goal of maintaining the quality of housing in the City because City can use other less intrusive means to ensure compliance with maintenance codes, *i.e.*, the Code Enforcement and the Rental Dwelling Inspection Ordinances. *Id.* ¶¶ 21–23, 27, 33.

The allegations of Count I, which must be construed in the Manns' favor, state a facial challenge to the Ordinance under the due process clause. The due process clause provides that a state shall not "deprive any person of . . . property, without due process of law." U.S. Const., amend. XIV, § 1. "Property," within the meaning of the Constitution, includes the "right to . . . dispose of it." *United States v. General Motors Corp.*, 323 U.S. 373, 377–78 (1945); *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53–54 (1993) ("right of sale" is one of many protected property rights associated with the ownership of property). Thus, the government may not deprive a person of his right to freely alienate his property without due process. *See* Op. Ill. Att'y Gen. No. 94-024 (Oct. 25, 1994), 1994 WL 601863 ("Municipalities are authorized, under Article 11 of the Municipal Code . . . to adopt a number of ordinances and codes designed to protect public health and safety, and are authorized to enforce such codes by requiring permits, fees, and fines. . . . Further, municipalities may impose various fees for other services relating to real property. *In no instance, however, are municipalities authorized to limit the alienability of property in order to enforce such code*") (emphasis added)(attached hereto as Ex. A); *Huggins v. Isenbarger*, 798 F.2d 203, 208 (7th Cir. 1986) ("[A] federal court is not authorized on that account to give the Attorney General's views lesser weight than they would receive if they appeared in a bound volume of legal opinions."); *Nectow v. City of Cambridge*, 277 U.S. 183, 188–89 (1928) (invalidating a zoning ordinance under the Fourteenth Amendment because when a municipal ordinance fails to promote "health, safety, convenience, and general welfare," but instead amounts to a "serious and highly injurious" invasion of property rights, it

3

violates due process); *Petropoulos v. Chicago*, 5 Ill. 2d 270, 274, 125 N.E.2d 522, 525 (Ill. 1955) ("To place a legal restriction on the use of such property to the extent the same is rendered practically unsaleable would be an utter violation of a man's right to alienate property.").

Indeed, the Seventh Circuit, in addressing the Ordinance in prior litigation brought by the local realtor association has stated that the Ordinance interferes with the right to sell property:

> The challenged ordinance is quite likely to delay the sale of homes in the area . . . [and] to reduce sales prices. . . . The initial victims of an ordinance impeding the sale of homes are homeowners who would like to sell—or perhaps all homeowners subject to the ordinance; for as we said, any impairment of the salability ("alienability" in an older legal vocabulary) is one of the rights that, along with such other rights as the right to the exclusive enjoyment of the property, make a fee-simple interest more valuable than other interests in property, such as that of a licensee.

*Mainstreet Org. of Realtors v. Calumet City*, 505 F.3d 742, 745 (7th Cir. 2007). The Manns allege that the interference recognized by the Seventh Circuit crosses the line of unconstitutionality. Those allegations must be construed in favor of the Manns.

Count I also states a claim for a facial challenge that the Ordinance violates the Fourth Amendment because it contains no limitations on the scope of permissible searches. Ordinances that lack restrictions or limitations on the scope of administrative searches violate the Fourth Amendment. *Camara v. Mun. Ct. of City and County of S.F.*, 387 U.S. 523, 532 (1967) (invalidating an inspection ordinance where "the occupant has no way of knowing . . . the lawful limits of the inspector's power to search"); *Black v. Vill. of Park Forest*, 20 F. Supp. 2d 1218, 1230 (N.D. Ill. 1998) (invalidating an unconstitutional inspection ordinance because it failed to "limit[] in any way the scope of inspections").

