IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HUSSEIN M. MANN and ) | | |
| DEBRA HOUSTON-MANN, ) | | |
| Plaintiffs, ) | Case No. 08 C 555 | |
| vs. ) | | |
| ) | Judge David H. Coar | |
| CALUMET CITY, ILLINOIS, ) | Magistrate Judge Morton Denlow | |
| Defendant. ) | | |

**CALUMET CITY'S REPLY MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS**

**I.   Count I:  Plaintiffs Have Failed To Cite A Single Case In Support Of The Count I Challenge**

Plaintiffs' argument in support of Count I is remarkable because it fails to cite a single case which would support their challenge.  Instead, they have repeatedly misrepresented the Ordinance. (Pltfs' Mem. at 2-7).  In order to facilitate this Court's review, an additional copy of the Ordinance (Ord. 08-06) is attached to this Memorandum as **Exhibit 1**.[1]  Our Motion to Dismiss provides a full executive summary of the Ordinance.

Contrary to plaintiffs' mischaracterizations, there are "limitations on the scope of searches required by the Ordinance."  As summarized in our Motion to Dismiss, subsection (c)(1) limits the Ordinance's applicability to compliance with specific City codes.  Inspections are therefore limited.  To the extent an owner chooses to decline an inspection, the warrant process effectively limits the scope of search.  The state court judge will circumscribe the scope of any administrative search.

---

[1] The version appended to Plaintiffs' Complaint is poor quality.  The copy appended to our Motion is not the current version and should be disregarded.

There are no long inspectional delays. The Ordinance imposes tight time frames on inspections and notices of repair. Subsections (g) and (h). Plaintiffs have simply either misread or misrepresented the terms of the Ordinance.

Turning to plaintiff's argument, its centerpiece (at 3) is still only the Illinois Attorney General's 1994 advisory opinion regarding Illinois law issues. For the reasons set forth in our opposition to plaintiff's Motion for Preliminary Injunction (6-10), that advisory opinion is meaningless to the federal constitutional issues.

Plaintiffs' argument (at 4) that the Seventh Circuit's <u>MainStreet</u> opinion in any way intimated a view on the merits is a misstatement. Judge Posner's majority opinion specifically held that "we do not reach the merits of this suit or express an opinion on them." The majority opinion did note (at 743-4) that "such 'point of sale' ordinances are common. They aim to prevent surreptitious conversation of single-family homes to multi-family dwellings and to retard the physical deterioration of the housing stock." Judge Sykes' concurrence (505 F.3d at 750) notes that "ordinances like this one are common building and zoning code enforcement measures and are aimed at maintaining the quality of municipal housing stocks." If anything, the tenor of <u>MainStreet</u> tips in favor of the City.

Plaintiffs are wrong (at 4) when they assert a facial Fourth Amendment violation. Subsections (d) and (e) specify a warrant procedure similar to that upheld by Judge Aspen in <u>Hometown Co-operative Apartments v. City of Hometown</u>, 515 F.Supp. 502, 504 (N.D. Ill. 1981) and by this Court in <u>Makula v. Village of Schiller Park</u>, 1998 WL 246043 (N.D. Ill. 1998). Plaintiffs' citation of <u>Black v. Village of Park Forest</u>, 20 F.Supp.2d 1218 (N.D. Ill. 1998) is unavailing. Subsection (e) of the Calumet City Ordinance specifically limits a warrant application to determine "whether there are violations of the Code provisions identified in this

2

section, and whether there have been any illegal conversions." Thus, the search is constrained by setting forth a "clear indication of the evil sought to be prevented by the inspection program," and "indication of appropriate parameters for the searches." Black, supra at 1230. Plaintiffs' Fourth Amendment challenge (which was not even pled in Count I) fails.

The cases cited by the Manns at 5-8 have absolutely nothing to do with the facial constitutionality of the Ordinance. Among other things, the Manns have chosen to ignore cases such as Butcher v. City of Detroit, 156 Mich.App. 165, 401 N.W.2d 260 (Mich. Ct. App. 1986), which specifically upholds a substantially similar ordinance. Plaintiffs fail to meet the heavy substantive due process burden they face when they challenge an ordinance on its face.

Because Manns' arguments in support of Count I are either based on a misreading of the Ordinance or are completely lacking in any constitutional analysis, the City is entitled to dismissal of the Count I facial challenge. The Ordinance is a rational means of addressing issues relating to maintaining the quality of housing stock in the community.

## II.   Count II: The Ordinance Provides Procedural Due Process And Is Not Void For Vagueness

### A.   The Ordinance Provides Predeprivation Due Process

Contrary to the Manns' argument (at 7-9), the Ordinance provides fully ample procedural due process. Once again, the Manns have ignored the text of the Ordinance and Illinois law.

Here are the layers of due process. If a property is being inspected and an owner disagrees with the repairs which must be made, Subsection (g)(2) allows for an immediate hearing. If the owner disagrees with the hearing officer's determination, the owner may appeal that determination to the City's Zoning Board of Appeals. See Subsection (g)(3).

