## SCHEDULE OF EXHIBITS

1. Clean copy of Ordinance No. 08-06, the current Point of Sale Inspection Ordinance.

2. Zoning Ordinance excerpt

3. March 14, 2007 Order in Realtors® Association litigation denying Realtors' motion for order to show cause

4. Newspaper article, "Foreclosures 'weigh' on municipalities"

5. Description of Shaker Heights, Ohio Point of Sale transfer ordinance requirements

THE CITY OF CALUMET CITY
COOK COUNTY, ILLINOIS

ORDINANCE
NUMBER 08-06

AN ORDINANCE AMENDING CHAPTERS 14 AND 82
OF THE MUNICIPAL CODE OF CALUMET CITY REGARDING
POINT OF SALE INSPECTIONS AND
REAL ESTATE TRANSFER TAX

MICHELLE MARKIEWICZ QUALKINBUSH, Mayor
Gloria L. Dooley, City Clerk

EDWARD GONZALEZ
THADDEUS JONES
BRIAN WILSON
GERALD A. TARKA
NIKOLAOS MANOUSOPOULOS
CYNTHIA M. PALLICK
LENI WOSCZYNSKI
Aldermen

---

Published in pamphlet form by authority of the Mayor and City Council of the City of Calumet City on 1-31-08
ODELSON & STERK, LTD. - City Attorneys - 3318 West 95th Street - Evergreen Park, Illinois 60805



DEFENDANT'S EXHIBIT 1

ORDINANCE NO. 08 - 06

## AN ORDINANCE AMENDING CHAPTERS 14 and 82 OF THE MUNICIPAL CODE OF CALUMET CITY REGARDING POINT OF SALE INSPECTIONS AND REAL ESTATE TRANSFER TAX

WHEREAS, the City of Calumet City has reviewed the provisions of its Municipal Code governing Point of Sale Inspections; and

WHEREAS, it is the intention of the City of Calumet City to continue to provide for periodic inspections of dwellings upon the transfer of interest or ownership thereof; and

WHEREAS, the City of Calumet City believes it is in the best interests of the health, safety and welfare to make the following amendments to its Ordinance regarding Point of Sale Inspections.

NOW, THEREFORE, be it ordained by the Mayor and City Council of the City of Calumet City, Cook County, Illinois, in the exercise of Calumet City's home rule powers as follows:

**Section 1:** Chapter 14, Article I, Section 14-1 of the Municipal Code of the City of Calumet City is hereby amended by deleting the text thereof and substituting the following text in its place:

Sec. 14-1. *Point of Sale Inspection Requirement; Certificate of Compliance Procedures*

(a) *Department Created; Definition; General Requirement.*

1. A Department of Inspectional Services is hereby created pursuant to this section. The Department of Inspectional Services ("Department") shall be headed by a Director of Inspectional Services ("Director," which shall also include the Director's designees) who shall be appointed by the Mayor with the advice and consent of the City Council. All inspectional services concerning point of sale matters within the City, including building and housing, shall be under the jurisdiction of the Department. The building commissioner, electrical inspector, plumbing inspector, housing director and all Department inspectors and staff shall be responsible for reporting to the Director relative to all matters relating to this section and the Director shall have full authority to direct, train and provide appropriate personnel subject to City Council approval as to expenditures and/or requirements as provided herein.

2. For the purpose of this section, the term "Point of Sale Inspection" means an inspection of real property by the Department conducted in connection with a taxable transfer of real estate to determine whether the condition of said property conforms to the specific regulations identified in this Section.

3. A Point of Sale Inspection shall be required relative to any transfer of any interest in property which is subject to this Section, except as exempted herein.

(b) *Notice of Transfer of Real Property Required.* Whenever an owner of real property in the City proposes to engage in a transfer of real property in the City which is subject to taxation under Chapter 82, Article X of the Calumet City Municipal Code (Real Estate Transfer Tax), such owner shall provide the Department a Notice of Transfer for said property, on a form therefore provided by the Department.