City raises no arguments that even remotely suggest that the Manns have failed to state a cause of action. Instead City argues that the Ordinance is constitutional because it passes "rational-basis" analysis. It supports its argument by arguing that the property interest at stake in

Counts I and II is "money—the cost of repairs" and then states "the Ordinance easily survives scrutiny" because "maintaining the quality of the housing stock and preventing [suburban] decline, are quintessential public purposes." Def's Mem. Opp. Prelim. Inj. 9. City's argument should be rejected for three independent reasons. First, as a threshold matter, City's argument is misplaced in a motion to dismiss. City's alleged motive in enacting the Ordinance is irrelevant to a facial challenge. Moreover, there is nothing in the Complaint (nor anywhere else in the record) that suggests that the Ordinance was enacted to maintain the housing stock or that it actually accomplishes that goal. Moreover, the Manns' Complaint rebuts City's argument because it shows that City can achieve its stated purpose through its Rental Dwelling Inspection and Code Enforcement Ordinances without interfering with the right to sell property, a point City recently conceded in the related *Walker* litigation pending before Judge Shadur. Am. Compl. ¶¶ 21–23. Moreover, as explained in the Manns' motion for a preliminary injunction, City has suffered no harm even though it has not enforced its Ordinance for over two years.

Second, even if City's argument could properly be raised at the pleading stage, it should be rejected because it mischaracterizes the Manns' claim. The property interest at stake is not "the cost of repairs," but rather "the right to freely transfer property." Moreover, City's argument that the right to sell property is not a fundamental right is plainly wrong. City relies only on *Gen. Auto Serv. Station v. City of Chi.*, 526 F.3d 991, 1000 (7th Cir. 2008), an inapposite case that addresses the right to display a commercial advertisement but not the right to sell property. City ignores controlling authority that shows that the right to sell property is a fundamental property right. See *James Daniel Good*, 510 U.S. at 54 (finding the right of sale a "valuable right[] of ownership"); *Linmark Assocs., Inc. v. Twp. of Willingboro*, 431 U.S. 85, 96 (finding that the right of sale pertains to "one of the most important decisions they have a right to

make: where to live and raise their families"). Because the right to sell property is fundamental, City must pass strict scrutiny by showing that the Ordinance is narrowly crafted to achieve a compelling governmental purpose. *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 644 (7th Cir. 2007). City offers no argument that the Ordinance could pass strict scrutiny. Nor could it because it unreasonably (and unnecessarily) impairs the right to sell property without due process even though the City has other less intrusive means available to ensure that property in City is properly maintained.

Third, even if rational-basis review were the proper legal standard, the Manns state a claim because they "plausibly suggest . . . a right to relief." *Tamayo*, 526 F.3d at 1084. Under this test, the Manns must allege that the Ordinance is "arbitrary and unreasonable, bearing no substantial relationship to public health, safety or welfare." *Gen. Auto*, 526 F.3d at 1000–01. The Ordinance cannot survive rational-basis review because delaying home sales for long periods and requiring inconsequential repairs is arbitrary and unreasonable (*e.g.*, homes that are not for sale are permitted to have loose soap dishes but homes for sale are not) and not substantially related to public health and safety (both of which are policed pursuant to the Rental Dwelling Inspection and Code Enforcement Ordinances). Based on the Complaint's allegations, which must be interpreted in favor of the Manns, the Ordinance would fail to withstand any level of scrutiny.

City also argues that this Court should not consider Count I because the Manns "allege no independent constitutional violation and the process is replete with state remedies." Def's Mem. Opp. Prelim. Inj. 9 (citing *Gen. Auto*, 526 F.3d at 1001). However, plaintiffs need establish "either an independent constitutional violation or the inadequacy of state remedies" only as a prerequisite to as-applied challenges, not facial challenges. *E.g., Gen. Auto*, 526 F.3d at 1001;

6

*accord Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield*, 907 F.2d 239, 242–43 (1st Cir. 1990) (citing cases) ("The district court erred in ruling that a facial substantive due process challenge to a zoning ordinance . . . is not ripe for adjudication until [plaintiff exhausts state remedies]."); *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 386 (1926); *County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 166 (3d Cir. 2006). Even were an independent constitutional violation required in this case (which it is not), the Manns, as explained above, allege that the Ordinance violates the Fourth Amendment and, as set forth next, they allege that the Ordinance also fails to provide procedural due process.