Subsection (i) deals with a situation where a property owner disputes a final water bill reading. Once again, predeprivation due process is provided. The Ordinance and statute provide ample procedural due process with respect to the determination that a use is nonconforming. The Ordinance [Subsection (c)(2)] specifically defines the term "illegal conversion" to mean a property which is both in violation of the zoning limitations presently and is not a "legal nonconforming use" under Section V of the City Zoning Ordinance. As we set forth on page 13 of our opposition to the Motion for Preliminary Injunction, a property owner has a full and complete right to appeal an administrative determination of nonconforming use, first to the City Zoning Board of Appeals, then to the Circuit Court of Cook County. Because an appeal to the City's ZBA operates as a stay of the administrative order, predeprivation process is provided.

Contrary to the Manns' arguments, this is not "post-deprivation due process." See Mann Memo at 9. All of these matters can be resolved readily prior to the sale of property. The Ordinance allows that the costs of any contested repairs can be secured through an escrow pending resolution of the dispute.

Plaintiffs' procedural due process argument is without merit. The Ordinance readily withstands this facial challenge.

  B.  **The Ordinance Is Not Unconstitutionally Vague**

Perhaps the best evidence that the standards in the Ordinance are not unconstitutionally value is found in plaintiffs' claim (at 12) that there are substantive differences between the Code provision upheld in <u>Reedy v. Borough of Collingswood</u>, 2005 WL 1490478 (D.N.J. 2005) and the International Property Maintenance Code adopted by Calumet City (Am. Cplt. Ex. B). There are no such differences. The Codes are simply versions from different years. For example, PM 304.8 in <u>Reedy</u> required that all overhang extensions be maintained "in good repair" and be

"properly anchored." PM 304.9 in the Calumet City adaptation of the Model Code, "Overhang Extensions," has the identical language.

Plaintiffs have failed to produce any case authority to support their vagueness challenge. The Ordinance is not unconstitutionally vague.

### III. The City Does Not Have A Constitutional Duty To The Manns To Issue "Rebuild Letters"

As this Court will recall, plaintiffs have a legal nonconforming use of their property. It now appears that they are alleging that the City has a constitutional duty to provide title assurance to "buyers' lenders" that a legal nonconforming building can be rebuilt if it is damaged by less than 50%. Not surprisingly, plaintiffs fail to cite any authority for this alleged constitutional duty. And with good reason – no such duty exists.

In order to understand why Count III fails to state a federal constitutional claim, it is necessary to have some background on Illinois zoning law relating to legal nonconforming uses. A "legal nonconforming use" is a land use "that is not permitted under the current zoning ordinance, but is allowed to continue because it predates the ordinance." <u>Taylor v. Zoning Board of Appeals of City of Evanston</u>, 375 Ill. App.3d 585, 592, 314 Ill.Dec. 562 (1st Dist. 2007). Like most municipalities in Illinois, Calumet City's Zoning Ordinance has a section devoted to "nonconforming buildings and uses." That Ordinance is attached to this Memorandum as **Exhibit 2**.

Section 5.5, "Damage and Destruction," deals with the impact of damage or destruction to a structure containing a legal nonconforming use. The Ordinance provides:

> If a building or other structure containing a nonconforming use is damaged or destroyed … to the extent of fifty (50) percent or more of its replacement value at that time, the building or other structure can be rebuilt or used thereafter only for

> a conforming use and in compliance with the provisions of the district in which it is located. In the event the damage or destruction is less than fifty (50) percent of its replacement value, based upon prevailing costs, the building may then be restored to its original condition and the occupancy or use of such building may be continued which existed at the time of such partial destruction.

Count III speaks in terms of something called a "rebuild letter." Plaintiffs' claims that "the buyer's lender" "almost uniformly asks the City to issue a letter that states that if a legal nonconforming property is damaged it can be rebuilt as legal nonconforming property consistent with the zoning code." Plaintiffs allege that the City "arbitrarily and uniformly" refuses to issue" these rebuild letters.[2]

The question framed by Count III is whether a municipality has a duty rooted in the federal Constitution to send letters to would-be lenders explaining the rules relating to damage or destruction to a building containing a nonconforming use when (i) the rules are set forth in the law; (ii) the law is a matter of public record available, inter alia, on the internet as witnessed by Exhibit 1; and (iii) either the seller, his broker, his attorney, or the unnamed lender has the ability to read the governing ordinance. As a matter of constitutional law, plaintiffs' proposition is arrant nonsense. It is an argument which should be made as a legislative proposal to the Calumet City Council, not to this Court by way of a demand for a mandatory injunction..

The Constitution "is a charter of negative liberties; it tells the state to let people alone; it does not require … the state to provide services …" Bowers v. DeVito, 686 F.2d 616, 618 (7th Cir. 1982). The Constitution is not a "creator of affirmative rights to government services or resources." Ridlen v. Four County Counseling Center, 809 F.Supp. 1343, 1355 (N.D. Ind. 1992).