(c) Compliance *Inspection; Pertinent Code Requirements.* The Notice of Transfer form shall also constitute the Director's request to inspect such property ("Compliance Inspection") to determine whether such property is in compliance with the following specific requirements, which the corporate authorities of the City find are related to the public health, safety and welfare:

    (1) *Compliance with Property Maintenance Code.* All structures shall be in compliance with Article X, Sections 14-691 and 14-692 of this Chapter 14, "Property Maintenance Code."

    (2) *Inspection to Determine Possible Illegal Conversions.* All structures shall be inspected to determine whether they have been illegally converted. For purposes of this subsection, "illegally converted" means that the property was converted to another or additional use beyond that for which the property was originally permitted, and which [i] is in violation of the property's zoning limitations and [ii] is not a legal nonconforming use under Section V of the City Zoning Ordinance.

(d) *Proposed Compliance Inspection.* When the owner files the Notice of Transfer, the Department will schedule a proposed Compliance Inspection to be conducted within 28 calendar days of the Notice. The Notice of Transfer Form shall includes the following:

(1) Date and time of the proposed Compliance Inspection;

    (2) A statement that the owner or occupant has the right to withhold consent to the Compliance Inspection and require the City to obtain a warrant to conduct the inspection;

    (3) For occupied rental dwellings, the City must also request and obtain the consent of the tenant prior to conducting any inspection; and

    (4) A space for the owner and/or to indicate that the owner and/or tenant either consent to the Compliance Inspection, or refuse consent.

Ord. #08-6

(e) *Refusal to Consent; Warrant Procedures.* If the owner or occupant does not consent to the proposed inspection, the Director may appear before any judge in the Circuit Court of Cook County and seek an administrative search warrant to allow an inspection. Any such application shall be made within 10 calendar days after the owner's nonconsent. The application for the warrant shall specify the basis upon which the warrant is being sought and shall include a statement that the inspection will be limited to a determination whether there are violations of the Code provisions identified in this Section, and whether there have been any illegal conversions. The Court may consider any of the following factors along with such other matters as it deems pertinent in its decision as to whether a warrant shall issue:

(1) eyewitness account of violation;
(2) citizen complaints;
(3) tenant complaints;
(4) plain view violations;
(5) violations apparent from City records;
(6) property deterioration
(7) age of property
(8) nature of alleged violation;
(9) condition of similar properties in the area;
(10) documented violations on similar properties in the area;
(11) passage of time since last inspection;
(12) previous violations on the property.

(f) *Uninspected Property; Transfer Stamps.* In the event the owner or occupant refuses to consent to an inspection, and the Director does not seek a warrant (or if Court refuses an application for the warrant), the Department shall notify the City Clerk that "Uninspected Property" transfer stamps may issue. In connection with the issuance of transfer stamps, the City Clerk shall advise the purchaser of such property that it is "Uninspected Property."

(g) *Inspection Procedures; Appeal.*

(1) In the event consent is given or a warrant issues, the Department shall conduct the Compliance Inspection as provided in subsection (c) and (d). Within 3 business days after the Compliance Inspection the Department shall issue a written notice of violations and repairs, if any, necessary to bring the property into compliance with this Section. In the event the inspection reveals a structure which has been illegally converted, the Department shall issue a Notice of Deconversion, specifying the measures which must be taken in order to bring the illegally converted structure into compliance with applicable zoning regulations.

(2) In the event the owner disputes the determination of violations and repairs, the owner may file a request for administrative review on a form provided by the City. An independent administrative hearing officer appointed by the City shall convene an administrative hearing within five (5) business days from the date of appeal. Upon completion of the administrative hearing, the hearing officer will issue a final determination of violation and repairs.

(3) In the event an owner disagrees with an administrative issuance of a notice of deconversion, said owner may appeal to the Zoning Board of Appeals in accordance with Section 12.5 of the City's Zoning Ordinance.

(h) *Follow-Up Repairs; Reinspection.* A party issued a notice of repairs as provided for in subsection (g) shall proceed to make such repairs. Upon completion of said repairs and notice thereof to the Department, the Department will conduct a reinspection within 3 business days thereafter. Upon completion of the follow-up repairs, and the completion of any deconversion measures required by the Department, the Department shall issue a Certificate of Compliance.