### III. Count II: The Manns State A Claim That The Ordinance Fails To Provide Pre-Deprivation Procedural Due Process

#### A. Lack of Pre-Deprivation Due Process

The Fourteenth Amendment requires that a government must provide procedural due process, including the right to be heard, *before* it takes a property right. *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 11 (1978) ("[S]ome kind of hearing is required at some time *before* a person is finally deprived of his property interests.") (emphasis added). The Supreme Court has repeatedly applied this fundamental due process rule to invalidate ordinances that deprive persons of the right to sell property without first providing adequate due process. For example, *Connecticut v. Doehr*, 501 U.S. 1 (1991), held unconstitutional a statute that permitted prejudgment attachment of real estate without a hearing. The Supreme Court emphasized the significance of an owner's right to freely sell his home without governmental interference:

> [T]he property interests that attachment affects are significant. For a property owner . . . attachment ordinarily clouds title; impairs the ability to sell or otherwise alienate the property . . . .

*Id.* at 11. The Supreme Court also held that the taking of the right to sell property—even if only temporary—requires pre-deprivation due process protection:

7

> [T]he Court has never held that only such extreme deprivations trigger due process concern. To the contrary, our cases show that even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection.

*Id.* at 12 (citation omitted). Similarly, the Court stated:

> The Fourteenth Amendment draws no bright lines around three-day, 10-day, or 50-day deprivations of property. Any significant taking of property by the State is within the purview of the Due Process Clause.

*Id.* at 15 (quoting *Fuentes v. Shevin*, 407 U.S. 67, 86 (1972)). The Court also held that *post-deprivation* hearings are insufficient to comply with due process because a post-deprivation hearing "would not cure the temporary deprivation that an earlier hearing might have prevented." *Id.* at 15.

Similarly, *James Daniel Good* held that, as respects the deprivation of a home, the requirement for a predeprivation hearing is critically important because, without a hearing, property owners are deprived of "valuable rights of ownership, including the right of sale." 510 U.S. at 53–54. In *James Daniel Good,* the Court held that a hearing was required before a home could be seized pursuant to 21 U.S.C. §881(a)(7) on the ground that the home was used to facilitate a federal drug offense. Relevant to this case, the Supreme Court observed:

> [A property owner's] right to maintain control over his home, and to be free from governmental interference, is a private interest of historic and continuing importance. . . . The seizure deprived [the property owner] of valuable rights of ownership, including the right of sale. . . . All that the seizure left him was the right to bring a claim for the return of title at some unscheduled future hearing. . . .

*James Daniel Good*, 510 U.S. at 53–54, 62.

Count II alleges facts which, at a minimum, plausibly suggest that the Ordinance fails to comply with the Supreme Court's edict that a hearing must be provided *before* a property right—here, the right to sell property—can be taken. As respects point of sale inspections, the Ordinance results in the immediate deprivation of a homeowner's right to sell her property until

8

City decides to permit it. Am. Compl. ¶ 36. Upon issuance of an inspector's repair order, homeowners are prohibited from selling property until repairs are made. *Id.* ¶¶ 36–37. The Ordinance provides homeowners no due process *prior to* this deprivation of the right to sell property. In effect, City has enjoined the transfer of residential property—without a complaint, evidence, a hearing or any procedural or substantive rules—until it decides to consent. *Id.* ¶ 36.

As respects deconversions, the Ordinance does not provide pre-deprivation due process protection to ensure that City does not wrongfully deprive property owners of the "valuable property right" to sell legal nonconforming property. *Village of Oak Park v. Gordon*, 32 Ill. 2d 295, 298, 205 N.E.2d 464, 466 (Ill. 1965). For example, Count II alleges that the Ordinance does not explain how City will determine whether property is "illegal." Am. Compl. ¶ 38. Further, property owners are not granted a pre-deprivation hearing where they can be represented by counsel, rebut City's positions or submit evidence to show that the property is not an illegal conversion. Once City declares property to be illegally converted, it cannot be sold without deconversion. Ironically, City argues that Count II does not state a cause of action even though the Ordinance's lack of due process directly led to the Manns losing an opportunity to sell their legal nonconforming property in October 2006. *See* Am. Compl. Count IV.