Count III fails to state a constitutional claim. As a legal matter, a municipality has no constitutional obligation to provide code interpretation letters to unnamed lenders. Plaintiffs

---

[2] It is hard to understand how a municipal practice which is "uniform" can also be "arbitrary."

6

have no standing to make such demands. Ordering the legislative branch to make affirmative representations to unknown "lenders" regarding properties not before this Court would be an extraordinarily unwarranted judicial intervention into the day-to-day operation of a co-equal branch of the government.

Sophisticated lenders can read the local law and determine the status of legal nonconforming uses without a federal court requiring a municipality to spell it out for them. After all, they are in the "fine print" business when they make their loans.

The relief requested by plaintiffs is more appropriately directed to the corporate authorities at a City Council meeting rather than through attempted judicial imposition.

**IV.    Any Order Entered By Judge Shadur In the Realtors Case Relating to Mann Is A Nullity.  In the alternative, Count IV should be dismissed and Mann should pursue any remedies before Judge Shadur.**

In <u>MainStreet</u>, the Seventh Circuit concluded that the <u>Realtors'</u> lawsuit was not properly before Judge Shadur. That ends the matter. All underlying orders are a nullity.

In reality, the Manns are seeking a windfall without ever being required to present their case. Judge Shadur's order, **Exhibit 3**, was entered with no discovery whatsoever. The Manns never even appeared before the Court. If the Manns feel they were damaged by contemptuous conduct, it is their responsibility to bring the matter before Judge Shadur. The fact that plaintiffs are fighting submission to Judge Shadur, is ample demonstration of their recognition that the Order was rendered without jurisdiction. Furthermore, plaintiffs misrepresent the Order itself. As shown by Exhibit 3, the City was not held in contempt. The motion by plaintiff to show cause why the City should not be held in contempt was <u>denied</u>. See Exhibit 3 heading and par. 5. Accordingly, plaintiffs' case citations relating to orders of contempt are irrelevant.

If plaintiffs wish to pursue a damage claim against the City, they should seek leave of court to file a new amendment. Their attempt to have this Court enforce a void order from another proceeding should be rejected.

## V.    Conclusion

Perhaps now more than ever, municipalities like Calumet City need tools such as this Ordinance to maintain the quality of its housing stock and combat urban decay. According to a newspaper article, "Foreclosures 'Weigh' on Municipalities," **Exhibit 4**, 2005, there were 304 foreclosure filings in Calumet City. Currently the City "has about 560 foreclosure properties out of 17,000 residential and commercial addresses." This amounts to an 85% increase in the foreclosure rate. This threat to the City's housing stock is real. Maintaining the quality of its homes is a real world problem in Calumet City.

The Point of Sale Ordinance is one measure designed to maintain housing values. Contrary to plaintiffs' hyperbole, the Ordinance doesn't take away anybody's house. It simply requires that before owners can sell their property, and subject to various constitutional protections, they have their property inspected for specific code violations, and then repair their property like any good citizen should do.

This Ordinance is commonplace throughout the country. A Google search of "point of sale inspection ordinances" yields data relating to hundreds of such ordinances throughout the country. **Exhibit 5** is a fact sheet explaining a similar ordinance in Shaker Heights, Ohio.

The Ordinance is constitutional on its face. Plaintiffs' claims are at best hypothetical as applied challenges. They do not justify a wholesale invalidation of the Ordinance. The Amended Complaint should be dismissed.

                          Respectfully submitted,

                          City of Calumet City

                          By:  /s/ John B. Murphey

| | |
|---|---|
| JOHN B. MURPHEY/ARDC #1992635 | MARK STERK/ARDC #3125540 |
| Rosenthal, Murphey & Coblentz | Odelson & Sterk, Ltd. |
| 30 North LaSalle Street, Suite 1624 | 3318 West 95th Street |
| Chicago, Illinois 60602 | Evergreen Park, Illinois 60805 |
| Tel. (312) 541-1070 | Tel. (708) 424-5678 |
| Fax (312) 541-9191 | Fax (708) 424-5829 |

G:\rmcj\calumet City\mann\Reply Mem MTD.doc

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2008, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of said filing to all parties listed below:

| | | |
|---|---|---|
| Marcia B. Gevers<br>Marcia B. Gevers & Assoc.<br>19710 Governors Hwy<br>Suite 8<br>Flossmoor, Illinois 60422 | Mark H. Sterk<br>Michael Joseph Hayes, Jr.<br>Robert Wilder<br>Richard F. Bruen, Jr.<br>Odelson & Sterk<br>3318 W. 95th St.<br>Evergreen Park, Ill. 60805 | Philip C. Stahl<br>Patrick Thomas Nash<br>Grippo & Elden<br>111 South Wacker Drive<br>Chicago, Illinois 60606 |

Donald P. Bunin
Mark A. Semisch
Grippo & Elden LLC
111 South Wacker Drive
Chicago, Illinois 60606


        /s/    Douglas M. Doty
ROSENTHAL, MURPHEY & COBLENTZ
Attorneys for Calumet City
30 North LaSalle Street, Suite 1624
Chicago, Illinois 60602
Tel. (312) 541-1070
Fax: (312) 541-9191