(i) *Payment of Current Water Bills; Predeprivation Hearing.* The seller must pay the current water bill (as defined in Section 82-327(b) of the Municipal Code) and other fees owed by the seller to Calumet City prior to the issuance of transfer stamps. In the event the owner disputes any such obligation (or any portion thereof), the Office of City Clerk shall promptly provide the owner with a predeprivation due process hearing consistent with the principles enunciated in *Memphis Light, Gas & Water Division v Craft*, 436 U.S. 1 (1978). The City Clerk's office shall provide the hearing with 3 business days of a request. If the owner disputes the City's determination as to liability, the owner may pay said bill under protest, and may pursue any remedies available to said seller to recover the claimed overcharge.

(j) *Conditional Certificate of Compliance; Procedures.* An owner who has not completed the repairs identified through the inspection may nevertheless transfer ownership of property if:

(1) The owner or agent has deposited with the City an amount of money determined by the Director or his designee to be sufficient to bring the structure into compliance with all City building and zoning ordinances and any applicable housing, fire or property maintenance codes or regulations; and

(2) The buyer, conveyee, transferee, assignee or successor in title, ownership or interest (hereinafter "buyer") has entered into an agreement with the City whereby the buyer agrees to bring the structure into compliance within the time period determined by the Director or his designee, to bring the structure into compliance with all applicable Code requirements within a period not to exceed

one hundred eighty (180) calendar days after the closing of the transaction ("closing").

(3) If the buyer enters into such an agreement, a Conditional Certificate of Compliance will issue in order to allow the closing to be completed. The Conditional Certificate of Compliance shall be issued by the Department and shall terminate on the one hundred eighty-first day after closing and no extensions shall be granted. A buyer who elects to accept the premises, subject to the inspection with existing violations, and who agrees, in order to close, to be responsible as provided herein, shall execute a sworn affidavit satisfactory to the Director, which will clearly indicate that the buyer is fully aware of the existing violations as well as the possibility of violations that may have existed but were undiscovered due to lack of access and agrees to accept the requirement and obligation to bring the structure into compliance within one hundred eighty (180) days of the closing. The City shall issue a Certificate of Compliance upon completion of the repairs necessary to bring the dwelling or structure into compliance.

(4) In the event the buyer fails to complete the required repairs, and have the repairs verified on reinspection, the Director is hereby authorized to pursue enforcement proceedings through the Calumet City administrative adjudication process, or, at his discretion, through the Circuit Court of Cook County. The buyer hereby agrees to submit to the jurisdiction and venue of the Calumet City Administrative Adjudication Process and the Circuit Court of Cook County and to waive service of summons subject only to the notice requirement as required by law in order to enable the City to expeditiously obtain an order of compliance with this section.

(5) If reasonable proof that the repairs have been completed is not received by the Director or his designee within the required period for the repairs to be completed, the City, may also issue a citation for violation of this Chapter and/or the escrow repair agreement, and may also pursue any applicable administrative or judicial remedies to bring the
structure and property into compliance with applicable codes and regulations.
(6) The fine for violations of this Chapter shall be not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000.00) per day for each day the violations remain uncorrected.

(k) *Licensed and Bonded Contractors.* All contractors performing repairs identified in the point of sale inspection, or issuing certifications shall be licensed by the City and bonded and

6

shall make available, upon request, copies of their license(s), verification of their liability insurance, errors and omissions insurance policies, and surety bond.

(l)  *Validity of Certificate of Compliance.*    A Certificate of Compliance issued to the seller shall be valid for one hundred eighty (180) days from the date of issuance.

(m)  *No Warranty.* In issuing a certificate of compliance or a conditional certificate of compliance, the City and its agents do not make any warranty, representation or statement nor does it intend to insure or guarantee to either buyer or seller of the property subject to the point of sale inspection or any of their designees, agents, representatives, heirs or assigns or any other interested party, including mortgage companies, insurance companies, banks or any other party which may have any interest relative to the property subject to the point-of-sale inspection, nor does the City affirm that there are no additional unnoted violations relative to any other provisions of any of the Municipal Code of the City of Calumet City, or relevant statutes, ordinances, rules and regulations of the County of Cook, the State of Illinois or the United States of America.