City's arguments miss the mark by focusing exclusively on *post*-deprivation due process. The Supreme Court has held that it does not matter if an ordinance provides some *post-deprivation* due process, such as the right to appeal, because the Constitution requires *pre-deprivation* due process. *Doehr*, 501 U.S. at 15.

**B.     Void for Vagueness**

The Fourteenth Amendment prohibits ordinances that "are so vague that 'men of common intelligence must necessarily guess at its meaning.'" *Penny Saver Publ'ns, Inc. v. Vill. of Hazel Crest*, 905 F.2d 150, 155 (7th Cir. 1990) (quoting *Connally v. Gen. Constr. Co.*, 269

U.S. 385, 391 (1926) (invalidating ordinance on vagueness grounds)). "All are entitled to be informed as to what the statute commands or forbids." *Penny Saver*, 905 F.2d at 155.

Count II alleges that the Ordinance is unconstitutionally vague because (1) it requires that property be in "good repair" before it can be sold but fails to notify property owners of what conditions constitute "good repair" (Am. Comp. ¶ 37); and (2) City inspectors have historically relied on the "good repair" provisions of the Ordinance to order repairs unrelated to conditions that affect health, safety, or the public good, *e.g.*, repairs to soap dishes, painting a bathroom ceiling. *Id.* ¶¶ 13, 35. City argues that "[p]eople of common intelligence can understand what it means to keep a house in good repair" but fails to cite any precedent indicating that "in good repair" constitutes the "little repairs" City admits are central to its Ordinance. For example, City cites no cases that show that citizens would know that they were to have working soap dishes before they can sell their home.[1] In sum, the allegations of the Complaint, which must be construed in the Manns' favor, state a claim that the Ordinance is void for vagueness.

IV. **Count III: The Manns State A Claim That City Unconstitutionally Refuses To Issue Rebuild Letters And/Or Confirm that Property Is Legal Nonconforming**

As set forth in Part II above, the Fourteenth Amendment prohibits a state from depriving a person of his right to alienate his property without due process of law. *See, e.g., Nectow*, 277 U.S. at 188–89. The right to freely alienate property includes the right to sell legal nonconforming property as such. *Gordon*, 32 Ill. 2d at 298, 205 N.E.2d at 466 (recognizing the right to sell legal nonconforming property). As with Count I, the allegations of Count III state a claim based on a violation of constitutional protections against unreasonable restrictions on the right to sell legal nonconforming property. City's response relies on the erroneous and

---

[1] The cases cited by City are inapposite. *See* Manns' Reply Brief in Support of Preliminary Injunction Motion at pp. 12-13.

10

unfounded premise that the complaint alleges a constitutional duty to provide letters of certification to lenders. The Complaint makes no such allegation. Nor does the Complaint ask this Court to inappropriately usurp any legislative function, as City alleges.

The Manns allege that City's refusal to issue rebuild letters and/or otherwise confirm that property is legal nonconforming unconstitutionally restrains the right to sell legal nonconforming property. The complaint alleges that the Zoning Ordinance provides that if legal nonconforming property is damaged by less than 50%, then it can be rebuilt as legal nonconforming even if current zoning regulations would otherwise restrict what could be built. Am. Comp. ¶ 43. Further, the Complaint alleges that, City arbitrarily and uniformly (through pre-printed forms) refuses to issue rebuild letters (that state legal nonconforming property can be built as such if damaged by less than 50%) that buyers' lenders uniformly require before they will lend money for the purchase of legal nonconforming property. *Id.* The complaint alleges that under the current scheme, owners of legal nonconforming property are thus forever barred from selling their property unless they "deconvert" it to comply with current zoning restrictions. *Id.*

These allegations, which must be accepted as true and construed in the Manns' favor, state a claim that City's refusal to issue rebuild letters or confirm that property is legal nonconforming violates the constitutionally protected right to sell legal nonconforming property.