(o)  *Inspection Fee Schedule.*

(1)  The fee for a point of sale inspection shall be one hundred-fifty dollars ($150.00) for all single-family residential inspections. The failure of an owner/seller or his designee to appear at the time of inspection shall result in a fifty-dollar ($50.00) penalty.

(2)  The fee for a point of sale inspection shall be one hundred-fifty dollars ($150.00) plus twenty-five additional dollars ($25.00) for each residential unit in excess of one unit.

(3)  A fee of twenty cents ($0.20) per square foot shall be charged for each commercial/industrial unit inspected with a minimum fee of two hundred dollars ($200.00) per commercial/industrial unit.

(4)  Each fee set for the above covers the cost of one (1) follow-up inspection to verify compliance. In the event that additional inspections are required because full compliance did not exist at the time of the reinspection, then an additional reinspection fee of fifty dollars ($50.00) per unit shall be assessed.

(5)  If an owner, agent or tenant has failed to appear for two previously scheduled inspections, an additional inspection fee of fifty dollars ($50.00) per unit shall be assessed.

**Section 2:**    Section 82-327(b) of the Calumet City Municipal Code is hereby amended to provide as follows:

7

(b) The City Clerk shall issue no stamps for the transfer of any dwelling, structure, commercial or industrial building unless the grantor/seller (i) presents a "Certificate of Compliance" or other certificate indicating compliance with appropriate city ordinances and/or codes signed by an authorized signatory of the department of inspectional services or (ii) presents an "Uninspected Property" notice to the City Clerk pursuant to Section 14-1(f) of the City Code. The City Clerk shall provide the purchaser notice whether the property is inspected or uninspected.

Additionally, prior to the issuance of transfer tax stamps, and subject to the procedures as set forth in Section 14-1(i) of the City Code, the grantor/seller shall present to the city clerk proof of a current paid water bill. The term "current" shall be defined as the most recent bill issued to the grantor/seller and certified as same by an authorized official of the water department of the city. The water department shall not issue certification of a paid water bill relative to any transfer of title unless the new owner's name and address is supplied to an official of the water department simultaneously upon request for certification of a paid water bill. Grantors/sellers who are exempt from the requirement of purchase of transfer stamps shall be required to comply with the requirements of this section, and shall have the Section 14-1(i) procedural rights.

**Section 3:**   If any section, paragraph, clause or provision of this ordinance shall be held invalid, the invalidity thereof shall not effect any of the other provisions of this ordinance.

**Section 4:**   All ordinances in conflict herewith are hereby repealed to the extent of such conflict.

**Section 5:**   This ordinance shall be in full force and effect from and after its passage, approval and publication as provided by law.

ADOPTED this 31st day of February, 2008, pursuant to a roll call vote as follows:

|  | YES | NO | ABSENT | PRESENT |
|---|---|---|---|---|
| Gonzalez |  | x |  |  |
| Jones | x |  |  |  |
| Pallick | x |  |  |  |
| Manousopoulos | x |  |  |  |
| Tarka | x |  |  |  |
| Wilson | x |  |  |  |
| Wosczynski | x |  |  |  |
| Qualkinbush (Mayor) |  |  |  |  |
| TOTAL | 7 |  |  |  |

APPROVED by the Mayor on January 31, 2008.

*[signature]*
Michelle Markiewicz Qualkinbush
MAYOR

ATTEST:

*[signature]*
Gloria Dooley
CITY CLERK

C:\Documents and Settings\deputy clerk\Local Settings\Temporary Internet Files\ContentIE5\LRVZ194E\amending chap 14 & 82 1[1].31.08.wpd

9

Ord. #08-6

APPENDIX B ZONING
Case 1:08-cv-00555  Document 65-2  Filed 08/19/2008  Page 11 of 17  Page 19 of 76
Case 1:08-cv-00517  Document 41-2  Filed 08/08/2008  Page 1 of 3

*4.18 Application.*

Any person desiring to erect a satellite receiving antenna shall apply in writing to the city clerk's office upon a form furnished by said office. A permit fee of twenty-five dollars ($25.00) shall be paid.