V.  **Count IV: The Manns State A Claim That The Contempt Order Should Be Enforced Or, Alternatively, That The Manns Should Be Granted Similar Relief**

    A.  **The Contempt Order Should Be Enforced**

        1.  **Background**

In prior related litigation, *Realtor Ass'n of W./S. Suburban Chicagoland v. Calumet City, Ill.*, No. 06 C 2271 (N.D. Ill. dismissed Nov. 27, 2007), the local realtor association filed suit seeking an injunction against City's enforcement of its Ordinance. On August 8, 2006, Judge

Shadur entered a preliminary injunction which enjoined City from, among other things, enforcing the Ordinance and ordering the deconversion of legal nonconforming property. Am. Compl., Ex. F. City violated the injunction which resulted in the Manns losing an opportunity to sell their property. After lengthy briefing and argument, Judge Shadur ordered, "The [Manns], along with the involved real estate brokers, are entitled to be compensated by City for the damages they incurred or will incur in connection with their failed closing of the sale and transfer of the property on or about October 31, 2006 [and] for reasonable attorneys' fees and related costs . . . ." Am. Compl., Ex. H ("Contempt Order").

City did not appeal the Contempt Order, refused to compensate the Manns for their damages and, in bad faith, even denied the existence of the Contempt Order. Am. Compl., Ex. I. Showing its true colors, although City has refused to compensate the Manns for their damages and denied the existence of the Contempt Order, City has paid the brokers involved in the lost transaction the damages they suffered (*i.e.*, lost commissions) pursuant to the very Contempt Order which City denies exists with respect to the Manns.

City does not dispute the facts surrounding the Contempt Order but argues only that the Contempt Order is unenforceable because (1) this Court had no jurisdiction to issue it due to the Seventh Circuit's subsequent vacation of the August 8, 2006 Injunction; (2) City had no opportunity to defend itself against the order; and (3) this Court lacked authority to grant affirmative relief to nonparties. Each argument is without merit.

2.   **This Court Had Jurisdiction to Issue the Order and Has Jurisdiction to Enforce It**

The crux of City's argument is that the Contempt Order is a nullity because the Seventh Circuit vacated Judge Shadur's August 8, 2006 Injunction on the ground that the realtor association lacked "prudential standing" to challenge the Ordinance. The Seventh Circuit's

decision, however, is irrelevant to whether Judge Shadur had jurisdiction to issue the Contempt Order and to whether the Contempt Order—which City did not appeal—should be enforced in this litigation. Contrary to City's argument, the Seventh Circuit's decision actually confirms that Judge Shadur had Article III jurisdiction to issue the Contempt Order because two out of the three Judges ruled that the realtor association had constitutional Article III standing. *MainStreet*, 505 F.3d at 745. The fact that the Seventh Circuit *sua sponte* ruled that the association lacked "prudential standing" does not mean that Judge Shadur did not have federal jurisdiction to issue the Contempt Order because prudential standing "is not jurisdictional in the sense that Article III standing is." *Id.* at 747. The absurdity of City's position is exposed by the fact that the Seventh Circuit has ruled that a court "*may* raise an unpreserved prudential-standing question on its own, but unlike questions of constitutional standing, it is *not obliged to do so.*" *Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 757 (7th Cir. 2008) (emphasis added). If the Seventh Circuit had elected to not raise prudential standing *sua sponte,* there would be no question that the Contempt Order is enforceable. Certainly, the fortuity of an appellate court ruling *sua sponte* cannot determine the enforceability of unappealed orders issued by the District Court.

Moreover, courts always have jurisdiction to issue contempt orders, which are "separate and independent proceeding[s] at law." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) (quoting *Bray v. United States*, 423 U.S. 73, 75 (1975)). For example, *Walker v. City of Birmingham*, 388 U.S. 307, 321 (1967), upheld a contempt order against Martin Luther King, Jr. even though the underlying ordinance and injunction was constitutionally defective. Like the contempt order in *Birmingham*, this Court's Contempt Order was issued before the enforceability of the August 8 Injunction was decided. Thus, as in *Birmingham*, Judge Shadur had jurisdiction to issue the Contempt Order and this Court should enforce it in this proceeding.