(Code 1980, App. B, § IV; Ord. No. 84-15, § 1, 4-26-1984; Ord. No. 85-32, § 1, 9-26-1985; Ord. No. 89-5, § 1, 1-26-1989; Ord. No. 96-30, § 1(Exh. A), 5-23-1996; Ord. No. 99-33, § 1, 6-10-1999)

## Sec. V. Nonconforming buildings and uses.

*5.1 Continuance of use.*

Any lawfully established use of a building or land, on the effective date of the ordinance or of amendments thereto, that does not conform to the use of regulations for the district in which it is located, shall be deemed to be a legal nonconforming use and may be continued, except as otherwise provided herein.

Any legal, nonconforming building or structure may be continued in use provided there is no physical change other than necessary maintenance and repair, as otherwise permitted herein.

Any building for which a permit has been lawfully granted prior to the effective date of the ordinance, or of amendments thereto, may be completed in accordance with the approved plans; provided construction is started within ninety (90) days and diligently prosecuted to completion. Such building shall thereafter be deemed a lawfully established building.

*5.2 Discontinuance of use.*

Whenever any part of a building, structure or land occupied by a nonconforming use is changed to or replaced by a use conforming to the provisions of the ordinance, such premises shall not thereafter be used or occupied by a nonconforming use, even though the building may have been originally designed and constructed for the prior nonconforming use.

Whenever a nonconforming use of a building or structure or part thereof has been discontinued for a period of twelve (12) consecutive months, or whenever there is evident a clear intent on the part of the owner to abandon a nonconforming use, such use shall not after being discontinued or abandoned, be reestablished, and the use of the premises thereafter shall be in conformity with the regulations of the district.

Where no enclosed building is involved, discontinuance of a nonconforming use for a period of twelve (12) months shall constitute abandonment and shall not thereafter be used in a nonconforming manner.

A nonconforming use not authorized by the provisions of the zoning ordinance in effect at the time the amendatory ordinance becomes effective, shall be discontinued and not reestablished except when the provisions of the amendatory ordinance find the use to be conforming to the district in which it is then located.

*5.3 Change of nonconforming use.*

The nonconforming use of any building, structure or portion thereof, which is designed or intended for a use not permitted in the district in which it is located, may be changed to another nonconforming use thereof but only if such other use is permitted by a special use permit as authorized in the administration section.

A nonconforming structure that was erected, converted or structurally altered in violation of the provisions of the ordinance which this ordinance amends shall not be validated by the adoption of this ordinance, and such violations or any violations of this ordinance may be ordered removed or corrected by the proper officials at any time.

*5.4 Repairs and alterations.*

Normal maintenance of a building or other structure containing a nonconforming use is permitted, including necessary nonstructural repairs and incidental alterations which do not extend or intensify the nonconforming use.

DEFENDANT'S EXHIBIT 2

APPENDIX B ZONING*
Case 1:08-cv-00555 Document 65-2 Filed 08/19/2008 Page 12 of 17
Case 1:08-cv-05017 Document 41-2 Filed 08/08/2008 Page 2 of 3
Page 20 of 76

No structural alteration shall be made in a building or other structure containing a nonconforming use, except in the following situations:

(a) When the alteration is required by law.

(b) When the alteration will actually result in eliminating the nonconforming use.

(c) When a building in a residential district containing residential nonconforming uses may be altered in any way to improve livability, provided no structural alteration shall be made which would increase the number of dwelling units or the bulk of the building.

*5.5 Damage and destruction.*

If a building or other structure containing a nonconforming use is damaged or destroyed by any means to the extent of fifty (50) percent or more of its replacement value at that time, the building or other structure can be rebuilt or used thereafter only for a conforming use and in compliance with the provisions of the district in which it is located. In the event the damage or destruction is less than fifty (50) percent of its replacement value, based upon prevailing costs, the building may then be restored to its original condition and the occupancy or use of such building may be continued which existed at the time of such partial destruction.