This Court also has jurisdiction to enforce the Contempt Order. In failing to appeal the order, City was required to comply with it just as King, Jr. was required to comply with the unappealed, constitutionally defective order restraining his speech. "[I]n the fair administration of justice no man can be judge in his own case. . . . [R]espect for judicial process is a small price to pay for the civilizing hand of law." *Birmingham*, 388 U.S. at 320–21; *see also United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947) (finding "impressive authority for the proposition that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings"); *Alexander v. Chi. Park Dist.*, 927 F.2d 1014, 1025 (7th Cir. 1991) ("Parties must obey court orders regardless of their validity, unless the orders are stayed pending appeal.").

### 3. City Had Multiple Opportunities to Defend Itself against the Order

City contested the Manns' request for relief on multiple occasions. For example, on December 5, 2006, City filed a response and thirteen exhibits (including an affidavit from a City employee concerning the failed Mann transaction) asserting that relief to the Manns was improper because City was not violating the injunction with respect to them. Ex. B, Ex. 13 thereto. On December 12, 2006, City filed a memorandum in support of its assertion that it "did not engage in contemptuous conduct with respect to the handling of the [Mann] transaction." Ex. C. On February 22, 2007, City made the same argument it makes now that this Court should not award relief to the Manns because they are nonparties. at ¶ 4 Ex. D, at ¶ 4. Judge Shadur rejected these arguments. City's recourse was to appeal. City declined to do so and cannot now be heard to say that the order is not enforceable.

### 4. This Court Appropriately Granted Relief to a Nonparty

The Rules of Civil Procedure contemplate that courts may grant relief for nonparties. Rule 71 states, "When an order grants relief for a nonparty . . . the procedure for enforcing the

14

order is the same as for a party." Fed. R. Civ. P. 71. It is irrelevant whether the Manns were parties when Judge Shadur issued the Contempt Order. *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 261 (1971) ("While . . . any individual threatened with injury . . . may . . . sue for injunctive relief . . . one injunction is as effective as 100."); *Commodity Futures Comm'n v. Krysinski*, No. Civ.A.03-C-8571, 2004 WL 2203511, at *5 (N.D. Ill. Aug. 3, 2005) (issuing injunction and ordering payment of damages to nonparty customers/creditors of defendant)(Ex. E hereto).

    **B.**    **Count IV States A Claim for Alternative Relief That Stands Even if the Contempt Order is Invalid**

Even if the Contempt Order is unenforceable, the Manns state a claim for relief on Count IV by alternatively asking this Court to enter another order stating that the Manns are entitled to damages based on City's conduct in interfering with the sale of the Manns' property in October 2006. At a minimum, Count IV should not be dismissed because (1) City fails to provide an argument in rebuttal to Count IV's alternative claim for relief; and (2) this Court previously found a constitutional violation on identical facts when it issued the Contempt Order, and thus the Manns "plausibly suggest . . . a right to relief." *Tamayo*, 526 F.3d at 1084.

**VI.**    **Conclusion**

For these reasons, the Court should deny City's motion to dismiss.

Dated: August 7, 2008

Respectfully Submitted,

HUSSEIN MANN and DEBRA HOUSTON-MANN
/s/ Patrick T. Nash
One of Their Attorneys

Philip C. Stahl
Patrick T. Nash
GRIPPO & ELDEN LLC
111 S. Wacker Drive
Chicago, IL 60606
Phone: (312)704-7700
Fax:     (312)558-1195

## CERTIFICATE OF SERVICE

I, Patrick T. Nash, certify that on this 7th day of August, 2008, I served the foregoing **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT** upon the following by Electronic Mail Transmission via the Court's ECF System:

>Mark H. Sterk
>Odelson & Sterk, Ltd.
>3318 West 95th Street
>Evergreen Park, Illinois 60805
>
>John B. Murphey
>ROSENTHAL, MURPHEY & COBLENTZ
>30 North LaSalle Street
>Suite 1624
>Chicago, IL 60602

>s/ Patrick T. Nash
>Patrick T. Nash

490544.3