In either event, restoration or repair of the building or other structure must be started within a period of six (6) months from the date of damage or destruction, and diligently prosecuted to completion.

*5.6 Additions and enlargements.*

A nonconforming building may be enlarged or extended only if the entire building is hereafter devoted to a conforming use, and is made to conform to all the regulations of the district in which it is located.

No building partially occupied by a nonconforming use shall be altered in such a way as to permit the enlargement or expansion of the space occupied by such nonconforming use.

No nonconforming use may be enlarged or extended in such a way as to occupy any required useable open space, or any land beyond the boundaries of the zoning lot as it existing on the effective date of the ordinance, or to displace any conforming use in the same building or on the same parcel.

A building or structure which in nonconforming with respect to yards, floor area ratio, or any other element of bulk regulated herein shall not be altered or expanded in any manner which would increase the degree or extent of its nonconformity with respect to the bulk regulations for the district in which it is located.

*5.7 Exempted buildings, structures and uses.*

Wherever a lawfully existing building or other structure otherwise conforms to the use regulations herein but is nonconforming only in the particular manner hereinafter specified, the building and use thereof shall be exempt from the requirements of sections 5.4 and 5.5.

In any residential district where a dwelling is nonconforming only as to the number of dwelling units it contains, provided no such building shall be altered in any way so as to increase the number of dwelling units therein.

In any residential district, where a use permitted in the B-1 district occupies ground floor space within a multiple-family dwelling located on a corner lot.

In any business or manufacturing district, where the use is less distant from a residential district than that specified in the regulations for the district in which it is located.

In any district, where an established building, structure or use is nonconforming with respect to the standards prescribed herein for any of the following:

(a) Floor area ratio;

(b) Yards, front, side, rear, or transitional;

(c) Off-street parking or loading;

    (d) Building height;

    (e) Gross floor area.

*5.8 Conversion to special use:*

Any nonconforming use may be made a special use by the granting of a special permit, as authorized in the administrative section.

(Code 1980, App. B, § V; Ord. No. 94-23, § 1, 5-26-1994)

## Sec. VI. Zoning districts and zoning district map.

*6.1 Classes of districts.*

In order to classify, regulate and restrict the location of trades, industries and the location of buildings designed for specified uses, to regulate and limit the height and bulk of buildings hereafter erected or structurally altered, to regulate and limit the intensity of the use of the lot areas, and to regulate and determine the areas of yards, courts and other open spaces within and surrounding such buildings, the City of Calumet City, Illinois, is hereby divided into ten (10) classes of districts:

    R-1 One-family residence district

    R-2 Two-family and three-family residence district

    R-3 Multiple-family residence district

    B Commercial business district

    B-2 Service business commercial district

    B-3 Community commercial business district

    M-1 Light industrial district

    M-2 Heavy industrial district

    OR Office research district

        Public land use

and the location and boundaries of which are shown on the map and notations thereon titled "The Zoning Map of Calumet City," which said map is on file in the office of the building commission of Calumet City, and together with all notations, references, and other information shown thereon, are a part of this ordinance and have the same force and effect as if said map and all the notations, references and other information thereon were all fully set forth and described herein.

    Except as hereinafter provided:

    (1) No building shall hereafter be erected or altered, nor shall any building or premises be used for any purpose other than is permitted in the district in which such building or premises is located.

    (2) No building shall be erected or altered to exceed in height the limit herein established for the district in which such building is located.

    (3) No building shall be erected or altered except in conformity with the area regulations of the district in which the building is located.

    (4) The minimum yards and other open space, including lot area required by the ordinance for each and every building existing at the time of passage of this ordinance, or for any building hereafter erected shall not be encroached upon or considered as yard or open space requirements for any other building.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REALTOR® ASSOCIATION OF WEST/ SOUTH SUBURBAN CHICAGOLAND, <br>     *Plaintiff,* <br><br> v. <br><br> CALUMET CITY, ILLINOIS, <br>     *Defendant.* | Case No. 06 C 2271 <br><br> Judge Milton I. Shadur |

## ORDER DENYING MOTION FOR ORDER
## TO SHOW CAUSE AND GRANTING OTHER RELIEF

Plaintiff filed a Motion for Order to Show Cause Why Defendant Should not be Held in Contempt for Violating the Court's Injunction. For the reasons stated at the December 29, 2006, February 2, 2007 and March 2, 2007 hearings on the motion and based on the written submissions of the parties, IT IS HEREBY ORDERED:

1. The owners of the property at 514 Forsythe in Calumet City, along with the involved real estate brokers, are entitled to be compensated by Calumet City for the damages they incurred or will incur in the future in connection with their failed closing of the sale and transfer of the property on or about October 31, 2006.

2. The owners of the property at 514 Forsythe in Calumet City, along with the involved real estate brokers, are entitled to be compensated by Calumet City for reasonable attorneys' fees and related costs incurred in enforcing their rights under paragraph 1 of this Order.

3. Persons who acquired property in Calumet City when the version of Calumet City's ordinance attached hereto as Exhibit A (the "1996 Ordinance") was in force, are entitled to sell or otherwise transfer their property pursuant to the terms of the 1996 Ordinance.

110975v3

DEFENDANT'S EXHIBIT 3

4. Calumet City shall distribute the Notice attached hereto as Exhibit B to all personnel in its Housing Department and/or its Department of Inspectional Services.

5. Except as set forth above, Plaintiff's Motion for Order to Show Cause Why Defendant Should not be Held in Contempt for Violating the Court's Injunction is denied.

Dated:    March 14, 2007        ENTERED:

*[signature]*

Judge Milton I. Shadur

2

110975v3

Foreclosures 'weigh' on municipalitie... nwi.com

Page 1 of 3

 Your online Real Estate search begins and ends here. 

| Home | Opinion | Sports | Entertainment | Features | Announcements | Classified | Homes |

Local National Business Lake Porter Illinois Indiana Health Events Blogs Multimedia Records Weather Traffic

Search  Advanced Search Archives

# Foreclosures 'weigh' on municipalities

Story    Discussion




SUBSCRIBE   RSS FEE

BY KIRSTEN SRINIVASAN
kirstens@nwitimes.com
219.933.4158 | Sunday, July 20, 2008 |    4 comment(s)

Font Size:

In addition to costing people their homes, foreclosures carry a price tag for municipalities, officials say.

Lansing increased its budget for mowing lawns on vacant properties to $20,000 this year, Lansing Village President Dan Podgorski said. The village tries to find out who owns the property and bill them or place a lien on the home, but the costs of employee time tracking homes and legal expenses add up, he said.

"It's hard to measure the costs, but it certainly exceeds the maintenance of cutting a lawn," Podgorski said.

Problems from foreclosures are being felt in municipalities throughout the region, said Ed Paesel, executive director of the South Suburban Mayors & Managers Association.

"The worst part is folks losing homes," Paesel said. "But beyond that, once they've left the home, villages are left with abandoned properties. Sometimes, they have a hard time finding out whose property it is, weeds go up and vandalism and those kinds of issues, and of course, there's the loss of the tax base."

Last year, Lansing had 201 foreclosure filings, according to the Woodstock Institute. Podgorski said he didn't have exact numbers for this year, but foreclosures have definitely grown.

"We are seeing the same thing everybody else is seeing, an increase in the number of foreclosures and houses that are vacant in our village, and we are trying to get a handle on the number of houses and locations as much as we can," he said.

The challenge is tracking the homes and making sure they don't become eyesores and obvious targets with junk mail piling up on the front porch and tall grass outside, he said.

Calumet City also spends a lot on boarding up homes and lawn service, Calumet City Communications Director Eric Schneider said. The city has about 560 foreclosed properties out of about 17,000 residential and commercial addresses, he said.

"It definitely weighs on the city," Schneider said.

"The majority of banks keep up with the property, but, in instances where the grass is left to grow too high and it's not properly secured, we have to step in as the city and make sure our neighborhood and the property is kept up for the good of the neighbors and community," he said.

The Calumet City Council recently approved a resolution supporting all efforts of the state General Assembly to protect homeowners' rights and to help homeowners avoid foreclosure. It also co-hosted a foreclosure prevention seminar in June.

South Suburban Mayors & Managers has been meeting with major lenders and local banks to talk about how it can help ease the foreclosure crisis on a local level, Paesel said. The organization also plans to host a meeting with municipal officials about issues municipalities face with foreclosures and how they are handling them, he said.



Buy Stocks - $4 F
No account or investmer today.
www.sharebuilder.com

Refinance $300,00
$300,000 Mortgage for c


DEFENDANT'S EXHIBIT

## Marketplace

| Jobs | Homes | Au

MECHANICAL * Me

## Shaker Heights *Point of Sale* Fact Sheet

Revised 12/05

**Seller Obligation:** Owners of residential real estate, including single-family and two-family dwellings, duplexes, apartments, and condominiums, are required to obtain a Certificate of Inspection (Point of Sale) prior to entering into an agreement to sell or convey an interest in such property.

**Application Fee:** The fee for the Point of Sale inspection is $100 for a single-family and $125 for a two-family. The fee for apartments is $100 for the first unit and $25 for each additional.

**Reinspection Fees:** A reinspection fee of $25 is charged for each requested reinspection after the first two requested reinspections, to be paid at the time of issuance of the Certificate of Compliance or a transfer release.

**Required Use of Certificate:** Sellers must provide the prospective purchaser with a copy of the Certificate of Inspection or a copy of a Certificate of Compliance prior to the execution of a contract of sale.

**Time Limit:** The Certificate of Inspection or Certificate of Compliance provided to the purchaser must have been issued within one (1) year prior to the agreement.

**Buyer's Acknowledgement:** An Acknowledgement Form signed by the purchaser affirming receipt of a Certificate of Inspection or Certificate of Compliance must be deposited in escrow and a copy provided to the Housing Inspection Department as a condition of title transfer.

**Escrow Requirement:** If all violations listed on a Certificate of Inspection are not corrected prior to transfer of title, an escrow account must be established and funds, in an amount not less than $100 and equal to 150% of the estimated cost of repairs, must be deposited to pay for the cost to correct all remaining violations.

**Escrow Determination:** The amount to be held in escrow shall be determined by procuring a written estimate from a company currently registered to do business in Shaker Heights. The estimate must reflect current market rates for labor and materials, and be itemized to correspond to the Point of Sale inspection notice. The City may reject an estimate that fails to reasonably reflect the fair market cost of repairs.

**City Estimate:** If the party establishing the escrow (seller or buyer) can demonstrate to the City that, after a good faith effort, he/she is unable to obtain a written estimate, the City may establish the amount of the escrow with the understanding that such determination is non-negotiable.

**Escrow Notification:** The escrow agent must notify the Housing Inspection Department in writing of the amount of funds proposed to be held to correct all remaining violations.

**Transfer Release:** If the City determines the estimate and escrow amount comply with the requirements of the ordinance, a written transfer release will be issued.

**Escrow Disbursement:** Funds held in escrow shall be disbursed only upon written authorization from the City. If the amount held is less than $5,000, no funds shall be released until all violations are corrected. If the amount is $5,000 but less than $20,000, the City may authorize one (1) partial release of funds from escrow if it is determined that substantial progress has been made in correcting the violations and that sufficient funds remain in escrow to correct all remaining violations. If the amount is $20,000 but less than $40,000, two (2) partial releases may be approved. If the amount is $40,000 but less than $60,000, three (3) partial releases may be approved. On escrow accounts equal to or exceeding $60,000, four (4) partial releases may be authorized.

**Escrow Agent Obligation:** No person, firm or corporation acting in the capacity of an escrow agent in any real estate transaction shall transfer title or disburse funds from any sale unless the provisions of Chapter 1415 of the Housing Code have been satisfied.

**Failure to Comply:** Any person violating any provision of Chapter 1415 of the Housing [Code is guilty of a] misdemeanor of the first degree and shall be punished as provided in Section 101.99 of [Chapter 101] of the Codified Ordinances.

DEFENDANT'S EXHIBIT 5